## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00942

SENSORIA, LLC, directly on its own behalf
and derivatively on behalf of CLOVER TOP
HOLDINGS, INC., a Delaware corporation;
and GORDON MORTON,

                     Plaintiffs,

   vs.

JOHN D. KAWESKE; CHRISTOPHER S.
PETERSON; CLOVER TOP HOLDINGS,
INC., a Delaware corporation; CLOVER
TOP HOLDINGS, INC., a Colorado
corporation; AJC INDUSTRIES, LLC;
DURANGO MANAGEMENT, LLC;
SUNLIFE AG, LLC; MMJ 95, LLC;
TWEEDLEAF LLC, a Colorado limited
liability company; TWEEDLEAF, LLC, a
Delaware limited liability company;
LIFESTREAM HOLDINGS LLC;
ORDWAY FARMS LLC; NORTH STAR
HOLDINGS aka NORTH STAR
HOLDINGS, INC.; MANUEL WELBY
EVANGELISTA aka WELBY
EVANGELISTA; DJDW, LLC; JW
COLORADO, LLC; JW ORDWAY, LLC;
JW TRINIDAD, LLC; BRIAN
TANNENBAUM; TANNENBAUM &
TROST, LLC fka TANNENBAUM,
TROST & BURK, LLC; and DOES 1-100,

                     Defendants.

---

## VERIFIED COMPLAINT AND JURY DEMAND

---

**INTRODUCTION**

1.      This action centers principally on wrongdoing by John D. Kaweske, a serial investments offender found liable multiple times over the years and barred from the securities industry for securities fraud, breach of fiduciary duty, and other wrongful investment-related conduct. Here again, Kaweske has proven adept at separating people from their money using a shell game complete with numerous different entities, unlawful corporate and asset transfers, manipulated transactions, and material misrepresentations and omissions.

2.      Using Clover Top Holdings, Inc., as his original vehicle, Kaweske solicited hundreds of thousands of dollars in investment funds for the Colorado cannabis business from plaintiff Sensoria, LLC, and other investors, with fraudulent misrepresentations and omissions, then converted the resulting corporate opportunities to his own benefit, leaving their investments worthless while reaping the rewards for himself. To do so, he took affirmative steps to hide his past as a registered securities representative who was barred from the securities industry by the National Association of Securities Dealers for doing exactly what he has done here – misusing investor funds and engaging in conduct that caused them harm and great loss – all, as the NASD found, without "any contrition or remorse." His conduct here includes obfuscating his past with internet content, including creating fake social media profiles using the photograph of the former Ukrainian Minister of Education and Science, creating numerous different social media profiles of himself stuffed with content to scramble online traffic and lead searchers away from his legal misdeeds, and, apparently, hiring search engine optimization specialists to push his past securities fraud problems to lower search result pages. He has also created a web of entities through which he operates in Colorado, making it difficult to trace his conduct and putting the burden on investors to hire legal counsel to ferret out his conduct. As with his NASD

misconduct, Kaweske shows no contrition or remorse here, telling this investor plaintiff that it "owns nothing" despite its large investment – now lost – and despite Kaweske's promises of big returns. Meanwhile, Kaweske successfully operates for himself through his other, undisclosed entities the very cannabis-related business in which Sensoria invested. This lawsuit seeks redress for that misconduct against Kaweske, his entities, and those who have helped him accomplish his plan.

## PARTIES

3.       Plaintiff Sensoria, LLC ("Sensoria") is a Utah limited liability company owned solely by plaintiff Gordon Morton, an individual citizen of the State of Utah.

4.       Defendant John D. Kaweske is an individual citizen of the State of Colorado.

5.       Defendant Christopher S. Peterson is an individual citizen of the State of Colorado or Arizona.

6.       Defendant Clover Top Holdings, Inc. ("Clover Top") is a Delaware corporation with its principal place of business in Colorado. Clover Top's registered agent in Colorado is The Company Corporation.

7.       Defendant Clover Top Holdings, Inc. ("Clover Top Colorado") is a Colorado corporation with its principal place of business in Colorado. Clover Top Colorado's registered agent is Peterson.

8.       Defendant AJC Industries, LLC ("AJC") is a Colorado limited liability company with its principal place of business in Colorado. According to the Colorado Secretary of State's website (https://www.sos.state.co.us/biz/), Kaweske is AJC's sole member.

9.       Defendant Durango Management, LLC ("Durango") is a Colorado limited liability company with its principal place of business in Colorado. According to the Colorado

Secretary of State's website, Clover Top is Durango's sole member. Durango's registered agent is Tannenbaum, Trost & Burk, LLC.

10.      Defendant Sunlife AG, LLC ("Sunlife") is a Colorado limited liability company with its principal place of business in Colorado. According to the Colorado Secretary of State's website, Sunlife's registered agent and manager is Kaweske.

11.      Defendant MMJ 95, LLC ("MMJ") is a Colorado limited liability company with its principal place of business in Colorado. According to the Colorado Secretary of State's website, MMJ's sole member and registered agent is Kaweske.

12.      Defendant TweedLeaf LLC is a delinquent Colorado limited liability company with its principal place of business in Colorado. According to the Colorado Secretary of State's website, TweedLeaf LLC's registered agent is Kaweske.

13.      Defendant TweedLeaf, LLC ("TweedLeaf Delaware") is a Delaware limited liability company with its principal place of business in Colorado.

14.      Defendant Lifestream Holdings LLC ("Lifestream") is a Colorado limited liability company with its principal place of business in Colorado. Lifestream's registered agent is Tannenbaum & Trost, LLC.

15.      Defendant Ordway Farms LLC ("Ordway Farms") is a delinquent Colorado limited liability company with its principal place of business in Colorado. According to the Colorado Secretary of State's website, Ordway Farms' registered agent is Kaweske.

16.      Defendant North Star Holdings aka North Star Holdings, Inc. ("North Star") is a Wyoming corporation with its principal place of business in Colorado. According to the websites for the Colorado Secretary of State and the Wyoming Secretary of State

(https://soswy.state.wy.us/business/), Kaweske and Evangelista are its directors and Evangelista is its registered agent in Colorado.

17.     Manuel Welby Evangelista aka Welby Evangelista is an individual citizen of the State of Utah.

18.     DJDW, LLC, is a Utah limited liability company with its principal place of business in the State of Utah. Evangelista is its owner.

19.     JW Colorado, LLC ("JW Colorado") is a Colorado limited liability company with its principal place of business in Colorado. Kaweske is its registered agent.

20.     JW Ordway, LLC ("JW Ordway") is a Colorado limited liability company with its principal place of business in Colorado. Kaweske is its registered agent.

21.     JW Trinidad, LLC ("JW Trinidad") is a Colorado limited liability company with its principal place of business in Colorado. Kaweske is its registered agent.

22.     Brian Tannenbaum is an individual citizen of the State of Colorado.

23.     Tannenbaum & Trost, LLC ("Tannenbaum & Trost"), formerly known as Tannenbaum, Trost & Burk, LLC ("Tannenbaum Trost & Burk"), is a Colorado limited liability company with its principal place of business in Colorado. Tannenbaum & Trost's registered agent is Tannenbaum Trost & Burk. Tannenbaum & Trost changed its name with the Colorado Secretary of State by a filing made August 1, 2019.

24.     Defendants Does 1-100 are parties who participated in the transactions that are the subject of this suit and do or may have responsibility and liability to Sensoria based on their actions and/or inactions in connection therewith. Sensoria will amend this complaint if and when such parties are identified.

## JURISDICTION AND VENUE

25.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1367.

26.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and pursuant to the forum selection clause in the subject Subscription Agreement.

## GENERAL ALLEGATIONS

27.     Clover Top was formed by Kaweske, Peterson, and Peterson's wife, to engage in all aspects of the cannabis business, beginning in Colorado and expanding elsewhere as the business grew. Clover Top was incorporated in the State of Delaware on September 24, 2015. The corporation was authorized to issue 6 million shares. The incorporator was The Company Corporation. Kaweske and Peterson combined were the majority shareholders, with each owning 2.4 million shares, and Peterson's wife owning another 1.2 million shares.

28.     The initial directors of Clover Top were Kaweske, Peterson, and Peterson's wife. Peterson was designated as Chairman of the Board.

29.     The initial officers of Clover Top were Kaweske as Chief Financial Officer and Peterson as President and Secretary.

30.     According to Peterson in 2019, TweedLeaf Delaware was intended to be and in fact became a wholly owned subsidiary of Clover Top as of October 2015.

31.     According to the United States Patent and Trademark Office trademark search website (http://tmsearch.uspto.gov/), on July 31, 2015, TweedLeaf Delaware filed for federal trademark and service mark registrations for the "TWEEDLEAF" word and drawing mark for "T-shirts" and for "On-line retail store services featuring organic, holistic, naturopathic, and homeopathic products, including foods, herbal dietary preparations and nutritional products, nutraceuticals, massage oils, lotions, cosmetic products, clothing, and gifts; Retail store services

featuring organic, holistic, naturopathic, and homeopathic products, including foods, herbal dietary preparations and nutritional products, nutraceuticals, massage oils, lotions, cosmetic products, clothing, and gifts."

32.     MMJ was formed on October 21, 2015. MMJ is a cannabis-related business in Colorado.

33.      On or about October 30, 2015, Clover Top retained Brian Tannenbaum and Tannenbaum Trost & Burk to represent Clover Top. The legal services to be provided were: "Representation and consulting regarding the purchase and/or sale of certain marijuana licenses, and any other services the Client may request from time to time." According to Peterson in 2019, and as demonstrated by the other facts pleaded herein, Tannenbaum and his firm were retained as legal counsel for Clover Top for both cannabis and corporate law.

34.     Kaweske formed TweedLeaf LLC on November 19, 2015. TweedLeaf LLC is a cannabis-related business in Colorado.

35.     In or about January 2016, Clover Top executed a contract to purchase two real estate holdings in Colorado Springs, one a marijuana dispensary facility and the other a "grow" warehouse. These were existing licensed facilities operating under the name of Wellstone. According to Kaweske, Clover Top intended to execute another contract shortly thereafter to acquire a licensed entity from an unrelated group.

36.     Durango was formed on January 26, 2016. Durango is a cannabis-related business in Colorado. According to Peterson in 2019, Durango was intended to be and is a wholly owned real estate management company established for the purposes of holding properties and leases for TweedLeaf dispensaries and cultivation centers.

37.     On or about February 1, 2016, Durango purchased the two real estate holdings that were the subject of Clover Top's January 2016 contract: real property located at 1602 West Colorado Avenue, Colorado Springs, Colorado 80904 (the "1602 Property") and 2685 Durango Drive (the "2685 Property"), Colorado Springs, Colorado 80910, along with personal property associated therewith. The sales price was $1.4 million. The sales price and closing costs were funded principally by $100,000 down, $1.15 million in loans from Colorado Street Partners, LLC, a Wyoming limited liability company, and a $150,000 note secured by the property. The settlement papers were signed by Dennis Grimmer as Manager of Durango. Dennis Grimmer is Peterson's father-in-law. The underlying Term Sheet dated January 11, 2016, referenced a "Purchase of 'Wellstone.'" It was on letterhead that said "tweedleaf™" and had an address of 330 East Costilla Street #418, Colorado Springs, Colorado 80903.

38.     According to Peterson in 2019, funds were transferred to Tannenbaum, Trost & Burk on February 5, 2016, for the purpose of Clover Top purchasing two existing medical marijuana licenses, Nos. 402-00390 (dispensary license) and 403-00585 (cultivation license), from AJC dba FRAM.

39.     On or about March 11, 2016, Durango entered into a five-year written commercial lease agreement for the 1602 Property with AJC d/b/a Front Range Alternative Medicines and d/b/a FRAM. Per an appraisal conducted as of January 29, 2016, Durango and AJC had an existing business relationship and the lease was not considered by the appraiser to be arms-length. The monthly installment payments were to be made to 330 East Costilla Street #418, Colorado Springs, CO 80903.

40.    The 2685 Property was purchased subject to an existing five-year written commercial lease agreement between Colorado Street Partners, LLC, and Prisy & Associates, LLC, a Colorado limited liability company.

41.    In or about January 2016, defendants Kaweske and Peterson solicited Sensoria's principal, Gordon Morton, to invest in Clover Top. The initial solicitation took place in Lehi, Utah, in the offices of XanGo LLC. Present were Kaweske, Peterson, Morton, and three others in person. The meeting lasted approximately one hour to one-and-a-half hours. Kaweske and Peterson followed up the meeting by providing Morton a printed and electronic copy of a pitch deck within one week, engaging in at least three phone calls over the January to March 2016 time frame, and holding a lunch discussion in or about February or March 2016 between Peterson and Morton at a lunch place near 222 South Main Street in downtown Salt Lake City, Utah.

42.    In the initial solicitation meeting, and in each subsequent meeting thereafter, Kaweske and Peterson both represented to Morton that Clover Top would be the holding company or the "mother ship" for all cannabis-related entities, technologies, and brands in Colorado and expanding beyond Colorado as its success grew – including dispensaries, grow operations, extraction technologies, intellectual property, other future ancillary entities, and all similar services and businesses – whose profits would all inure to the benefit of Clover Top's shareholders.

43.    The written materials Kaweske and Peterson provided stated that Clover Top was "a Delaware Corporation established to make investments and operate businesses in the burgeoning legal cannabis industry" and that "Clover Top intends to create a national brand for

medicinal dispensaries, online store and cannabis and hemp-based products." The materials also represented the following with respect to Clover Top:

> Based in Colorado Springs, Colorado, Clover Top has purchased an existing medical marijuana commercial location as well as a cannabis cultivation facility and is integrating a second fully operational and licensed medicinal cannabis business into the newly purchased locations.

> The "mom and pop" business, which has been in existence since 2009, is one of the oldest licensed dispensaries and cultivation facilities in the state. The business generates between $60,000-$80,000 per month in gross revenues.

> Clover Top will use its 11,000 square foot cultivation facility, which is capable of growing over 4,000 plants and producing in excess of $400,000 a month of wholesale cannabis, for the the [sic] newly acquired cultivation license within 90 days.

> Clover Top also owns a 1,500 square foot medical marijuana dispensary located in a prime retail location within the same city and will open the first of a new medical dispensary chain called TweedLeaf™.

> CLOVER TOP HAS OBTAINED THE REGISTERED TRADEMARK OF TWEEDLEAF FOR BOTH RETAIL AND ONLINE SALES OF MEDICINAL BOTANICALS AND NUTRACEUTICALS NATIONWIDE.

Kaweske, Peterson, and the written materials provided to Morton represented that the "TweedLeaf" brand and entity were and would be wholly owned 100% by Clover Top, that Clover Top would own and operate the TweedLeaf website online, and that the benefits of the TweedLeaf brand and operations would inure to Clover Top and its shareholders. The materials projected more than $123 million in annual net income for Clover Top within five years. The materials identified the management of Clover Top as Kaweske, Peterson, and his wife, and the name and contact information for the company as Clover Top Holdings, Inc., 330 East Costilla St. #418, Colorado Springs, Colorado 80903.

44.     In none of the discussions pitching Clover Top did Kaweske disclose that he had previously been found to have violated federal securities laws and engaged in other conduct that involved breaches of trust and mishandling of investor funds. Specifically, Kaweske had been

the subject of four administrative proceedings before tribunals associated with the National Association of Securities Dealers ("NASD") and at least three lawsuits alleging his involvement in inappropriate dealings with client funds or securities transactions:

      a.    *In Re Arbitration Between Taboga Panama Mineral Corp., Claimant, and R. K. Grace & Co., a dissolved Florida Corporation, and John D. Kaweske*, Case No. 03-00446, an NASD Dispute Resolution Award issued March 24, 2004, in which the Claimant alleged unauthorized trades by Kaweske in the Claimant's account. Kaweske was found liable for negligence and breach of fiduciary duty and ordered to pay to the Claimant compensatory damages of $173,841.00.

      b.    *In re Arbitration Between James Klingenstein, et al., Claimants v. Cardinal Capital Management, Inc., BNY Clearing Services, LLC, Hershel Smith, and John D. Kaweske, et al., Respondents*, Case No. 04-08672, an NASD Dispute Resolution Award issued December 22, 2006, in which the Claimants alleged causes of action related to the purchase of stock and other securities. The causes of action included unauthorized transactions, respondeat superior, negligent supervision, control person liability, negligent hiring, unsuitable trades, churning, fraud, breach of fiduciary duty, breach of contract, violation of securities statutes and regulations, and violation of Massachusetts General Laws Ch. 93A § 2 (prohibiting unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce). Kaweske was found liable and ordered to pay to Claimants compensatory damages of $71,442.13.

      c.    *Department of Enforcement, Complainant v. John D. Kaweske (CRD No. 2309807), Respondent*, Disciplinary Proceeding No. C07040042, a Hearing Panel Decision issued by the NASD Office of Hearing Officers on February 10, 2006. The NASD Department

of Enforcement issued a four-cause Complaint against Kaweske as a registered securities representative and principal for (1) failing to promptly return investor funds when a sales contingency was not met; (2) failing to establish an escrow account for a contingency offering; (3) making misrepresentations and omissions of material fact in connection with the sale of preferred stock; and (4) willfully failing to update his Form U-4 to disclose consumer complaints, civil litigation, and a notice that he was the subject of an investigation by NASD. The NASD Office of Hearing Officers found against Kaweske on all counts, concluding, among other things, that he had committed securities fraud under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder by his fraudulent misrepresentations and omissions. The Hearing Panel concluded that Kaweske's actions were "egregious." The Hearing Panel concluded that "Kaweske orchestrated a scheme to obtain investor funds by misrepresenting the circumstances under which he intended to use them, and failed to return those funds as he represented that he would." The Hearing Panel noted further that Kaweske "has not expressed any contrition or remorse." The Hearing Panel barred Kaweske from associating with any member firm in any capacity, effectively barring him from working in the securities industry. The Hearing Panel also ordered him to make restitution of $140,000.00, plus interest to the Claimants. The Hearing Panel's findings noted that Kaweske's conduct involved the use of Subscription Agreements to sell preferred shares.

       d.    *Department of Enforcement, Complainant v. John D. Kaweske, Miami, FL, Respondent*, Complaint No. C07040042, a Decision issued by the NASD National Adjudicatory Council on February 12, 2007. The Decision affirmed the Hearing Panel's findings and the bars imposed upon Kaweske for the "misconduct" found by the Hearing Panel. The

12

Decision eliminated the order of restitution imposed by the Hearing Panel and instead imposed a $140,000.00 fine against Kaweske.

       e.     *Robert L. Horowitz, Plaintiff v. R.K. Grace & Co., R.K. Grace Preferred, Inc., John D. Kaweske, et al., Defendants*, Case No. 1:99-cv-10442-RCL, a case filed under the Securities Exchange Act in the United States District Court for the District of Massachusetts on February 26, 1999. The NASD Hearing Panel in *Department of Enforcement v. Kaweske* identified this lawsuit as filed by one of the Claimants in the disciplinary proceeding against Kaweske based on the allegations underlying the disciplinary proceeding. Kaweske settled for a payment to the Claimant of $80,000.00.

       f.     *IAB Island Ventures, S.A., Plaintiff v. Halcyon, S.A., Bluewater Partners, S.A., David Lillico, John D. Kaweske, et al., Defendants*, Case No. 6:05-cv-00705-ACC-JGG, a securities fraud case filed in the United States District Court for the Middle District of Florida on May 6, 2005. Following the bankruptcy of some of the defendants, the case was dismissed on May 29, 2009.

       g.     *Securities and Exchange Commission v. John J. Kaweske*, Case No. 1:95-cv-00296-EWN-OES, a case filed under the Securities Exchange Act in the United States District Court for the District of Colorado on February 6, 1995, in which Kaweske's father, John J. Kaweske, was found to have committed 10b-5 federal securities fraud and ordered to pay a civil penalty of $115,000.00. According to the SEC, Kaweske received $100,000.00 from his father's position by introducing officials from Crown Laboratories Inc. to his father and later receiving $100,000.00 in commissions from Crown, after Invesco funds managed by the elder Kaweske bought $2.5 million of shares in that company. The SEC alleged that Kaweske's father

knew about the arrangement and helped make it, but told Invesco officials his son would not receive any money on the deal. Kaweske himself was not named as a defendant in that case.

45.     In each of their discussions with Morton from January through March 2016, Kaweske and Peterson each represented that they would be managing their cannabis-related activities through Clover Top and/or through entities wholly owned by Clover Top and that Clover Top's shareholders would receive the benefit of those activities. They also promised prompt repayment of initial investments and distributions as Clover Top started achieving success. They did not disclose the following:

        a.     Neither Kaweske nor Peterson had caused Clover Top to be registered to do business in Colorado.

        b.     Clover Top did not in fact own the cannabis-related properties or entities that Kaweske and Peterson represented it did.

        c.     Kaweske and Peterson would be receiving six-figure annual salaries from Clover Top. Kaweske and Peterson represented rather that if they took anything at all from Clover Top as a salary, it would be "modest."

        d.     Peterson had formed a separate entity with the Clover Top name, Clover Top Colorado, which operated separately and was not owned by the Delaware corporation of the same name in which Peterson solicited Morton's investment.

46.     Unaware of these material facts, including that he had been solicited by a serial investment law offender, Morton signed a Subscription Agreement for Preferred Shares in Clover Top on April 4, 2016, indicating to Kaweske and Peterson that his investment would be held through a solely owned entity. On that same day, he paid Clover Top $100,000.00 to purchase 100,000 shares at $1.00 per share. According to Kaweske in November 2016, this was

Clover Top's first outside investment, sometimes referred to by Clover Top as a "Series A" investment.

47.     According to Peterson in 2019, Clover Top raised $675,000.00 in connection with its first tranche of investments from outside investors like Sensoria.

48.     On April 25, 2016, Peterson wrote an email to legal counsel Brian Tannenbaum of Tannenbaum Trost & Burk and to the other directors saying, "We will be changing the name to TweedLeaf." Tannenbaum responded, "You could change the name by adding the DBA of Tweedleaf to FRAM with a simple filing before you do the Change of Ownership. Then since you are purchasing FRAM you also own the DBA."

49.     On or about May 5, 2016, Kaweske caused fake social media profiles to be created for him on LinkedIn (https://www.linkedin.com/in/johndkaweske), Facebook (facebook.com/johndkaweske), Pinterest (pinterest.com/johndkaweske), and Twitter (twitter.com/johnDKaweske). These accounts were made in his name, John D. Kaweske, but employed a photograph of an individual appropriated from an obscure corner of the internet and a false biography that overlapped with Kaweske's own. The photograph used was a publicly available photograph of Mykhailo (Michael) Zakharovych Zghurovskyi (https://en.wikipedia.org/wiki/Mykhailo_Zghurovsky). Zghurovskyi was a former Ukrainian Minister of Education and Science, and he is the current Rector/President of the National Technical University of Ukraine or "Igor Sikorsky Kyiv Polytechnic Institute" (https://en.wikipedia.org/wiki/Igor_Sikorsky_Kyiv_Polytechnic_Institute). The photograph employed first appeared on April 25, 2014, in a Ukrainian news article about a student at his school who had passed away (https://telegraf.com.ua/ukraina/mestnyiy/1249874-pogibshiy-v-slavyanske-student-uchilsya-v-kpi.html). The fake profiles purported to originate from Miami,

Florida, the site of the prior wrongdoing underlying one or more of Kaweske's NASD proceedings, and affiliated this fake "John D. Kaweske" with the R.K. Grace investment firm that was named in the NASD proceedings. In fact, Kaweske, the defendant in this lawsuit, was owner, CEO, and president of R.K. Grace.

50.     According to the Petersons, Kaweske admitted to them that he hired search engine optimization specialists to clean up elements of his past. He attributed that effort to a messy divorce and confusion with his father's securities violation. However, on information and belief as set forth herein, Kaweske in fact used search engine optimization specialists to push his own past securities fraud problems to lower search result pages. In furtherance of this goal, Kaweske apparently created or caused to be created numerous different social media profiles of himself. Some contain the picture of Zghurovskyi, some are real, some are full of meaningless content, but all appear intended to drive traffic there and away from Kaweske's NASD past. His "posts" include the equivalent of "spamming" or "botting" real and fake social media pages with inane and repetitious posts that say "Happy New Year," for example, or "pinning" about things to do in Colorado Springs. He has numerous different accounts on the same social media provider and otherwise fills the internet with websites and pages and posts designed, on information and belief based on the facts described here, to minimize the chances of investors and others finding out about his many past securities violations. These include at least the following:

Fake Twitter: twitter.com/johnDKaweske (Full of spam, no real Twitter. Created May 2016)

Fake Facebook: facebook.com/johndkaweske (Full of spam. Created May 2016, profile pictures and photos uploaded on May 5)

Real Facebook: https://www.facebook.com/john.kaweske.1 (barely anything, seemingly real)

Fake LinkedIn: https://www.linkedin.com/in/johndkaweske

Real LinkedIn #1: https://www.linkedin.com/in/johnkaweske

Real LinkedIn #2: https://www.linkedin.com/in/jkaweske

Real LinkedIn #3: https://www.linkedin.com/in/john-david-kaweske-33438a16b

Real YouTube #1: https://www.youtube.com/channel/UCQT2ApRw2XacrnN1z3UeISw (barely anything, seemingly real)

"Real" YouTube #2: https://youtu.be/SlzeAZGvtBQ (almost every video is spam, all uploaded on the same day, September 25, 2018)

Fake Pinterest: https://www.pinterest.com/johndkaweske/ (full of spam)

"Real" Pinterest: https://www.pinterest.com/JohnKaweskeCO/ (full of spam)

These facts were not disclosed to the plaintiffs but were discovered only by their own investigation in preparing this complaint.

51.     On or about June 27, 2016, Clover Top's directors determined to transfer the ownership of Durango from Peterson's father-in-law to Clover Top. They determined further to give him options in Clover Top for the assignment.

52.     Kaweske contemporaneously purchased AJC Industries dba FRAM/Tweedleaf, which he maintains belongs solely to him and not to Clover Top. Kaweske did not disclose to the plaintiffs that he had purchased a cannabis business for his own benefit and not for the benefit of Clover Top. Brian Tannenbaum and Tannenbaum, Trost & Burk assisted Kaweske in this transaction. Kaweske did not advise Clover Top shareholders or potential investors such as Sensoria of these facts. According to Peterson in 2019, however, Clover Top purchased AJC in March 2016 for its two medical marijuana licenses (one dispensary and one cultivation), and AJC currently owns five marijuana licenses registered to Kaweske (the only Clover Top principal who had Colorado residency at the time).

17

53.     According to the Colorado Secretary of State's website, Kaweske filed Amended and Restated Articles of Organization for Durango on July 6, 2016, identifying Clover Top as the sole owner of Durango, and listing Durango's address as the 2685 Property. Durango subsequently became delinquent in its filings with the State until Kaweske filed a Statement Curing Delinquency on July 9, 2017, and Brian Tannenbaum and Tannenbaum, Trost & Burk filed a Statement Curing Delinquency on July 26, 2019.

54.     According to Peterson in 2019, Kaweske oversaw all cultivation operations for Clover Top and its holdings as well as company finances, taxes, licenses, and legal issues in tandem with Tannenbaum, Trost & Burk. Peterson managed dispensary operations, patient care and online/offline marketing for TweedLeaf.

55.     On August 8, 2016, Clover Top provided its first investor update. It represented, among other things, that Clover Top had signed agreements on March 11, 2016, "to purchase our first licensed medical marijuana business" and that "operations have been moved into Clover Top's new Cultivation Facility and Medical Dispensary in Colorado Springs, Colorado." It represented that the "First day of operational control was May 1, 2016," and that "Monthly sales, thus far, have been:"

    May 2016  -  $37,775

    June 2016  -  $59,333

    July 2016  -  $94,383

Clover Top referred to its "initial holding" as "TweedLeaf," referred to its "TweedLeaf" brand, and represented that "Negotiations are underway on a second TweedLeaf Medical Dispensary in northern Colorado Springs, approximately 20 minutes from our existing Dispensary." The update stated that Clover Top had "raised approximately $500,000 in private funding" and that the company had "been able to produce phenomenal results." It was signed by Kaweske, Peterson,

18

and Peterson's wife; had an address of 330 East Costilla Street #418, Colorado Springs, CO 80903; and included pictures from the 1602 Property and the 2685 Property. The update provided an email address of info@clovertop.com and identified a website of www.CloverTop.com.

56.     According to the Colorado Secretary of State's website, on August 23, 2016, Kaweske filed Amended and Restated Articles of Organization for AJC, identifying himself as the sole member. Kaweske did not advise Clover Top shareholders or potential investors such as Sensoria of this fact.

57.     On October 12, 2016, Clover Top provided another investor update. It represented, among other things, that its "initial holding, TweedLeaf, has been operational for a little over five months and continues to experience increased growth." It represented that sales to date had been:

> May 2016  -  $37,775
>
> June 2016  -  $59,333
>
> July 2016  -  $94,383
>
> August 2016 -  $109,530
>
> September 2016. -  $123,402

It further represented, "We have secured licenses and property for the second TweedLeaf Medical Dispensary in northern Colorado Spring." The update stated that Clover Top "raised $550,000 in private capital through 'friends and family' funding at a $*6 million* valuation," and that a further offering was in development. It stated further, "We are also readying share certificates for your investments to date and plan to have them to you (along with some TweedLeaf swag) shortly." It was signed by Kaweske, Peterson, and Peterson's wife; had an address of 330 East Costilla Street #418, Colorado Springs, CO 80903; and included pictures

from the 1602 Property, the 2685 Property, and the anticipated "second Dispensary" site in

northern Colorado Springs. The update provided an email address of info@clovertop.com and

identified a website of www.CloverTop.com.

58.     According to Peterson in 2019, MMJ provided additional medical marijuana

dispensary and cultivation licenses that were purchased by Clover Top for its TweedLeaf

dispensary #2 and cultivation center #2 in October 2016, with registration to Kaweske as the

only Clover Top principal who had Colorado residency at the time. These were Nos. 402-01201

and 403-01850.

59.     On October 18, 2016, Kaweske told the other directors in an email, "We are

scheduled for the MED [Colorado Marijuana Enforcement Division] on January 12, 201[7] at

10:00am in Denver to transfer the license of MMJ 95, LLC to TWEEDLEAF, LLC."

60.     On November 1-3, 2016, Morton visited Colorado Springs and met with Kaweske

and Peterson. Kaweske thanked Morton for being the first investor in Clover Top and promised

him he would be the first investor paid. He also told Morton that Clover Top was "making

money." He did not disclose that he had himself secretly become involved in the cannabis

business outside of Clover Top's holdings.

61.     According to the Colorado Secretary of State's website, on November 15, 2016,

Kaweske registered the TweedLeaf name and logo as a trademark with AJC, with a date of first

use in commerce given as May 1, 2016. The goods or services identified were "Cannabis

Dispensary/Retail Store and products derived from Cannabis or pertaining to Marijuana."

Kaweske did not disclose this fact to Clover Top shareholders or potential investors such as

Sensoria.

62.     According to the Colorado Secretary of State's website, on November 16, 2016, Kaweske formed Sunlife. On information and belief from this filing, Kaweske is Sunlife's sole member. Kaweske also maintains in court filings made in pending cases in the State of Colorado (identified further below) that Sunlife is his own LLC and is not owned by Clover Top. On information and belief from those court filings, Sunlife is in the cannabis growing and cultivation business. Kaweske gave the principal office address of Sunlife as 19424 Highway 96 Unit C, Ordway, CO 81603. Kaweske did not disclose to Clover Top shareholders or potential investors such as Sensoria that he had started Sunlife or that he intended any separate cannabis business not to be a part of Clover Top. According to Peterson in 2019, Sunlife was intended to be Clover Top's wholly owned real estate and property management company established for the purposes of holding properties and leases in Ordway, Colorado.

63.     Morton formed Sensoria on November 17, 2016, relying on Kaweske's and Peterson's representations and omissions. Unaware that Kaweske and Peterson each had separate cannabis-related businesses apart from Clover Top, and unaware of the other omissions identified in the foregoing paragraphs, Sensoria paid Clover Top another $125,000.00 to purchase an additional 125,000 shares at $1.00 per share.

64.     On November 25, 2016, Clover Top issued stock certificate "No. 6" for 225,000 shares in Sensoria's name dated November 25, 2016. It was signed by Peterson as President and Kaweske as Secretary.

65.     According to the Colorado Secretary of State's website, on January 10, 2017, Kaweske filed Amended and Restated Articles of Organization for MMJ identifying himself as the sole member. Kaweske did not advise shareholders such as Sensoria of this fact.

66.     On January 20, 2017, Kaweske and Peterson provided another investor update. The information provided in the update stated, among other things: "We are excited to provide an update on your investment in the Colorado Medical Cannabis industry. The initial holding, TweedLeaf, has been operational for a little over eight months.  Thus far, sales have been:"

May 2016  -  $37,775

June 2016  -  $59,333

July 2016  -  $94,383

August 2016 -  $109,530

September 2016 -  $123,402

October 2016 -  $113,051

November 2016 -  $92,172

December 2016 -  $91,141

January 2017 -  $102,872 (*month to date 1-20-17*)

The information continued, including the following: "Construction has begun on a second dispensary ("TweedLeaf North") and is expected to be operational in March 2017. TweedLeaf North is situated on a one acre corner lot next to six lanes of highway in northern Colorado Springs near some of the most densely populated areas in the city." It also stated: "TweedLeaf is expanding its Cultivation to include a greenhouse in Crowley County, Colorado, approximately 1 hour and 15 minute drive southeast of Colorado Springs. TweedLeaf is leasing a 10,000 sq. foot greenhouse and 2,000 sq. foot warehouse on a two acre site. This expansion will both double TweedLeaf's production capability and reduce operating costs for production of cannabis flower. This location will offer industrial space to produce cannabis infused products." The update also said: "Thank you for your continued support and investment in Clover Top Holdings." It was

signed by Kaweske, Peterson, and Peterson's wife, and had a street address of 330 East Costilla Street #418, Colorado Springs, CO 80903.

67.     According to Peterson in 2019, an investment offering was made to one Manuel Welby Evangelista aka Welby Evangelista and his entity, DJDW, LLC, in or about February 2017. According to Peterson, DJDW signed a Term Sheet with Clover Top on February 22, 2017, and invested $300,000.00 in Clover Top through DJDW.

68.     Kaweske and Peterson subsequently introduced Evangelista to Sensoria, by telephone and email, as a new "team member." According to Peterson in 2019, Evangelista joined Clover Top as Business Director in or about February 2017, in charge of raising funds for expansion, and in fact raised $950,000.00 between March and September 2017. Moving forward, Evangelista participated with Kaweske and Peterson in providing updates to investors, acted as business director for the TweedLeaf brand, worked onsite in Colorado, provided access for Sensoria to the TweedLeaf locations, and raised money for investment in Clover Top. No further investor updates were provided in writing but were rather provided individually to Morton and Sensoria by telephone from Kaweske, Peterson, and/or Evangelista. Those updates touted Clover Top as operating successfully and making substantial amounts of money, with revenues akin to the numbers shown on the written investor updates, and with web traffic on the TweedLeaf website supporting those claims.

69.     According to Peterson and Evangelista, additional investment offerings in Clover Top were made to others – an investment group from China and individuals associated with the Denver Nuggets of the National Basketball Association. Sensoria understands Evangelista to have a familial relationship with the Chinese investment group based on the reference within Clover Top to Evangelista's "uncle."

70.     During this same time frame, according to Peterson in 2019, Kaweske and Evangelista, without the knowledge or consent of the Petersons or the Series A investors in Clover Top, allegedly sold securities in Ordway Farms to several investors, including a high-profile NBA power forward for an alleged 10% equity of $325,000.00 as well as his cousin for an alleged 2.5% equity.

71.     According to Peterson in 2019, both Peterson and Kaweske on behalf of AJC signed a greenhouse lease agreement with Mr. Dean Hiatt of Ordway, Colorado, for use of his greenhouse located at 19977 Tamarack Circle, Ordway, CO 81063. Clover Top paid Hiatt a down payment of $39,500 and agreed to pay $20,000 per month to lease the greenhouse facilities.

72.     According to Peterson in 2019, on August 4, 2017, Clover Top wired $168,501 to ABC Title & Closing for the purchase of 108 acres located at 19469 County Road H, Ordway, CO 81063. This property was registered to Sunlife, which was to be a wholly owned subsidiary of Clover Top. Kaweske sent Peterson and his wife an email on August 3, 2017, suggesting the name "Sunlife Agriculture" for the company to hold the property in Ordway, not disclosing that he had already previously formed Sunlife the previous year. Kaweske's email said, "This company will be owned 100% by Clovertop." According to Peterson in 2019, AJC was issued both medical and recreational marijuana cultivation licenses in Ordway for the County Road H property.

73.     According to Kaweske in his court filings identified further below, on or about August 18, 2017, Kaweske caused Sunlife to purchase a warehouse building and three greenhouses in Ordway, Crowley County, Colorado, for use in the cannabis growing business. The greenhouses and the building were delivered to Sunlife at 19469 County Road "H," Ordway,

CO 81063, a property owned by Sunlife, during September 2017. Based on information from both Peterson and Kaweske, Sensoria believes this is the land in Crowley County referred to in Clover Top investor updates as Clover Top's "Cultivation" site. Sunlife leased this land and its improvements and buildings to AJC, also owned by Kaweske, on June 1, 2018. All these and any related cannabis activities were to inure to the benefit of Clover Top and its shareholders and sole owners. However, Kaweske now claims these all belong to him and his other entities. According to Peterson in 2019, Clover Top paid $249,983.00 via Clover Top check signed by Kaweske on August 21, 2017, for a greenhouse purchase on this land.

74.     On September 12, 2017, Peterson as President of Clover Top caused Durango to file a Statement of Authority with the Colorado Secretary of State under Colo. Rev. Stat. Section 38-20-172, identifying himself as the person authorized to execute an instrument transferring real property held in the name of Durango, with no limitation on his authority.

75.     On September 18, 2017, the Colorado Department of Revenue, Enforcement Division – Marijuana, issued a letter to Peterson at an address of 5 Pine Road, Colorado Springs, CO 80903, stating: "The purpose of this correspondence is to inform you that on September 18, 2017, your requested PEI [Permitted Economic Interest] application was approved by the Marijuana Enforcement Division (MED)." The identified License Type was PEI Registration. The identified License number was # PEI-00074.

76.     At the time of Sensoria's investment in Clover Top, Clover Top was not registered with the State of Colorado as a foreign corporation authorized to conduct business in the State of Colorado. The Colorado Secretary of State's website shows Clover Top first registered as a foreign corporation authorized to conduct business in the State of Colorado on September 22, 2017. The principal office mailing address in Colorado was given as 330 E.

Costilla Street, Colorado Springs, Colorado 80903. The registered agent is The Company

Corporation. Kaweske filed the document for Clover Top.

77.     According to the Colorado Secretary of State's website, Ordway Farms was

formed on October 12, 2017. Its initial member was identified as "CLOVERTOP HOLDINGS,

INC." with an address at 330 E. Costilla Street, #418, Colorado Springs, CO 80903. According

to Peterson in 2019, Ordway Farms was intended to be Clover Top's wholly owned subsidiary.

78.     On November 29, 2017, the Colorado Department of Revenue, Enforcement

Division – Marijuana, issued a letter to AJC at an address of 330 E. Costilla St #418, Colorado

Springs, CO 80903, stating: "The purpose of this correspondence is to inform you that on

November 29, 2017, the requested PEI application, Christopher Peterson, was approved by the

Marijuana Enforcement Division (MED)." The identified License Type was Optional Premises.

The identified License number or numbers were # 403-01910, 403R-01022, 404R-00377. An

identical letter was issued that day naming Peterson's wife Renae. According to Peterson in

2019, this information was provided to the Petersons by Tannenbaum.

79.     According to Peterson in 2019, on December 2, 2017, Clover Top opened for

business its second TweedLeaf dispensary in Colorado Springs, located at 5495 N. Academy

Boulevard. This second dispensary was projected to more than double monthly revenues for

TweedLeaf in Colorado Springs.

80.     According to Peterson in 2019, on or about December 10, 2017, Kaweske shut

Peterson and his wife out of Clover Top and purported to terminate their employment with

Clover Top. According to an email from Kaweske to Peterson provided by Peterson in 2019,

Clover Top had "raised approximately $2,500,000," but its shareholders in Sensoria's position

"remain unaware of the current financial distress" of Clover Top. That same email blamed

Peterson and his wife for exorbitant spending helping cause that apparent current financial distress. These facts were not disclosed to shareholders in Sensoria's position.

81.     According to the Colorado Secretary of State's website, Kaweske formed JW Colorado and JW Ordway on January 18, 2018, with Kaweske and Evangelista as members. The following state trademarks have been registered to JW Colorado as of April 24, 2019: "CannaDews" for "Edible cannabis"; "XLeaf Labs" (with associated logos), "X Pen," and "Ascended Labs" for "Extracted Cannabis oils, resins, waxes, shatter and terpenes"; and "Camino Real" (with associated logos) for "Cannabis and cannabis products." Kaweske did not disclose to Morton or Sensoria that he had formed or begun operating JW Colorado or JW Ordway, which are in the cannabis business. JW Ordway was assisted in its filings with the State of Colorado by Tannenbaum. On information and belief from these facts, the "J" in "JW" stands for "John" Kaweske and the "W" stands for Welby Evangelista.

82.     According to Peterson in 2019, XLeaf was intended to be a wholly owned subsidiary of Clover Top formed on June 19, 2017, and/or used as a dba of AJC for use as a merchant account, later becoming XLEAF Labs (a cannabis concentrate manufacturing/retailer).

83.     On February 28, 2018, Kaweske bought a home in Colorado Springs for $525,000.00.

84.     According to information on the Colorado Secretary of State's website, Kaweske formed JW Trinidad on July 12, 2018, with Kaweske and Evangelista as members. Kaweske did not disclose to Clover Top shareholders such as Sensoria that he had formed or begun operating JW Trinidad. On information and belief based on the other facts set forth herein, JW Trinidad is a cannabis-related business.

85.     According to the Wyoming Secretary of State's website, Evangelista formed North Star on August 3, 2018. Kaweske and Evangelista are directors, and Evangelista is President. Kaweske did not disclose to Clover Top shareholders such as Sensoria that he had formed or begun operating North Star, which is in the cannabis business. According to the Colorado Secretary of State's website, Kaweske registered North Star to do business in Colorado as a foreign corporation on November 8, 2018, identifying Tannenbaum, Trost & Burk as its registered agent. On February 21, 2020, Kaweske filed a Periodic Report for North Star with the Colorado Secretary of State identifying Evangelista as North Star's registered agent. Kaweske did not inform Clover Top shareholders such as Sensoria of his efforts in connection with North Star.

86.     According to the Colorado Secretary of State's website, on August 15, 2018, Kaweske filed a Statement of Change Changing the Registered Agent Information for Ordway Farms to himself. Then, on September 5, 2018, Kaweske filed a "Statement of Change to Add an Attachment" in which he replaced Clover Top with himself as the sole member of Ordway Farms. He did not disclose these actions to Clover Top's shareholders such as Sensoria. According to Peterson in 2019, Kaweske allegedly sold securities related to Ordway Farms against Clover Top's interest and without knowledge or approval from shareholders like Sensoria.

87.     According to the United States Patent and Trademark Office search website, the TweedLeaf service mark was abandoned by TweedLeaf Delaware on September 10, 2018.

88.     On or about November 3, 2018, without leadup or warning, Evangelista called and texted Morton multiple times via cell phone and made physical and financial threats against him, orally and by text, using outrageous and extreme language going beyond all bounds of

28

decency, including threatening to kill Morton and his family, accusing Morton of stealing his money, asserting Morton's involvement in a "scam" against Evangelista, telling Morton that Sensoria and all shareholders in Clover Top were "f***ed," threatening legal action without grounds, and making demands for payment of millions of dollars.

89.     On January 10, 2019, North Star filed with the Securities and Exchange Commission an SEC Form D indicating it intended to offer for sale $7 million in securities in North Star. The filing identified both Kaweske and Evangelista as Executive Officers and Directors of North Star. Kaweske did not inform Clover Top shareholders such as Sensoria of this fact.

90.     According to Peterson in 2019, North Star listed TweedLeaf, TweedLeaf Dispensaries, XLeaf Labs, and Ordway Farms on EquityNet.com as Products/Services in connection with its $7 securities offering, describing its business as follows: "Founded in 2016, North Star (originally Ordway Farms) started with one cultivation facility and one dispensary. Their expertise in cultivation, manufacturing, and retail delivers a consistent and superior cannabis experience to their patients and customers. Today North Star is in three states with over 70,000 square feet of cultivation, 4 dispensaries and an extraction lab with the capacity to produce over 90,000 grams per month."

91.     On or about February 1, 2019, Clover Top became delinquent in its registration with the State of Colorado for failure to file a Periodic Report as required by law, a fact that Clover Top and its officers and directors did not disclose to shareholders such Sensoria.

92.     As of March 1, 2019, Clover Top's status with the Delaware Division of Corporations was void, which that division's website (https://icis.corp.delaware.gov/ecorp/entitysearch/) explains is a status given to a corporation that

has failed to pay its annual franchise tax for a period of one year. Clover Top and its officers and directors did not disclose this to its shareholders.

93.     The Delaware Division of Corporations website shows Clover Top as owing $108,566.68 in delinquent franchise taxes, with a last annual report filed in 2016. Clover Top and its officers and directors did not disclose this to Sensoria.

94.     Clover Top has failed to hold shareholder meetings as required by its Bylaws.

95.     Clover Top has failed to provide financial statements or annual business overviews as promised to Sensoria in its offering documents.

96.     Sensoria's repeated requests for information and financials to Clover Top and its officers and directors have been ignored or rejected.

97.     Sensoria has not received tax documents from Clover Top related to its investment.

98.     A separate entity with the same name as Clover Top, identified herein as Clover Top Colorado, was formed as a Colorado corporation before the initial investment offering to Sensoria, a fact that was not disclosed to Clover Top shareholders. Peterson filed Articles of Incorporation for Clover Top Colorado with the Colorado Secretary of State on November 9, 2015. The corporation was authorized to issue 6,000,000 common shares. The address of the Clover Top Colorado was given as 5 Pine Road, Colorado Springs, Colorado 80906. Clover Top Colorado currently enjoys an active status with the State of Colorado. Peterson is Clover Top Colorado's registered agent. According to the Colorado Secretary of State's website, Peterson last updated Clover Top Colorado's status by filing a Periodic Report on February 28, 2020, keeping Clover Top Colorado's status active.

99.     In or about March 2019, a Canadian company, Pan Andean Minerals Ltd., announced it had entered into an arm's length binding letter of intent dated as of March 11, 2019 ("LOI") with North Star. It described North Star as a "fully integrated producer, processor and distributor of medicinal and adult use cannabis with operations in various states in the U.S. including Colorado, California and Nevada." According to Pan Andean, the LOI outlined the proposed terms and conditions pursuant to which Pan Andean and North Star would effect a business combination that would result in a reverse takeover of the company by the security holders of North Star.

100.     Based on Sensoria's learning of potential additional investors in Clover Top identified in the foregoing paragraphs who were solicited, and including as well a Korean investment firm, made without information to or consent from the shareholders, Sensoria inquired repeatedly of Kaweske and Evangelista about the diluting effect of any such investments on the Clover Top shareholders' capitalization. Kaweske and Evangelista evaded and would never respond substantively to Sensoria's inquiries.

101.     Clover Top and its officers and directors did not offer to Sensoria on a pro rata basis shares sold to others as provided by the Sensoria's Subscription Agreement, effectively diluting Sensoria's investment in Clover Top.

102.     Sensoria repeatedly requested information regarding Clover Top's capitalization from its officers and directors, but Clover Top and its officers and directors failed or refused to provide such information. Kaweske, Clover Top's CFO, repeatedly put Morton off by telling him, "I'm just swamped" and "I need some help with the accounting." Clover Top and its officers and directors never did provide adjusted capitalization tables.

103.    On information and belief, based on the facts pleaded herein, assets, holdings, and subsidiaries of Clover Top have been transferred away from Clover Top, diluting Sensoria's investment, and rendering that investment, in the words of Kaweske, "no longer relevant."

104.    In or about February 2019, Kaweske told Morton that events and circumstances had rendered Sensoria's investment in Clover Top "no longer relevant." In response to questions from Morton about information related to Clover Top and to Sensoria's investment in Clover Top, Kaweske told Morton, "Technically, I don't have to give you anything because technically you don't own anything."

105.    Sensoria has since undertaken an investigation to obtain what facts it could through its own efforts, many of which are now set forth herein, including those identified as not properly disclosed to shareholders of Clover Top.

106.    Sensoria's efforts to obtain a resolution with Kaweske about its ownership in Clover Top resulted in draft potential agreements being prepared and circulated by and between counsel for Kaweske and Sensoria, and other settlement proposals being explored. Further, the following entities were identified as affiliated with the defendants in such a capacity that a release was requested with respect to such entities: AJC, Durango, Sunlife, MMJ, TweedLeaf LLC, Ordway Farms, and North Star. These discussions did not lead to any agreement.

107.    Sensoria has not received back any of its initial investment, let alone any return on that investment, nor any documentation accounting for the investment apart from share certificates for common stock.

108.    Sensoria has received no official communication from Clover Top since at least 2018.

109.    Clover Top has made varying representations at odds with each other to government officials and shareholders regarding its authorized and issued shares.

110.    According to the Wyoming Secretary of State's website, North Star filed a Profit Corporation Annual Report on August 6, 2019, identifying Kaweske and Evangelista as Directors and Evangelista as President.

111.    According to the Colorado Secretary of State's website, Kaweske formed Lifestream, on August 19, 2019, identifying the 1602 Property as Lifestream's principal address. On August 31, 2019, Kaweske filed Articles of Amendment adding "dba TweedLeaf" to Lifestream's name. On September 2, 2019, Lifestream filed a Statement of Correction Correcting the Entity Name, stating that it should be Lifestream Holdings LLC. Kaweske did not disclose these facts to Sensoria.

112.    According to the United States Patent and Trademark Office trademark search website, on September 10, 2019, JW Colorado filed for a federal trademark and service mark registration for the "TWEEDLEAF" word mark in numerous classes, covering: "Dietary and nutritional supplements"; "Eye Glasses; Sunglasses; Batteries"; "Clothing"; "Lighters for smokers"; and "Retail store and on-line retail store services featuring clothing, dietary and nutritional supplements, eye glasses, sunglasses, electronic cigarettes, electronic cigarette liquid, lighters for smokers."

113.    On information and belief from the Colorado and Wyoming Secretary of State filings identified herein, and from the TweedLeaf and North Star websites discussed next, Kaweske is now controlling the TweedLeaf brand and operations apart from Clover Top and under his separate entities. The website www.tweedleaf.net shows operations are now up to six locations, with two Medical Only stores in Colorado Springs, two Adult-Use Only stores in

33

Denver and Trinidad, and two different Medical+Rec stores in Denver and Trinidad. The two

Medical Only stores include the 1602 Property and the location given to the Colorado Secretary

of State as the principal address for TweedLeaf. Both Lifestream and North Star have

connections to this website. The website says that TweedLeaf was established in May 2016.

    114.    A website associated with North Star, https://www.northstarholdings.co, identifies

"The North Star Brands" to include TweedLeaf. It further states: "Since 2016 North Star

Holdings' flagship brand, TweedLeaf, has been a pioneer in the Medical and Adult-Use

Colorado cannabis market." Despite this representation, North Star was not formed until 2018,

though Clover Top's brand TweedLeaf has been in use since at least 2016. North Star's website

lists the addresses of its medical dispensary to be the 5495 Property and the 1602 Property,

identifying them respectively as "TweedLeaf Academy" and "TweedLeaf Colorado Ave." It also

lists under its "Adult Use Dispensar[ies]" addresses in Denver and Trinidad, Colorado, that

appear as addresses on www.tweedleaf.net. The website also provides a link to

www.tweedleaf.net.

    115.    Kaweske on the one hand and Peterson and his wife on the other hand have

alleged extensive wrongdoing between themselves in at least three lawsuits, and otherwise,

ostensibly including forgery, fraud, fraudulent and voidable asset transfers, lockout from

business operations, and other illegal conduct, facts that were not properly disclosed to the

shareholders of Clover Top. The cases are styled *Sunlife AG LLC v. Hiatt*, Case No.

2018CV30019, in the District Court for Crowley County, Colorado; *Sunlife AG LLC v. Peterson*,

Case No. 2019CV30000, in the District Court for Crowley County, Colorado; and *Peterson v.

Kaweske*, Case No. 2019CV30229, in the District Court for El Paso County, Colorado. In these

suits, Kaweske alleges that he and his entities own assets that he represented to Sensoria would

be or were owned by Clover Top exclusively, and Peterson alleges Kaweske locked him out of the Clover Top business.

116.    On October 3, 2019, Sensoria sent a demand letter through retained counsel with respect to its investment and related issues to Kaweske, Peterson, Evangelista, and Clover Top, among others. Sensoria tendered therein the return of its shares in Clover Top. To date, Sensoria has received no substantive relief in connection with its demand. In response to this letter, defendant Evangelista threatened to sue the plaintiffs if they pursued their claims as outlined. He also said he had "lost 10 TIMES more" on Clover Top than Sensoria had.

117.    To the extent necessary, the claims set forth herein are alleged alternatively, hypothetically, and/or inconsistently as provided by Fed. R. Civ. P. 8(d).

118.    The following entities are sometimes collectively referred to herein as the "Kaweske Entities": AJC, Sunlife, MMJ, TweedLeaf LLC, Lifestream, Ordway Farms, North Star, JW Colorado, JW Ordway, and JW Trinidad.

119.    According to Peterson in 2019, Clover Top Holdings' intended assets and subsidiaries before December 2017 included at least TweedLeaf Delaware, Durango, AJC, MMJ, Sunlife, Ordway Farms, and the XLeaf and XLeaf Labs names, and their holdings and assets.

**DERIVATIVE CLAIM PREREQUISITES**

120.    Sensoria was a shareholder of Clover Top at the time of the transactions complained of herein.

121.    This lawsuit is not a collusive action to confer jurisdiction that the Court would otherwise lack.

122.    The reasons for Sensoria not undertaking the effort to obtain the action desired from the directors include the following:

a.     Clover Top is not a functioning entity.

b.     Sensoria is unaware of who Clover Top's current directors purport to be.

c.     The last known directors of which Sensoria is aware include Kaweske, Peterson, and Peterson's wife. They are not functioning as directors of Clover Top. Moreover, they are in lawsuits among themselves in which they allege wrongdoing against each other.

d.     Kaweske and Peterson are defendants in this case, alleged to have acted in violation of their fiduciary duties and corporate governance and other obligations to Clover Top and its shareholders. They cannot reasonably be expected to file a lawsuit on behalf of Clover Top against themselves, and demand to do so would be futile.

e.     Sensoria sent notice and a demand through counsel to Kaweske and Peterson, among others, on October 3, 2019, seeking relief for the loss of its investment in Clover Top. Despite Sensoria's demand, neither Kaweske nor Peterson provided any substantive relief.

f.     Sensoria has been able to ferret out facts about Kaweske, the Kaweske Entities, Peterson, Clover Top, Evangelista, and the other defendants involved only by undertaking its own investigation over time and retaining legal counsel. This has been a frustrating, exhaustive, and expensive ordeal for Sensoria. The allegations in this complaint include numerous items that these defendants did not disclose to Sensoria.

g.     The last Sensoria was aware, Kaweske, Peterson, and Peterson's wife were in control of the finances, operations, assets, and claims of Clover Top.

h.     Kaweske and Peterson have engaged in conduct hostile to Sensoria and Clover Top and favorable to themselves as alleged in this complaint. Both have taken assets that

they represented belong and/or that do or should belong to Clover Top and exploited them for their own benefit.

i.      Sensoria's principal does not trust Kaweske or Peterson, and the relationship between these individuals is irreparably broken. The parties are now communicating through counsel.

j.      Kaweske has previously violated federal securities laws, a fact he never disclosed to Sensoria and one he tried affirmatively to hide. Kaweske appears to be engaged in a pattern of unlawful activity similar to what he previously engaged in that resulted in his being barred from the securities industry.

k.      Kaweske and Peterson have engaged in the conduct identified herein without notice to Sensoria, in contravention of its position as a minority shareholder, highlighting these individuals' intent to take steps that are in their own best interests as opposed to those of Clover Top.

l.      Kaweske and Peterson have a material interest in the subject of any demand in that they would be the target of the demand. As directors of Clover Top, Kaweske and Peterson constitute the majority of the board of directors as Sensoria last understood it to be constituted. Sensoria does not have representation on the board of directors that would allow it to overcome that majority.

m.      Kaweske and Peterson would be materially affected to their detriment by action that would be demanded of them, in a manner not shared by Clover Top or Sensoria.

n.      Brian Tannenbaum and Tannenbaum & Trost are the last known corporate counsel for Clover Top. However, on information and belief, they are actively assisting Kaweske in forming and running cannabis-related companies that are outside the Clover Top umbrella,

contrary to the interests of Clover Top. They cannot reasonably be expected to assist Clover Top in asserting claims against themselves.

        o.      To the extent the question of demand futility is bound to issues of business judgment and the standards of that doctrine's applicability, the case for a derivative action has been made here. Kaweske and Peterson as directors made conscious business decisions in breach of their fiduciary duties such that demand would be futile. Any threshold presumptions of director disinterest or independence are rebutted by the well-pleaded facts of this complaint. Furthermore, this complaint pleads particularized facts sufficient to create a reasonable doubt that the challenged transactions were the product of a valid exercise of business judgment. Kaweske and Peterson as directors had divided loyalties and stood to receive personal financial benefits from the transactions identified herein that were not equally shared by the shareholders, and they represent a majority of the board of directors as last constituted. Furthermore, there is reason to doubt that their actions were taken honestly and in good faith or reason to doubt that either Kaweske or Peterson adequately informed all other members of the board in making their individual decisions. Furthermore, this complaint alleges particularized facts establishing a reason to doubt that the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand. For instance, Kaweske and Peterson would face a substantial likelihood of personal liability by complying with Sensoria's demand to pursue litigation. They have, furthermore, acted with scienter, i.e., they had actual or constructive knowledge that their conduct was legally improper.

        p.      Sensoria fairly and adequately represents the interests of other minority shareholders similarly situated in enforcing the rights of Clover Top against the defendants. Sensoria is aware of 12 other minority shareholders who have likewise lost investments in

Clover Top estimated to total approximately $450,000.00 based on the conduct and information alleged herein. Recovery on the derivative claims for the benefit of Clover Top will thus benefit all other minority shareholders who are similarly situated.

q.      All other allegations in this complaint are incorporated herein by reference in support of the basis for the derivative claims asserted herein.

## FIRST CAUSE OF ACTION
**(Declaratory, Injunctive, and Other Equitable Relief Including an Accounting)**
**(*Sensoria Directly and Derivatively against All Defendants*)**

123.    All other paragraphs are incorporated herein by reference.

124.    A case or controversy has arisen between the parties.

125.    Sensoria, directly on its own behalf and derivatively on Clover Top's behalf, seeks a declaratory judgment from this Court pursuant to 28 U.S.C. §§ 2201-2202 with respect to the parties' respective positions. Specifically, Sensoria seeks a declaration determining Sensoria's interest in Clover Top, its actual value, and its value but for the defendants' wrongful conduct; Sensoria's actual damages; a determination that Sensoria is entitled to the return of its investment in Clover Top with interest and with any damages suffered and any other attendant relief available at law or in equity; a determination of Clover Top's assets; an order granting title to Clover Top in such assets of the defendants as are determined to be Clover Top's; a determination that any defendant holding or benefitting from assets belonging to Sensoria or Clover Top shall hold the assets and their benefits in a constructive trust for the benefit of Sensoria or Clover Top respectively; that Sensoria and Clover Top are entitled to damages for their losses; that Sensoria and Clover Top are entitled to recover on their claims as set forth herein; and such other determinations as are required to be made in the course of this suit.

126.     Sensoria further seeks a declaratory judgment construing any agreements, documents, or relevant law that may be bound up with or related to the principal determinations to be made herein and the other allegations set forth herein.

127.     Defendants' actions are causing Sensoria and Clover Top irreparable harm.

128.     The harm to Sensoria and Clover Top caused by defendants' actions on balance outweighs the harm that would result to defendants if an order enjoining such actions were to issue.

129.     Granting injunctive relief in this case is consonant with the public interest.

130.     Sensoria is likely to prevail on the merits of this case, or the case presents serious issues on the merits which should be the subject of further litigation.

131.     Sensoria has no adequate remedy at law that would provide complete relief.

132.     Injunctive relief under Rule 65 of the Federal Rules of Civil Procedure and otherwise is necessary to prevent irreparable harm. If necessary, the Court should also order a receivership and/or make other orders necessary and proper in equity or by virtue of statutory authority to preserve or alter the status quo and/or prevent irreparable harm.

133.     Because of the defendants' conduct, Sensoria is unable to determine how much, if any, money is due to it from defendants in excess of the $225,000.00 plus interest it invested in Clover Top. Accordingly, in addition to all other relief, Sensoria is entitled to an accounting of all relevant entities, to include the cost thereof.

## SECOND CAUSE OF ACTION
### (Violation of Securities Exchange Act of 1934, §§ 10(b) & 20(a) & Rule 10b-5)
#### (*Sensoria Directly against Kaweske, Peterson, and Clover Top*)

134.     All other paragraphs are incorporated herein by reference.

135.     Defendants Kaweske, Peterson, and Clover Top directly or indirectly used or employed, in connection with the purchase and sale of Sensoria's shares in Clover Top, a manipulative or deceptive device or contrivance in contravention of the rules and regulations prescribed by the Securities and Exchange Commission ("SEC"), in violation of Rule 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

136.     Based on the conduct described herein, Kaweske, Peterson, and Clover Top employed a device, scheme, or artifice to defraud; made an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and engaged in any act, practice, or course of business which operates or would operate as a fraud or deceit upon Sensoria, in connection with the purchase and sale of Sensoria's shares in Clover Top.

137.     Based on the conduct described herein, Kaweske, Peterson, and Clover Top made their misstatements and omissions of material fact with scienter.

138.     As described herein, Kaweske's, Peterson's, and Clover Top's misstatements and omissions were misleading.

139.     Kaweske's misstatements or omissions were material in that Sensoria would not have invested in Clover Top had the true facts been disclosed.

140.     Kaweske and Peterson also directly or indirectly controlled Clover Top, which is liable under the Securities Exchange Act and regulations as described herein, and cannot otherwise sustain their burden of showing they acted in good faith and did not directly or indirectly induce the acts constituting the violation or cause of action, and are therefore liable jointly and severally with and to the same extent as Clover Top under 15 U.S.C. § 78t(a).

141.    Sensoria has suffered damages as a result of Kaweske's, Peterson's, and Clover Top's conduct, and these defendants' fraudulent misrepresentations and omissions caused them loss, in an amount to be determined at trial in excess of $225,000.00 plus interest.

142.    Alternatively, Sensoria is entitled to a return of its investment plus interest and all other legal and equitable relief available to it as a result of these defendants' securities violations.

### THIRD CAUSE OF ACTION
**(Violation of Colorado Securities Act, C.R.S. §§ 11-51-501 & -604)**
**(*Sensoria Directly against Kaweske, Peterson, and Clover Top*)**

143.    All other paragraphs are incorporated herein by reference.

144.    Based on the conduct described herein, Kaweske, Peterson, and Clover Top, in connection with the offer, sale, and purchase of Sensoria's shares in Clover Top, directly or indirectly employed a device, scheme, or artifice to defraud; made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and engaged in an act, practice, or course of business which operates or would operate as a fraud or deceit upon Sensoria, in violation of C.R.S. § 11-51-501(1).

145.    Based on the conduct described herein, Kaweske, Peterson, and Clover Top acted recklessly, knowingly, or with an intent to defraud in selling Sensoria shares in Clover Top in violation of C.R.S. § 11-51-501(1), making them liable to Sensoria under C.R.S. § 11-51-604(3).

146.    Pursuant to C.R.S. § 11-51-604(3), Kaweske, Peterson, and Clover Top are liable to Sensoria for such legal or equitable relief that the Court deems appropriate, including rescission, actual damages, interest at the Colorado statutory rate, costs, and reasonable attorney fees.

147.    Kaweske and Peterson directly or indirectly controlled Clover Top, which is liable under C.R.S. § 11-51-604(3), and cannot otherwise sustain the burden of proof that they acted in good faith and did not, directly or indirectly, induce the act or acts constituting the violation or cause of action, making them liable jointly and severally with and to the same extent as Clover Top under C.R.S. § 11-51-604(5)(b).

148.    Based on the conduct described herein, Kaweske, Peterson, and Clover Top sold Sensoria shares in Clover Top in violation of section 11-51-501(1)(b) (Sensoria not knowing of the untruths or omissions), and cannot otherwise sustain their burden of proof that Sensoria did not know, and in the exercise of reasonable care could not have known, of the untruths or omissions, making them liable to Sensoria under C.R.S. § 11-51-604(4).

149.    Pursuant to C.R.S. § 11-51-604(4), Kaweske, Peterson, and Clover Top are liable to Sensoria for the consideration paid for its shares in Clover Top, together with interest at the Colorado statutory rate from the date of payment, costs, and reasonable attorney fees, upon the tender of the security, previously and hereby made.

### FOURTH CAUSE OF ACTION
**(Violation of Utah Uniform Securities Act, Utah Code §§ 61-1-1 & -22)**
**(*Sensoria Directly against Kaweske, Peterson, and Clover Top*)**

150.    All other paragraphs are incorporated herein by reference.

151.    Based on the conduct described herein, Kaweske, Peterson, and Clover Top, in connection with the offer, sale, and purchase of Sensoria's shares in Clover Top, employed a device, scheme, or artifice to defraud; made an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or engaged in any act, practice, or course of business which operates or would operate as a fraud or deceit upon Sensoria, in

connection with the purchase and sale of Sensoria's shares in Clover Top, in violation of Utah Code § 61-1-1.

152.    Pursuant to Utah Code § 61-1-22(1)(a)(ii) and (b), Kaweske, Peterson, and Clover Top are liable to Sensoria for the consideration paid for its shares in Clover Top, together with interest at 12% per year from the date of payment, costs, and reasonable attorney fees, upon the tender of its shares in Clover Top, previously and hereby made. Pursuant to Utah Code § 61-1-22(2)(a), and based on the conduct described herein, the Court should award Sensoria an amount equal to three times the consideration Sensoria paid for its shares in Clover Top, together with interest, costs, and attorney fees, because these defendants' conduct was reckless or intentional.

153.    Kaweske and Peterson directly or indirectly controlled Clover Top, which is liable under Utah Code § 61-1-22(1), as officers and directors of Clover Top, and cannot otherwise sustain their burden of proof that they did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. Pursuant to Utah Code § 61-1-22(4), Kaweske and Peterson are therefore liable to Sensoria jointly and severally with and to the same extent as Clover Top, with rights of contribution among those so liable.

### FIFTH CAUSE OF ACTION
#### (Breach of Fiduciary Duty)
#### (*Sensoria Directly and Derivatively against Kaweske and Peterson*)

154.    All other paragraphs are incorporated herein by reference.

155.    Defendants Kaweske and Peterson as officers, directors, and controlling shareholders of Clover Top owed fiduciary duties to Sensoria as a shareholder in Clover Top.

156.     By their conduct described herein, Kaweske and Peterson breached their fiduciary duties of loyalty, good faith, and care, and their acts and omissions constituted negligence, mismanagement, corporate waste, and/or actionable inattention.

157.     These breaches of fiduciary duty caused actual, proximate harm to Sensoria.

158.     Sensoria was damaged as a result of these breaches of fiduciary duty in an amount to be proven at trial, but no less than $225,000.00 principal amount.

159.     These defendants' acts and omissions in this case constitute a wrong done to the person or to personal or real property of Sensoria, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, in that such conduct was purposefully committed and the defendants must have realized such conduct was dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly Sensoria. Sensoria therefore reserves its right to add a claim for exemplary damages if permitted to do so and appropriate under C.R.S. § 13-21-102.

## SIXTH CAUSE OF ACTION
### (Breach of Contract)
### (*Sensoria Directly against Clover Top*)

160.     All other paragraphs are incorporated herein by reference.

161.     Based on the conduct described herein, Sensoria entered into one or more valid contracts with Clover Top for the purchase and sale of stock in Clover Top, and Sensoria agreed to pay money to Clover Top in exchange for the consideration identified herein.

162.     Sensoria fully performed its contract obligations.

163.     Clover Top breached its contract obligations by its actions as set forth herein.

164.     As a result of Clover Top's material breach of contract, Sensoria has been damaged in an amount to be proven at trial, but no less than $225,000.00 principal amount.

**SEVENTH CAUSE OF ACTION**
**(Fraudulent Misrepresentations and Nondisclosures)**
***(Sensoria Directly against Kaweske, Peterson, and Clover Top and Derivatively against***
***Kaweske and Peterson)***

165.     All other paragraphs are incorporated herein by reference.

166.     By their conduct described herein, defendants Kaweske, Peterson, and Clover Top made false representations and nondisclosures.

167.     These defendants made knowing misrepresentations of material fact. Sensoria and Clover Top both relied on the misrepresentations and nondisclosures of Kaweske and Peterson, and Sensoria also relied on the misrepresentations and nondisclosures of Clover; and each had the right or justification to rely thereon. Sensoria and Clover Top were damaged as a result of this reliance.

168.     These defendants also failed to disclose past or present facts that they had a duty to disclose, with intent to induce Sensoria and Clover Top to take a course of action they would not otherwise have taken, and Sensoria and Clover Top justifiably relied on those omissions. Sensoria and Clover Top were damaged as a result of this reliance.

169.     These defendants' acts and omissions in this case constitute a wrong done to the person or to personal or real property of Sensoria and Clover Top, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, in that such conduct was purposefully committed and the defendants must have realized such conduct was dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly Sensoria and Clover Top. Sensoria directly and derivatively therefore reserves its right to add a claim for exemplary damages if permitted to do so and appropriate under C.R.S. § 13-21-102.

**EIGHTH CAUSE OF ACTION**
**(Negligent Misrepresentation)**
***(Sensoria Directly against Kaweske, Peterson, and Clover Top and Derivatively against Kaweske and Peterson)***

170.    All other paragraphs are incorporated herein by reference.

171.    By their conduct described herein, defendants Kaweske, Peterson, and Clover Top, in the course of their business, profession, or employment, made misrepresentations of material fact, without reasonable care, for the guidance of Sensoria in its business transactions, with knowledge that their representations would be relied upon by Sensoria, and Sensoria justifiably relied on the misrepresentations to its detriment.

172.    By their conduct described herein, defendants Kaweske and Peterson, in the course of their business, profession, or employment, made misrepresentations of material fact, without reasonable care, for the guidance of Clover Top in its business transactions, with knowledge that their representations would be relied upon by Sensoria, and Sensoria justifiably relied on the misrepresentations to its detriment.

173.    Sensoria and Clover Top, respectively, have been damaged thereby in an amount to be proven at trial.

**NINTH CAUSE OF ACTION**
**(Corporate Waste)**
***(Sensoria Directly and Derivatively against Kaweske and Peterson)***

174.    All other paragraphs are incorporated herein by reference.

175.    By their conduct described herein, Kaweske and Peterson as officers and directors engaged in irrational transactions that were so one-sided that no business person of ordinary, sound judgment could conclude that Clover Top received adequate consideration. Such conduct constituted both procedural and substantive due care violations.

176.     Sensoria and Clover Top were damaged as a result of this corporate waste in an amount to be proven at trial.

## TENTH CAUSE OF ACTION
### (Breach of Fiduciary Duty and Legal Malpractice)
### (*Sensoria Derivatively against Tannenbaum and Tannenbaum & Trost*)

177.     All other paragraphs are incorporated herein by reference.

178.     Defendants Tannenbaum and Tannenbaum & Trost as legal counsel for Clover Top owed fiduciary duties and duties of care to Clover Top.

179.     By their conduct identified herein, Tannenbaum and Tannenbaum & Trost breached those duties owed to Clover Top.

180.     These breaches of duty caused actual, proximate harm to Clover Top.

181.     Clover Top was damaged as a result of these breaches in an amount to be proven at trial.

## ELEVENTH CAUSE OF ACTION
### (Conversion)
### (*Sensoria Derivatively against Kaweske, the Kaweske Entities, Durango, Peterson, Clover Top Colorado, and Does 1-100*)

182.     All other paragraphs are incorporated herein by reference.

183.     By their conduct described herein, defendants Kaweske, the Kaweske Entities, Durango, Peterson, Clover Top Colorado, and Does 1-100 took dominion, ownership, and control of Clover Top's assets when they were not authorized to do so, causing damage to Clover Top in an amount to be proven at trial.

184.     These defendants' acts and omissions in this case constitute a wrong done to the person or to personal or real property of Clover Top, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, in that such conduct was purposefully committed and the defendants must have realized such conduct was dangerous,

48

done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly Clover Top. Sensoria therefore reserves its right to add a claim for exemplary damages if permitted to do so and appropriate under C.R.S. § 13-21-102.

## TWELFTH CAUSE OF ACTION
### (Civil Theft)
***(Sensoria Derivatively Against Kaweske, the Kaweske Entities, Durango, Peterson, Clover Top Colorado, and Does 1-100)***

185.    All other paragraphs are incorporated herein by reference.

186.    Defendants Kaweske, the Kaweske Entities, Durango, Peterson, Clover Top Colorado, and Does 1-100 obtained Clover Top's assets by theft, robbery, or burglary and/or by subsequently coming into possession of the same.

187.    Pursuant to C.R.S. § 18-4-405, all such assets should be restored to Clover Top, and no sale, whether in good faith on the part of the purchaser or not, has divested Clover Top of its right to such property.

188.    Pursuant to C.R.S. § 18-4-405, Sensoria is also entitled to recover three times the amount of the actual damages sustained by Clover Top, and may also recover costs of the action and reasonable attorney fees as allowed by this section, other than against a good-faith purchaser or good-faith holder of the property.

## THIRTEENTH CAUSE OF ACTION
### (Fraudulent Transfer)
***(Sensoria Directly against Clover Top, Kaweske, the Kaweske Entities, Durango, Peterson, Clover Top Colorado, and Does 1-100, and Derivatively against Kaweske, the Kaweske Entities, Durango, Peterson, Clover Top Colorado, and Does 1-100)***

189.    All other paragraphs are incorporated herein by reference.

190.    Based on the conduct described herein, Sensoria as a "creditor" had and has "claims" against Clover Top, Kaweske, the Kaweske Entities, Durango, Peterson, Clover Top

Colorado, and Does 1-100 as "debtors," as those terms are defined in the Colorado Uniform Fraudulent Transfer Act, C.R.S. § 38-8-101 *et seq.* ("CUFTA").

191.    Based on the conduct described herein, Clover Top as a "creditor" had and has "claims" against Kaweske, the Kaweske Entities, Peterson, Clover Top Colorado, and Does 1-100 as "debtors," as those terms are defined in the Colorado Uniform Fraudulent Transfer Act, C.R.S. § 38-8-101 *et seq.* ("CUFTA").

192.    Based on the conduct described herein, these defendants effectuated one or more transfers of Clover Top's property among themselves.

193.    Based on the conduct described herein, these defendants made the transfers with actual intent to defraud Sensoria and Clover Top in violation of CUFTA, C.R.S. § 38-8-105(1)(a).

194.    Based on the conduct described herein, these defendants also made the transfers without Clover Top receiving a reasonably equivalent value in exchange for the transfers or obligations, and Clover Top was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transactions in which Clover Top engaged, or intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due, in violation of CUFTA, C.R.S. § 38-8-105(1)(b).

195.    Based on the conduct described herein, these defendants also made the transfers without receiving a reasonably equivalent value in exchange for the transfers at a time Clover Top was insolvent or became insolvent, in violation of CUFTA, C.R.S. § 38-8-106(1).

196.    Sensoria, acting directly on its own behalf and derivatively on behalf of Clover Top, is entitled to an avoidance of the transfers to the extent necessary to satisfy its claims; to an

attachment or other provisional remedy against these defendants' property; to an injunction

against further disposition of property by these defendants, or both; to a judgment against these

defendants as provided by CUFTA; and/or to such other remedies as may be available under

CUFTA, C.R.S. §§ 38-8-101 *et seq.*, including but not limited to C.R.S. §§ 38-8-108 and -109.

**FOURTEENTH CAUSE OF ACTION**
**(Civil Conspiracy)**
***(Sensoria Directly and Derivatively against Kaweske, the Kaweske Entities, Durango,***
***Peterson, Clover Top Colorado, Clover Top, Evangelista, Tannenbaum, Tannenbaum &***
***Trost, and Does 1-100)***

197.    All other paragraphs are incorporated herein by reference.

198.    Defendants Kaweske, the Kaweske Entities, Durango, Peterson, Clover Top

Colorado, Clover Top, Evangelista, Tannenbaum, Tannenbaum & Trost, and Does 1-100

constitute two or more legal persons.

199.    These defendants intended to accomplish an object, namely to deprive Clover Top

of assets that rightfully belong to Clover Top, and to deprive Clover Top's shareholders of their

value in Clover Top.

200.    Based on the conduct described herein, two or more of these defendants had a

meeting of the minds on the object or course of action to be accomplished.

201.    Based on the conduct described herein, two or more of these defendants engaged

in one or more unlawful overt acts.

202.    As a result of these defendants' conduct, Sensoria and Clover Top have suffered

damages in an amount to be proven at trial.

203.    These defendants' acts and omissions in this case constitute a wrong done to the

person or to personal or real property of Sensoria and Clover Top, and the injury complained of

is attended by circumstances of fraud, malice, or willful and wanton conduct, in that such

51

conduct was purposefully committed and the defendants must have realized such conduct was dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly Sensoria and Clover Top. Sensoria therefore reserves its right to add a claim for exemplary damages if permitted to do so and appropriate under C.R.S. § 13-21-102.

### FIFTEENTH CAUSE OF ACTION
**(Intentional Interference with Contract)**
***(Sensoria Directly and Derivatively against Kaweske, the Kaweske Entities, Durango, Peterson, Clover Top Colorado, Evangelista, Tannenbaum, and Tannenbaum & Trost, and Does 1-100)***

204.    All other paragraphs are incorporated herein by reference.

205.    Defendants Kaweske, the Kaweske Entities, Durango, Peterson, Clover Top Colorado, Evangelista, Tannenbaum, and Tannenbaum & Trost were aware of the contracts between Clover Top and Sensoria.

206.    These defendants intended that Clover Top breach the contract between Clover Top and Sensoria.

207.    By their conduct described herein, these defendants induced Clover Top to breach or made it impossible for Clover Top to perform its contracts with Sensoria.

208.    By their conduct described herein, these defendants acted improperly in causing the result.

209.    These defendants' acts and omissions in this case constitute a wrong done to the person or to personal or real property of Sensoria and Clover Top, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, in that such conduct was purposefully committed and the defendants must have realized such conduct was dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and

safety of others, particularly Sensoria and Clover Top. Sensoria therefore reserves its right to add

a claim for exemplary damages if permitted to do so and appropriate under C.R.S. § 13-21-102.

### SIXTEENTH CAUSE OF ACTION
#### (Aiding and Abetting Breach of Fiduciary Duty)
*(Sensoria Directly and Derivatively against The Kaweske Entities, Durango, Clover Top Colorado, Evangelista, Tannenbaum, Tannenbaum & Trost, and Does 1-100)*

210.    All other paragraphs are incorporated herein by reference.

211.    By their conduct described herein, Kaweske and Peterson breached their fiduciary

duties to Sensoria and Clover Top.

212.    By their conduct described herein, the Kaweske Entities, Durango, Clover Top

Colorado, Evangelista, Tannenbaum, and Tannenbaum & Trost, knowingly participated in

Kaweske's and Peterson's breaches.

213.    Sensoria and Clover Top suffered damages as a result of these defendants'

conduct, in an amount to be proven at trial.

### SEVENTEENTH CAUSE OF ACTION
#### (Unjust Enrichment/Constructive Trust)
*(Sensoria Directly and Derivatively against All Defendants)*

214.    All other paragraphs are incorporated herein by reference.

215.    By their conduct described herein, all defendants received a benefit at the expense

of Sensoria and Clover Top – Clover Top at the expense of Sensoria, and all other defendants at

the expense of Clover Top – and it would be unjust for these defendants to retain the benefit

without commensurate compensation.

216.    All defendants are liable in restitution to Sensoria, directly and derivatively, in an

amount to be proven at trial.

217.    In addition to all other relief granted, the Court should impose a constructive trust

upon all defendants as a remedy for unjust enrichment.

## EIGHTEENTH CAUSE OF ACTION
### (Outrageous Conduct/Intentional Infliction of Emotional Distress)
### (*Morton against Evangelista*)

218.     All other paragraphs are incorporated herein by reference.

219.     By his conduct described herein, defendant Evangelista, by conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community, intentionally caused Morton severe emotional distress.

220.     Evangelista's conduct toward Morton was outrageous and intolerable in that it offends generally accepted standards of decency and morality.

221.     Evangelista engaged in such conduct with the purpose of inflicting emotional distress or where any reasonable person would have known that such would result.

222.     As a proximate cause of Evangelista's conduct, plaintiff Morton was damaged in an amount to be proven at trial.

223.     Evangelista's acts constitute a wrong done to the person or to personal or real property of Morton, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, in that such conduct was purposefully committed and this defendant must have realized such conduct was dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly this plaintiff. Morton therefore reserves its right to add a claim for exemplary damages if permitted to do so and appropriate under C.R.S. § 13-21-102.

## NINETEENTH CAUSE OF ACTION
### (Lanham Act Violations, 15 U.S.C. §§ 1051 *et seq.*)
### (*Sensoria Derivatively against Kaweske, the Kaweske Entities, Durango, Peterson, and Clover Top Colorado*)

224.     All other paragraphs are incorporated herein by reference.

225.     By their conduct described herein, defendants Kaweske, the Kaweske Entities, Durango, Peterson, and Clover Top Colorado have, in connection with their goods and services, used in commerce words, terms, names, symbols, devices, or a combination thereof, or a false designation of origin, or a false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of these defendants with Clover Top and its TweedLeaf brand and mark, and other cannabis-related words, names, products, brands, marks, symbols, and the like, or as to the origin, sponsorship, or approval of their goods, services, or commercial activities by Clover Top; and in commercial advertising or promotion, have misrepresented the nature, characteristics, or qualities of goods, services, or commercial activities of themselves and Clover Top, in violation of 15 U.S.C. § 1125, such that Sensoria believes that Clover Top is or is likely to be damaged by these defendants' acts.

226.     Sensoria is entitled to relief under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, including but not necessarily limited to Clover Top's damages, these defendants' profits, costs of action, and injunctive relief under §§ 1114 to 1125.

## JURY DEMAND

Demand is hereby made for a trial by jury on all claims triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Sensoria prays for judgment in their favor and against defendants, jointly and/or severally as the facts may appear, and as set forth above, as follows:

1.     Compensatory damages in an amount to be determined at trial, an accounting as necessary to determine the same, and imposition of a constructive trust against the defendants identified above in connection with the claims advanced herein.

2.      Alternatively, rescission of Sensoria's purchase of shares in Clover Top and return of its investment, with interest and any appropriate other relief provided by law or equity.

3.      All relevant relief available at law, in equity, or pursuant to the statutes pleaded herein or any other relevant law or rule, including but not necessarily limited to that set forth in each of the causes of action above.

4.      The right reserved hereunder to add a claim for exemplary damages if permitted to do so and appropriate under C.R.S. § 13-21-102 or as otherwise provided by law.

5.      Equitable relief based on the facts as they may appear, including declaratory, injunctive, and other such relief as may be required, including an accounting from all relevant entities.

6.      Interest, costs, and attorney fees as the same may be allowed by law.

7.      Such other and further relief as the Court deems just and equitable in the circumstances.

DATED this 3rd day of April, 2020.

CHRISTIANSEN LAW, PLLC


_____/s/ Stephen K. Christiansen_____
Stephen K. Christiansen
CHRISTIANSEN LAW, PLLC
311 South State Street, Ste. 250
Salt Lake City, UT 84111
Telephone: (801) 716-7016
Facsimile: (801) 716-7017
Email: steve@skclawfirm.com
*Attorney for Plaintiffs*

**<u>RULE 23.1 VERIFICATION</u>**

I hereby verify on behalf of Sensoria, LLC, that the foregoing allegations made in connection with the derivative claims set forth herein are true and correct to the best of my knowledge, information, and belief. My electronic signature affixed with my authorization below shall be treated the same as an original signature.

SENSORIA, LLC

By:    /s/ Gordon Morton
          Gordon Morton, Manager
          (E-signature affixed with authorization given to e-filer)