**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-00942-MEH

SENSORIA, LLC, directly on its own behalf and derivatively on behalf of Clover Top Holdings, Inc., and GORDON MORTON,
Plaintiffs,

v.

JOHN D. KAWESKE,
CHRISTOPHER S. PETERSON,
CLOVER TOP HOLDINGS, INC.,
AJC INDUSTRIES, LLC,
DURANGO MANAGEMENT, LLC,
SUNLIFE AG, LLC,
MMJ 95, LLC,
TWEEDLEAF LLC, a Colorado limited liability company,
TWEEDLEAF , LLC, a Delaware limited liability company,
LIFESTREAM HOLDINGS LLC,
ORDWAY FARMS, LLC,
NORTH STAR HOLDINGS a/k/a North Star Holdings, Inc.,
MANUEL WELBY EVANGELISTA a/k/a Welby Evangelista,
DJDW, LLC,
JW COLORADO, LLC,
JW ORDWAY, LLC,
JWTRINIDAD, LLC,
BRIAN TANNENBAUM,
TANNENBAUM & TROST, LLC f/k/a Tannenbaum, Trost & Burk, LLC, and
Does 1-100,
Defendants.

## DEFENDANTS' (BRIAN TANNEBAUM AND TANNENBAUM & TROST, LLC) MOTION TO DISMISS

Defendants, Brian Tannenbaum and Tannenbaum & Trost, LLC, through counsel, Deisch, Marion & Klaus P.C. respectfully move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the claims against them with prejudice.

As grounds therefore, Defendant states as follows:

**Motion to Dismiss**                                                                                                                    **Page 1**

1. **Certificate of Conferral**. Pursuant to D.C. COLO. LCivR 7.1, the undersigned conferred with Plaintiffs' counsel Stephen K. Christiansen on June 5, 2020, who opposes the relief requested.

2. **Introduction**.

Plaintiffs have filed a 56 page Complaint with 226 separate paragraphs of allegations. On one hand, the Complaint goes in to great detail setting forth the alleged past bad actions of John Kaweske. Plaintiffs then go on to allege an elaborate scheme on the part of Kaweske and Christopher Peterson to defraud them though investment in the Defendant entity, Clover Top Holdings, Inc. According to the Plaintiffs, this scheme involved at least ten different entities and numerous transactions. The gist of the Complaint is that Kaweske and Peterson promised big things to Gordon Martin if he invested in Clover Top. However, the alleged scheme gets pretty fuzzy when it comes to specifically tying together exactly what Kaweske and Peterson did aside from their bogus promises.

On the other hand, Plaintiffs have made less than a dozen allegations that barely reference Defendants, Brian Tannenbaum and Tannenbaum & Trost. Those allegations fail to allege any particular acts of wrongdoing on the part of Brian Tannenbaum or Tannenbaum & Trost (collectively reference as "Tannenbaum"). Rather, those few allegations referencing Tannenbaum state what can only be described as routine legal services.

Plaintiffs conflate the duties that Tannenbaum may have owed as the attorney for Kaweske, Peterson, and others with the duties the officers, directors, managers and majority owners may have owed to the Plaintiffs. Plaintiffs then impute the alleged wrongdoing of Kaweske and Peterson to Tannenbaum with nothing more than conclusory statements disguised as factual allegations. After even a casual reading the claims against Tannenbaum the Court will

recognize that such claims are not plausible, fail to state a claim upon which relief can be granted, and should be dismissed with prejudice.

### 3. **The Allegations against Brian Tannenbaum or Tannenbaum & Trost**.

Because there are so few allegations specifically referencing Tannebaum, they can be listed verbatim as follows:

A. In paragraph 33, Plaintiff alleges that "on or about October 30, 2015, Clover Top retained Brian and Tannenbaum Trost & Burk to represent Clover Top. The legal services to be provided were: 'Representation and consulting regarding the purchase and/or sale of certain marijuana licenses, and any other services the Client may request from time to time.' According to Peterson in 2019, and as demonstrated by the other facts pleaded herein, Tannenbaum and his firm were retained as legal counsel for Clover Top for both cannabis and corporate law."

B. In paragraph 38, it is alleged that "[a]ccording to Peterson in 2019, funds were transferred to Tannenbaum, Trost & Burk on February 5, 2016, for the purpose of Clover Top purchasing two existing medical marijuana licenses, Nos. 402-00390 (dispensary license) and 403-00585 (cultivation license), from AJC dba FRAM."

C. In paragraph 48 it is alleged that "[o]n April 25, 2016, Peterson wrote an email to legal counsel Brian Tannenbaum of Tannenbaum Trost & Burk and to the other directors saying, 'We will be changing the name to TweedLeaf.' Tannenbaum responded, "You could change the name by adding the DBA of Tweedleaf to FRAM with a simple filing before you do the Change of Ownership. Then since you are purchasing FRAM you also own the DBA."

D. In paragraph 52 Plaintiffs allege that "Kaweske contemporaneously purchased AJC Industries dba FRAM/Tweedleaf, which he maintains belongs solely to him and not to Clover Top. Kaweske did not disclose to the plaintiffs that he had purchased a cannabis business for his

**Motion to Dismiss**                                                                                                         **Page 3**

own benefit and not for the benefit of Clover Top. Brian Tannenbaum and Tannenbaum, Trost & Burk assisted Kaweske in this transaction."

E.     In paragraph 53, Plaintiffs allege that "Kaweske filed Amended and Restated Articles of Organization for Durango on July 6, 2016, identifying Clover Top as the sole owner of Durango, and listing Durango's address as the 2685 Property. Durango subsequently became delinquent in its filings with the State until Kaweske filed a Statement Curing Delinquency on July 9, 2017, and Brian Tannenbaum and Tannenbaum, Trost & Burk filed a Statement Curing Delinquency on July 26, 2019."

F.     In paragraph 54, Plaintiffs allege that "[a]ccording to Peterson in 2019, Kaweske oversaw all cultivation operations for Clover Top and its holdings as well as company finances, taxes, licenses, and legal issues in tandem with Tannenbaum, Trost & Burk. Peterson managed dispensary operations, patient care and online/offline marketing for TweedLeaf."

G.     In paragraph 84, Plaintiffs allege that "[a]ccording to the Colorado Secretary of State's website, Kaweske registered North Star to do business in Colorado as a foreign corporation on November 8, 2018, identifying Tannenbaum, Trost & Burk as its registered agent."

H.     In paragraph 122.n, Plaintiffs allege that "Brian Tannenbaum and Tannenbaum & Trost are the last known corporate counsel for Clover Top. However, on information and belief, they are actively assisting Kaweske in forming and running cannabis-related companies that are outside the Clover Top umbrella, contrary to the interests of Clover Top. They cannot reasonably be expected to assist Clover Top in asserting claims against themselves."

The foregoing are the only allegations specific to Tannenbaum.  There are no allegation of any act by Tannebaum that is improper.  Similarly, there are no allegations expressly tying

Tannebaum to any of the alleged bad acts of Kaweske and Peterson. It appears that many allegations are not based on any knowledge of the Plaintiffs or supported by evidence, but are borrowed from allegations made by Peterson in separate litigation between Peterson and Kaweske.[1] There are also numerous allegations where Kaweske and Peterson acted on behalf of the various entities without the assistance of any counsel. In short, accepting all of the allegations regarding Tannenbaum to be true, the Complaint fails to state a plausible claim against Tannenbaum.

### 4. **Standard of Review**.

To survive a Fed.R.Civ.P. 12(b)(6) motion to dismiss, a complaint or counterclaim must "contain sufficient factual matter, accepted as true, to state claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007); *see also Warne v. Hall*, 373 P.3d 588, 589 (Colo. 2016). Under the plausibility standard a complaint's factual allegations must raise a right to relief "above a speculative level." *Twombly*, 550 U.S. at 565. "A plaintiff must 'nudge his claim across the line from conceivable to plausible' in order to survive a motion to dismiss." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570).

For example, a counterclaim that states "mere 'labels and conclusions' and a 'formulaic recitation of the elements of a cause of action' will not suffice." *Id*. at 1191 (quoting *Twombly*, 550 U.S. at 555). After disregarding conclusory statements, a complaint can survive only if "the remaining, factual allegations plausibly suggest a defendant is liable." *Id.* A complaint must also "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery

---

1. That case is pending in the El Paso County District Court, case no. 2019cv20339. It is worth noting that seven of the eight claims of Peterson against Kaweske were dismissed on the grounds that they involved an alleged "partnership" between Kaweske and Peterson that was not part of the corporate entity involved (Clover Top).

**Motion to Dismiss** **Page 5**

under some viable legal theory." *Hull v. Colo. Bd. of Governors*, 805 F. Supp. 2d 1094, 1102 (D. Colo. 2011).

### 5. **Application of Law to the Claims**.

#### A. **Tenth Cause of Action**

In Plaintiffs' *Tenth Cause of Action*, they assert claims of *Breach of Fiduciary Duty and Legal Malpractice*. Initially, it is odd that Plaintiff has lumped together these two theories together as one claim. In particular, the Complaint alleges regarding this claim as follows:

> 178. Defendants Tannenbaum and Tannenbaum & Trost as legal counsel for Clover Top owed fiduciary duties and duties of care to Clover Top.
>
> 179. By their conduct *identified herein*, Tannenbaum and Tannenbaum & Trost breached those duties owed to Clover Top. [Emphasis added]

Tannenbaum is not alleged to be a shareholder, director, or officer of Clover Top. Therefore, any duty owed by Tannenbaum arises solely from his status as attorney for Clover Top. Thus, the claim, as against Tannenbaum, is dependent solely on Plaintiffs' status as derivative of Clover Top . Tannenbaum disputes Plaintiffs' status is derivative. No conduct in violation of any duty owed by Tannenbaum is identified anywhere in the Complaint.

Indeed, no specific duty of care is alleged. Plaintiff has not alleged any lack of competence, conflict of interest or any other violation of the Rules of Professional Conduct. Nor is any action by Tannnbaum in violation of any indentified duty. To establish a legal malpractice claim the plaint iff must show that their attorney was negligent by provng three elements: (1) the attorney owed a duty of care to the client; (2) the attorney breached that duty; and (3) by breaching his duty, the attorney proximately caused damage to the client. *Hopp & Flesch, LLC v. Backstreet*, 123 P.3d 1176, 1183 (Colo. 2005), *as modified on denial of reh'g* (Dec. 19, 2005)(*Citing, Stone v. Satriana,* 41 P.3d 705, 712 (Colo.2002)).

Separately, the officers, directors, and controlling shareholders of a corporation have a fiduciary duty to act in good faith and in a manner they reasonably believe to be in the best interests of the corporation and all of its shareholders. *Polk v. Hergert Land & Cattle Co.*, 5 P.3d 402, 405 (Colo. App. 2000)(*Citing Michaelson v. Michaelson,* 939 P.2d 835 (Colo.1997)). This duty exists independent of any duties owed by a corporation's lawyers. Whether or not the Kaweske and Peterson breached this duty has no bearing on whether Tannenbaum breached his duty as a lawyer without specific and direct allegations which are clearly absent from the Complaint. There is no facts alleged that suggest that Tannenbaum was ever aware that the Plaintiffs existed.

### B.    **Fourteenth Cause of Action**

Plaintiffs' *Fourteenth Cause of Action* asserts a claim of *Civil Conspiracy*. To establish a claim for civil conspiracy, Plaintiffs must show by a preponderance of the evidence that there exists: (1) an object to be accomplished; (2) an agreement by two or more persons on a course of action to accomplish that object; (3) in furtherance of that course of action, one or more unlawful acts which were performed to accomplish a lawful or unlawful goal, or one or more lawful acts which were performed to accomplish an unlawful goal; and (4) damages to the plaintiff as a proximate result. *Double Oak Const., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003)(Citations omitted).

Not dissimilar to the issues considered by the United States Supreme Court in *Twombly* regarding a conspiracy under § 1 of the Sherman Act, this claim requires an element of an agreement to accomplish the unlawful object of a conspiracy, *See Twombly, supra*, 550 U.S. at 556-557. Here, like *Twombly*, the allegations are insufficient to nudge Plaintiffs' claim over the plausibility line. Indeed, in the case at bar, there are no allegations to support either the second or

third elements of this claim. There are no allegations of a specific agreement of any kind whatsoever. Indeed, there is no allegations, beyond the most vague and conclusory allegation, that any of the acts of Tannenbaum are in furtherance of any putative goal. This claim must be dismissed.

      C.      **Fifteenth Cause of Action.**

Plaintiffs' *Fifteenth Cause of Action* asserts a claim of *Intentional Interference with Contract*. In particular, the Complaint alleges:

> 205. Defendants Kaweske, the Kaweske Entities, Durango, Peterson, Clover Top Colorado, Evangelista, Tannenbaum, and Tannenbaum & Trost were aware of the contracts between Clover Top and Sensoria.

The foregoing allegation is totally conclusory and must, therefore, be ignored or disregarded. *Khalik, supra, at* 1191. One can only presume that Paragraph 205 refers to the contract alleged in Paragraph 46. However, this not readily apparent because Paragraph 205 refers to contracts in the plural, as if there are more than one contract. There is no allegation that Tannenbaum drafted the contract, no allegation that Tannenbaum closed the contract, or that Tannenbaum assisted in the implementation or performance of that contract. Plaintiffs fail to allege that they ever met with or corresponded with Tannenbaum regarding any subject at all, let alone the alleged contract(s).

A careful reading of the Complaint suggests that the Plaintiffs are conflating an actual contract with other promises or representations they claim were made related to Clover Top. The tort of intentional interference with contract is not a substitute for claims of fraud. The existence of this tort is to protect the relationship between parties to a contract; this protection, however, is not absolute. The *Restatement (Second) of Torts* (Restatement) describes the tort, specifying the elements that underlie liability for inducing breach of contract:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

*Restatement (Second) of Torts* § 766 (1977) (emphasis added). *Mem'l Gardens, Inc. v. Olympian Sales & Mgmt. Consultants, Inc.*, 690 P.2d 207, 210 (Colo. 1984).

There are no allegations that, if true, suggest that Tannenbaum induced or caused Cover Top to breach any contract or agreement. This is an essential element of this claim. There are no allegations to support the claim of intentional interference against Tannenbaum.

### D. **Sixteenth Cause of Action.**

In Plaintiffs' *Sixteenth Cause of Action*, they assert a claim of *Aiding and Abetting Breach of Fiduciary Duty*. In particular, the Complaint alleges:

> 212. By their conduct described herein, the Kaweske Entities, Durango, Clover Top Colorado, Evangelista, Tannenbaum, and Tannenbaum & Trost, knowingly participated in Kaweske's and Peterson's breaches.

The forgoing allegation is again totally conclusory and must be disregarded. Paragraph 212 is nothing more than a legal conclusion couched as a factual allegation. Not one allegation is made that offers even a shred of factual support to the claim that Tannenbaum acted knowingly in furtherance of Kaweske and Peterson's scheme. Plaintiffs have not even alleged sufficient fact for an argument based on circumstantial evidence or logical inference. This claim should be dismissed.

### E. **Seventeenth Cause of Action.**

Plaintiffs' *Seventeenth Cause of Action* asserts a claim of *Unjust Enrichment/Constructive Trust*. The gist of this claim is that Kaweske and Peterson have unjustly benefited from their receipt of Sensoria's investment in Clover Top. Giving the Plaintiffs the benefit of the doubt, it is conceivable

that assets that Plaintiffs believe *should* have ended up in Clover Top somehow ended up in other entities. It is impossible, however, to merely assume that those assets have somehow unjustly benefited Tannenbaum. Plaintiffs' make no attempt to explain how Tannenbaum unjustly benefited from Plaintiffs' investment. Once again Plaintiffs want to make bald conclusory assertions against Tannenbaum by conflating the lawyer with the officers and directors of the Defendant entities.

WHEREFORE, for all the reasons above, Defendants, Brian Tannenbaum and Tannenbaum & Trost, LLC, respectfully move this Court for an Order dismissing all claims as against them, with prejudice, and for such other and further relief and this Court deems just and proper.

Respectfully submitted,

Dated this ___15TH___ day of June 2020.

                                                DEISCH, MARION & KLAUS, P.C.

                                                */s/Jeffrey B. Klaus*
Timothy F. Marion, #20901
Jeffrey B. Klaus, #15104
851 Clarkson Street
Denver, Colorado 80218
303-837-1122 (phone)
303-832-6750 (facsimile)
jbk@deisch-marion.com
tim_marion@deisch-marion.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 15TH day of June 2020, a true and correct copy of the above and foregoing **MOTION TO DIMSISS** were filed and/or served on the following by the means set forth below:

All Counsel of Record

*Attorneys for Plaintiffs*

Stephen K. Christiansen
Christiansen Law, PCCL
311 South State Street, Suite 250
Salt Lake City, UT 84111
Telephone: 801-716-7016
steve@skelawfirm.com
☐ fax   ☐ mail   ☐ delivery   ☒ "e-service"

*Attorneys for Defendants John Kaweske, et al*

Tamera D. Westerberg
Thomas A. Olsen
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: 303.244.1800
Facsimile: 303.244.1879
westerberg@wtotrial.com
olsen@wtotrial.com
☐ fax   ☐ mail   ☐ delivery   ☒ "e-service"

*/s/Jeffrey B. Klaus*
Jeffrey B. Klaus, #15104