IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00942-MEH

SENSORIA, LLC, directly on its own behalf and derivatively on behalf of
CLOVER TOP HOLDINGS, INC., a Delaware corporation; and GORDON
MORTON,

Plaintiffs,

v.

JOHN D. KAWESKE;
CHRISTOPHER S. PETERSON;
CLOVER TOP HOLDINGS, INC., a Delaware corporation;
CLOVER TOP HOLDINGS, a Colorado corporation;
AJC INDUSTRIES, LLC;
DURANGO MANAGEMENT, LLC;
SUNLIFE AG, LLC;
MMJ 95, LLC;
TWEEDLEAF LLC, a Colorado limited liability company;
TWEEDLEAF, LLC, a Delaware limited liability company;
LIFESTREAM HOLDINGS LLC;
ORDWAY FARMS LLC;
NORTH STAR HOLDINGS aka NORTH STAR HOLDINGS, INC.;
MANUEL WELBY EVANGELISTA aka WELBY EVANGELISTA;
DJDW, LLC;
JW COLORADO, LLC;
JW ORDWAY, LLC;
JW TRINIDAD, LLC;
BRIAN TANNENBAUM;
TANNENBAUM & TROST, LLC; and
DOES 1-100,

Defendants.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court are Defendants' Motions to Dismiss (ECF 107, 109, 110). The Motions
are fully briefed, and the Court finds that oral argument will not materially assist in their
adjudication. For the reasons that follow, the Motions are granted in part and denied in part.

## BACKGROUND

### I.    Alleged Facts

For purposes of this ruling, the Court accepts as true the factual allegations—but not any legal conclusions, bare assertions, or conclusory allegations—that Plaintiffs raise in their Amended Complaint. ECF 95. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (accepting as true a plaintiff's factual allegations for purposes of Fed. R. Civ. P. 12(b)(6) analysis).

Defendant John D. Kaweske ("Kaweske") is a citizen of Colorado. ECF 95 at ¶ 3. Defendant Christopher S. Peterson ("Peterson") is citizen of either Colorado or Arizona. *Id*. at ¶ 5. Peterson incorporated Clover Top Holdings in Colorado ("Clover Top Colorado"). *Id*. at ¶ 98.

At issue in this lawsuit is the separate entity, Clover Top Holdings, Inc., that Kaweske, Peterson, and Peterson's wife incorporated in September 2015. *Id*. at ¶¶ 2, 27. Clover Top Holdings, Inc. is a Delaware corporation. Its principal place of business was in Colorado (*id*. at ¶ 6), although it was not registered to do business in Colorado until September 22, 2017 (*id*. at ¶¶ 45(a), 76). It no longer is an active corporation. *Id*. at ¶ 92.

Clover Top Holdings, Inc. was created as a vehicle for investing in "the Colorado cannabis" or "cannabis-related" business. *Id*. at ¶ 2. In their solicitations, Kaweske and Peterson described the investment opportunity as being "in the 'legal cannabis industry.'" *Id*. at ¶ 120. Kaweske oversaw cultivation operations as well as finances, taxes, licenses, and legal matters. Peterson oversaw dispensary operations, patient care, and marketing. *Id*. at ¶ 54. Clover Top Holdings, Inc. retained Defendants Brian Tannenbaum, Esq., and the law firm, Tannenbaum & Trost LLC ("Tannenbaum Defendants") for both cannabis and corporate law matters. *Id*. at ¶¶ 23, 33. The Tannenbaum Defendants simultaneously provided legal services for Kaweske, the corporate entities associated with Clover Top Holdings, Inc., and the corporate entities that later competed

2

with it. *Id.* at ¶¶ 33, 52. The Tannenbaum Defendants served as the escrow agent for a transaction in which Clover Top Holdings, Inc. gave Peterson's in-laws Series A shares in exchange for $300,000 and ownership of Durango Management, LLC. *Id.* at ¶ 51.

In January 2016, Clover Top Holdings, Inc. purchased two parcels of real property in Colorado Springs to operate as a marijuana dispensary facility and a grow warehouse. *Id.* at ¶ 35. Clover Top Holdings, Inc. owned the business entity, TweedLeaf LLC (incorporated in Delaware) ("TweedLeaf Delaware"), which in turn held the trademark for the "TWEEDLEAF" word and drawing mark. *Id.* at ¶¶ 30, 31. The "TweedLeaf" brand was meant for the business venture (*id.* at ¶ 43), but in September 2018, TweedLeaf Delaware abandoned the mark (*id.* at ¶ 87).

Several additional corporate entities were either created or acquired to be part of the greater cannabis-related business venture. MMJ 95, LLC was created in October 21, 2015. *Id.* at ¶ 32. TweedLeaf LLC was created in Colorado ("TweedLeaf Colorado") on November 19, 2015. *Id.* at ¶¶ 12, 34. Durango Management, LLC was formed on January 26, 2016 to operate as a real estate management company for TweedLeaf dispensaries and cultivation centers. *Id.* at ¶ 36. It also leased property from an affiliated entity, AJC dba Front Range Alternative Medicine dba FRAM. *Id.* at ¶ 39. Peterson stated that Clover Top Holdings, Inc. had bought AJC for its medical marijuana licenses (both dispensary and cultivation). However, some corporate entities and assets were falsely represented to be owned by Clover Top Industries, Inc. Kaweske was AJC's actual owner. *Id.* at ¶ 52. Kaweske misrepresented that Clover Top Holdings, Inc. owned property and licenses in Ordway, Colorado. *Id.* at ¶¶ 72-73. Ordway Farms was formed on October 12, 2017 and was intended to be a Clover Top Holdings, Inc. subsidiary. *Id.* at ¶ 77.

Plaintiff Gordon Morton ("Morton") is a citizen of Utah. *Id.* at ¶ 3. In January 2016, Morton met Kaweske and Peterson about investing in Clover Top Holdings, Inc., and their discussions

continued into March 2016. *Id*. at ¶ 41. Kaweske and Peterson described Clover Top Holdings, Inc. as the "'mother ship' for all cannabis-related entities, technologies, and brands in Colorado." *Id*. at ¶ 42. The plan was to expand "beyond Colorado as its success grew—including dispensaries, grow operations, extraction technologies, intellectual property, other future ancillary entities, and all similar services and businesses—whose profits would all inure to the benefit of Clover Top's shareholders." *Id*. Morton received written solicitations that described Clover Top Holdings, Inc. as "a Delaware Corporation established to make investments and operate businesses in the burgeoning legal cannabis industry" as "a national brand for medicinal dispensaries, online store and cannabis and hemp-based products." The materials touted the size of the operation, with a "11,000 square foot cultivation facility, which is capable of growing over 4,000 plants and producing in excess of $400,000 a month of wholesale cannabis" and "a 1,500 square foot medical marijuana dispensary." *Id*. at ¶ 43.

The business venture was not limited to marijuana. The website, Tweedleaf.com, would carry CBD and other products "that are currently legal to sell nationwide." *Id*. at ¶ 43. The dispensaries also would sell various paraphernalia, accessories, clothing, and even fertilizer. *Id*. at ¶ 54.

Kaweske and Peterson allegedly promised that as a Clover Top Holdings, Inc. shareholder, Morton would receive the benefit of the operation's "cannabis-related activities" in the form of "prompt payment of initial investments and distributions as [it] started achieving success." *Id*. at ¶ 45. Morton signed a Subscription Agreement for Preferred Shares on April 4, 2016, buying 100,000 shares for $100,000. *Id*. at ¶ 46. In 2016, Morton received statements showing increasing sales and expansion plans. *Id*. at ¶¶ 55, 57. In November 2016, Kaweske told Morton that he had a Series A investment because he was the first outside investor. *Id*. On November 17, 2016, Morton

incorporated Sensoria, LLC ("Sensoria") to hold the shares, and at some point, Sensoria paid $125,000 for an additional 125,000 shares. *Id*. at ¶ 63. In total, Sensoria invested $225,000 in Clover Top Holdings, Inc. *Id*. at ¶ 134.

Kaweske and Peterson introduced Welby Evangelista to Morton as a new team member and business director. Evangelista owned DJDW, LLC. Evangelista himself invested in Clover Top Holdings, Inc. and raised $950,000 in additional investment money by September 2017. *Id*. at ¶¶ 67–69.

On January 20, 2017, Kaweske and Peterson issued a statement showing revenue history and expansion plans. *Id*. at ¶ 66. No more written statements would be issued to investors thereafter. Instead, Morton and Sensoria received updates informally by telephone. *Id*. at ¶ 68.

Plaintiffs allege Kaweske and Peterson misrepresented the investment opportunity in several respects. Kaweske did not disclose past legal proceedings against him that concerned securities law violations and fraud (*id*. at ¶ 44), and he took efforts to hide his identity (*id*. at ¶¶ 49–50). Kaweske and Peterson mispresented the business registration and ownership of Clover Top Holdings, Inc. and what assets it actually owned. *Id*. at ¶¶ 45, 56. They understated how much salary they would draw from the business venture. *Id*. at ¶ 45(c).

Kaweske hid the existence of a separate set of entities that competed with Clover Top Holdings, Inc. *Id*. at ¶¶ 45(d), 60. Kaweske bought AJC Industries dba FRAM/Tweedleaf which he held separate from Clover Top Holdings, Inc. *Id*. at ¶ 52. The TweedLeaf trademarks were transferred to AJC. *Id*. at ¶ 61. Kaweske formed Sunlife AG LLC. *Id*. at ¶¶ 10, 62. Kaweske hid from Plaintiffs that he actually owned the entities that Plaintiffs believed Clover Top Holdings, Inc. owned or was intended for Clover Top Holdings, Inc. to own. *Id*. at ¶¶ 52, 56, 65, 73, 74, 82, 86. Plaintiffs complain that the assets, holdings, and subsidiaries of Clover Top Holdings, Inc.

were transferred to other entities. *Id*. at ¶ 103.

Kaweske and Evangelista hid business dealings from Peterson as well. *Id*. at ¶ 70. In December 2017, Kaweske began excluding Peterson and his wife from Clover Top Holdings, Inc.'s operations. Kaweske blamed them for its financial distress. *Id*. at ¶ 80. There are several lawsuits between them. *Id*. at ¶ 115.

Kaweske and Evangelista formed JW Colorado LLC and JW Ordway LLC in January 2018 (*id*. at ¶ 81), JW Trinidad LLC in July 2018 (*id*. at ¶ 84), and North Star Holdings (originally Ordway Farms) in August 2018 (*id*. at ¶¶ 85, 90). On September 10, 2019, JW Colorado registered the "TWEEDLEAF" mark. *Id*. at ¶ 112.

On November 3, 2018, Evangelista sent Morton threatening text messages. Evangelista also told him that Clover Top Holdings, Inc.'s shareholders were in trouble. *Id*. at ¶ 89. On October 3, 2019, Evangelista responded to Sensoria's lawsuit threat by claiming that he had lost much more from the Clover Top Holdings, Inc. investment than it. *Id*. at ¶ 116.

Clover Top Holdings, Inc.'s Colorado registration became delinquent on February 1, 2019. *Id*. at ¶ 91. Its status with the Delaware Division of Corporations became void on March 1, 2019. *Id*. at ¶ 92. It owed $108,566.68 in franchise taxes, and it had not filed various reports and statements. *Id*. at ¶¶ 93–95. Tannenbaum Defendants did not act to restore Clover Top Holdings, Inc.'s status. Despite being its last known corporate counsel, Plaintiffs do not expect the Tannenbaum Defendants to assist Clover Top Holdings, Inc. *Id*. at ¶ 123(n).

Meanwhile, the corporate status of the competing entity, Clover Top Colorado, remained active. *Id*. at ¶ 98. On July 26, 2019, the Tannenbaum Defendants cured the delinquency status of Durango Management, LLC with the Colorado Secretary of State. *Id*. at ¶ 53. They also assisted JW Ordway with its Colorado Secretary of State filings. *Id*. at ¶ 81.

Plaintiffs complained to Kawaske and Evangelista about the diluting effect of deals made with other investors. Plaintiffs asserted their right under the Subscription Agreement to pro rata equity shares. Plaintiffs never received a substantive answer nor a capitalization adjustment. *Id.* at ¶¶ 100–102. In February 2019, Kaweske told Morton that the Clover Top Holdings, Inc. investment no longer was "relevant" and that Sensoria no longer owned anything as a technical matter. *Id.* at ¶ 104. Plaintiffs know "of twelve other minority shareholders who have likewise lost investments in Clover Top [Holdings, Inc.] estimated to total approximately $450,000." *Id.* at ¶ 123(p).

## II. Procedural History

The Kaweske Defendants consist of Kaweske and several entities under his control (the "Entity Defendants"). The Entity Defendants are JW Colorado LLC, JW Trinidad LLC, JW Ordway LLC, MMJ 95 LLC, AJC Industries LLC, Lifestream Holdings LLC, Sunlife AG LLC, Durango Management LLC, Ordway Farms LLC, and TweedLeaf LLC (incorporated in Colorado). The Kaweske Defendants do not include Clover Top Colorado as one of the Entity Defendants even though Kaweske incorporated it. Nor has Clover Top Colorado appeared separately in this lawsuit.

Plaintiffs also name as Defendants Evangelista and two entities, North Star Holdings and DJDW LLC, associated with him ("Evangelista Defendants"). Plaintiffs allege that Evangelista owed Clover Top Holdings, Inc. duties of good faith and loyalty including the duty not to compete and not to act solely for his personal benefit. ECF 127 at 7. Plaintiffs further allege that the Evangelista Defendants acted in tandem with the Kaweske Defendants to steal Clover Top Holdings, Inc.'s assets and opportunities, and they are in essence operating Clover Top Holdings, Inc.'s business through other entities. *Id.* at 2. However, Plaintiffs assert no claims unique to the

7

Evangelista Defendants but rather include them in the claims against the Kaweske Defendants. Although they file their own Motion to Dismiss (ECF 110), they adopt the arguments that the Kaweske Defendants raise. Therefore, the Court does not discuss the Evangelista Defendants separately.

Neither TweedLeaf Delaware nor Clover Top Holdings, Inc. has answered the Complaint, and both are in default. ECF 95 at ¶¶ 6, 13.

The Tannenbaum Defendants filed their own Motion to Dismiss. ECF 107.

Peterson has appeared. ECF 108, 121. However, he does not move for dismissal nor joins the other Defendants in their Motions to Dismiss. The entity Clover Top Colorado appears to be in default. ECF 123.

### III.    Shotgun Pleading

The Kaweske Defendants argue that the Amended Complaint is an improper shotgun pleading. They complain about Plaintiffs' use of incorporations by reference, reliance on the General Allegations background section to support individual causes of action, grouping Defendant parties together, and adding irrelevant details. Defendants overstate those aspects; overall, the Amended Complaint is sufficiently clear to give adequate notice of Plaintiffs' claims for relief. Defendants also fail to account for the complicated nature of the events and the large number of corporate entities involved.

The Kaweske Defendants object to the corporate entities being named as Defendants because Plaintiffs identify no actionable conduct by them. For the most part, Plaintiffs raise no specific allegations of wrongful conduct by the entities themselves, but they do explain why they name them as parties. As Plaintiffs summarize in their Response, the entities are using the assets that originally belonged to Clover Top Holdings, Inc. They also are the entities that the individual

Defendants either created to compete with Clover Top Holdings, Inc. or were falsely represented to be owned by Clover Top Holdings, Inc. ECF 126 at 2–3.

The Court finds no deficiency in how Plaintiffs plead their Amended Complaint that warrants dismissal. Nor does the Court see reason to dismiss the "John Doe" Defendants. Plaintiffs explain that they are using them as placeholders for additional entities that the individual Defendants may have created in furtherance of the alleged scheme. There is an insufficient basis to dismiss them at this early stage in the litigation. Moreover, it places the Defendants on notice of the potential for additional entity defendants.

## LEGAL STANDARDS

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleads facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. *Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Iqbal*, 556 U.S. at 679–80. Second, a court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## ANALYSIS

I.     **Affirmative Defense of Illegality**

Underlying Plaintiffs' lawsuit is the allegation that the Clover Top Holdings, Inc. investment vehicle was a scam that Defendants used to take their money. Plaintiffs thought they were buying shares in a legitimate business venture. Rather than use the investment money to grow the business as planned, Defendants converted it to their own personal benefit. As a result, Sensoria owns part of a defunct company without assets.

The purpose of that business venture was to grow and sell marijuana. To that extent, its operations violated the federal Controlled Substances Act, 21 U.S.C. §§ 802, 812, 841, and 844, ("CSA"). *Feinberg v. Comm'r, Internal Revenue*, 808 F.3d 813, 816 (10th Cir. 2015) (affirming that marijuana distribution is a federal crime even if federal prosecutors decline to enforce it); *Sladek v. City of Colo. Springs*, No. 13-cv-02165-PAB-MEH, 2014 WL 86819, at *5 (D. Colo. Jan. 9, 2014) (affirming that marijuana production and distribution remains illegal under federal law even if legal under state law). Because granting Plaintiffs their requested relief—to recover the financial benefit of their investment—would entail violating the CSA, the Kaweske Defendants argue for dismissal.

Plaintiffs responds that the Kaweske Defendants may not look beyond the four corners of their Amended Complaint. Because they do not expressly plead that the business venture violated federal law, the Kaweske Defendants may not seek dismissal on the basis of the illegality affirmative defense. To the contrary, they contend that they plead only *legal* business activities. ECF 126 at ¶¶ 43, 120. Plaintiffs themselves look beyond the four corners of the Amended Complaint to Clover Top Holdings, Inc.'s Certificate of Incorporation which states as the company's purpose "to engage in any lawful act or activity for which corporations may be

organized under the General Corporation Law of Delaware." ECF 126-1. Even if Clover Top

Holdings, Inc.'s activities were lawful under state law, the issue here is whether they were lawful

under federal law, and for that reason, the pleadings still implicate the illegality affirmative

defense. Moreover, an affirmative defense is available if otherwise plain on the face of the

complaint. *VanLandingham v. Grand Junction Reg'l Airport Auth.*, 46 F. Supp. 3d 1119, 1124 (D.

Colo. 2014). Plaintiffs' Amended Complaint makes plain that the purpose of the investment

vehicle was to grow and sell marijuana. Plaintiffs knew that to be the nature of the business and

expected lucrative returns from their ownership share. Moreover, Plaintiffs believed that the

business venture was taking substantial steps—by acquiring large growing and retailing

facilities—to expand its operations. The business may have sold other products that are entirely

lawful under federal law, but that does not change the fact that the business was selling marijuana.

A federal court may not compel performance of an illegal contract and may not grant relief

that would compel a party to violate federal law. *In re Malul*, 614 B.R. 699, 706–07 (D. Colo.

2020); *Bart St. III v. ACC Enters., LLC*, No. 17-cv-00083, 2020 WL 1638329, at * 5 (D. Nev. Apr.

1, 2020). The basic nature of Clover Top Holdings, Inc.'s operations and Plaintiffs' relationship

to it implicate the CSA. Providing funds in exchange for equity may violate the CSA if it allows

the investor to profit from the cultivation, possession, and sale of marijuana. *Bart St. III*, 2020 WL

1638329 at *9. In a similar way, Plaintiffs rely on their ownership rights in Clover Top Holdings,

Inc. to recover the financial benefit of their investment. They also seek relief from Kaweske's other

marijuana-related businesses and assets as well as an equity interest in those Entity Defendants.

ECF 95 at ¶ 126. The circumstances of this lawsuit are similar to those situations to which the

affirmative defense of illegality has been applied. *In re Malul*, 614 B.R. at 713 (declining to

administer the debtor's asset of equity rights in a defunct marijuana business obtained through a

subscription agreement); *Polk v. Gontmakher*, No. 18-cv-01434, 2020 WL 2572536 (W.D. Wash. May 21, 2020) (finding plaintiff's request for an equitable interest in a business that produces and processes marijuana as well as past and future profits from it to constitute a CSA violation); *J. Lilly, LLC v. Clearspan Fabric Structures Int'l, Inc.*, No. 18-cv-01104, 2020 WL 1855190, at *12 (D. Or. Apr. 13, 2020) (finding that the CSA precluded the court from awarding plaintiff lost profits as damages for the breach of a contract to build a growhouse).

The simple fact that marijuana is involved does not mean that Plaintiffs' claims must be dismissed automatically. The cited case law does not apply the affirmative defense in such a hard-and-fast manner. *In re Malul*, 614 B.R. at 709. Case law shows flexibility when relief can be granted in a way that does not implicate the federal marijuana laws. For example, courts have enforced loans and insurance contracts that could be paid from money not derived from marijuana sales. *Green Earth Wellness Ctr., LLC v. Atain Specialty Ins. Co.*, 163 F. Supp. 3d 821 (D. Colo. 2016) (enforcing an insurance contract); *Ginsburg v. ICC Holdings, LLC*, No. 16-cv-2311, 2017 WL 5467688 (N.D. Tex. Nov. 13, 2017) (enforcing promissory notes); *Mann v. Gullickson*, No. 15-cv-03630, 2016 WL 6473215 (N.D. Cal. Nov. 2, 2016) (enforcing payment on a contract for consultative services that indirectly concerned marijuana). However, Plaintiffs do not explain how relief could be fashioned here that would not endorse or require illegal activity, or would be paid from an asset source independent of marijuana.

Nor do Plaintiffs identify any particular claim of relief that is unaffected by the affirmative defense. Therefore, Plaintiffs leave unopposed the Kaweske Defendants' argument that *all* of the claims should be dismissed except for the Tenth Cause of Action. However, because Plaintiffs may be able to plead theories of relief that do not implicate the CSA, the Court dismisses them with leave to amend.

13

## II.     Choice of Law

The Kaweske Defendants assert another legal bar to Plaintiffs' claims for relief: the Subscription Agreement's choice-of-law provision. Because it chooses Delaware law, they argue that it precludes Plaintiffs from raising claims based on other states' statutes (for violations of the Colorado and Utah Securities Acts, the Colorado civil theft statute, and the Colorado Uniform Fraudulent Transfer Act). The Kaweske Defendants attach the Subscription Agreement to their Motion to Dismiss. ECF 109-1. Because Plaintiffs refer to it in their Amended Complaint and because they do not otherwise object, this Court takes it into consideration even though it is outside the pleadings. The choice-of-law provision states that "[t]his Subscription Agreement shall be governed by and construed in accordance with the laws of the State of Delaware." *Id.* at § 14.

### A.     Who May Assert the Choice-of-Law Provision

The Subscription Agreement is between Clover Top Holdings, Inc. and the purchaser of its shares. It was executed on April 4, 2016 and predates Sensoria's incorporation. Morton signed as the purchaser, but Plaintiffs do not contend that only he is party to it. Instead, Plaintiffs proceed on the assumption that Sensoria is party to the contract.

There is no signature on Clover Top Holdings, Inc.'s behalf, but the signature block refers to Peterson in his title as "CEO/Founder." Pursuant to the Subscription Agreement, Morton paid Clover Top Holdings, Inc. $100,000 for 100,000 shares of Series A Preferred Stock. The Subscription Agreement furthered that the offering was of unregistered securities made pursuant to the Executive Summary and Term Sheet dated September 15, 2015, and that the purchaser relied solely on the information in those offering documents. The purchaser confirms that he "is not relying on any communication (written or oral) of the Company or any of its affiliates, as investment advice or as a recommendation to purchase the Securities." ECF 109-1 at § 6(b)(iii).

The Kaweske Defendants do not submit a new contract or an appendix to the existing Subscription Agreement for the additional 125,000 shares that Sensoria later bought.

Plaintiffs do not contest the provision's validity. However, they do contest the Kaweske Defendants' standing to invoke it. Neither Kaweske himself nor the Entity Defendants are party to the contract. The Kaweske Defendants counter that their relationship with Clover Top Holdings, Inc. nevertheless is sufficiently close to enable them to enforce it against Plaintiffs.

A third party's relationship to a contract must be close enough that his enforcement of the provision is foreseeable, *e.g.*, if he is the contract's intended beneficiary or if the contract's performance will benefit him. *Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*, No. 99 Civ. 10550, 2000 WL 1277597, *3–4 (S.D.N.Y. Sept. 7, 2000) (noting that the contract expressly intended to benefit both the signatory company and its affiliates). Foreseeability also exists if the claims against the third party "ultimately hinge on rights and duties defined by the [contract]," such that the third party "become[s] bound up in any disputes premised" upon it. *Id*. at *4. In other words, a third party may rely on the provision if his "alleged conduct . . . is closely related to the contractual relationship." *Lu v. Dryclean-U.S.A. of Calif., Inc.*, 11 Cal. App. 4th 1490, 1494 (Cal. App. 1992) (finding the forum selection clause enforceable even though co-defendants Dryclean Franchise and Dryclean U.S.A. did not sign the franchise agreement with defendant Dryclean California, given the plaintiffs' allegation that all three entities made fraudulent representations to induce them to become franchisees). "A non-party is closely related to a dispute if its interests are completely derivative of and directly related to, if not predicated upon the signatory party's interests or conduct." *Weingrad v. Telepathy, Inc.*, No. 05 Civ. 2024, 2005 WL 2990645, at *5 (S.D.N.Y. Nov. 7, 2005) (internal citations omitted). Such a relationship can exist where the claims against the third party ultimately depend on or interrelate with the contract. *Id*. (finding that the

non-signatory defendants may enforce the registration contract's forum selection clause because plaintiff alleges that all defendants acted together to take his domain name). A contract's choice-of-law provision binds a non-signing plaintiff if she is asserting contractual rights that completely derive from those of the signing party. *Cagle v. James St. Grp.*, 400 F. App'x 348, 356 (10th Cir. 2010).

The Kaweske Defendants say that their alleged wrongdoings show how they are close to Clover Top Holdings, Inc. Plaintiffs allege that they induced Morton to invest in Clover Top Holdings, Inc. with misrepresentations about how the business venture would operate and then fraudulently transferred the company's assets to themselves. They also note Plaintiffs' request for an equity interest in the Entity Defendants. The Kaweske Defendants argue that those allegations "establish a close corporate relationship between Clover Top [Holdings, Inc.], on the one hand, and [themselves], on the other." Plaintiffs thereby allege joint action by the Kaweske Defendants and Clover Top Holdings, Inc. to steal the investment money. However, that does not mean that the Kaweske Defendants' interests are completely derivative of and directly relate to, if not predicated upon, Clover Top Holdings, Inc.'s interests or conduct. To the contrary, Plaintiffs allege that the Kaweske Defendants acted against the best interests of Clover Top Holdings, Inc. Nor is Clover Top Holdings, Inc. an active litigant; it is a void entity and a defaulted Defendant. Moreover, as the Court explains below, Plaintiffs' claims against the Kaweske Defendants do not ultimately hinge on rights and duties that the Subscription Agreement created. The Subscription Agreement only defined the terms by which Morton bought stock in Clover Top Holdings, Inc; it did not define how the business venture was to be carried out. Consequently, the Kaweske Defendants do not show the kind of relationship with Clover Top Holdings, Inc. that would permit them to invoke the choice-of-law provision.

B.      Its Scope

Nevertheless, even if the Kaweske Defendants could invoke the choice-of-law provision against Plaintiffs, its wording is not broad enough to cover the statutory claims. It applies to the breach of contract claim that Sensoria brings directly against Clover Top Holdings, Inc., but the Kaweske Defendants seek to extend its reach to the statutory claims. The parties do not dispute this Court's ability to construe the provision to determine the scope of its coverage.

Plaintiffs rely on cases that construe similarly worded choice-of-law provisions narrowly and apply the chosen source of law only to contract-related claims. *Cagle*, 400 F. App'x at 356–57; *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003); *Rayle Tech, Inc. v. Dekalb Swine Breeders, Inc.*, 133 F.3d 1405, 1409 (11th Cir. 1998); *Portillo v. Nat'l Freight, Inc*., 323 F. Supp. 3d 646, 657 (D.N.J. 2018); *Fairmont Supply Co. v. Hooks Indus., Inc.*, 177 S.W.3d 529, 535 (Tex. Ct. App. 2005). The Kaweske Defendants argue that Plaintiffs' statutory claims are contract-related because they arise from the Subscription Agreement. A contract's choice-of-law provision may apply to a claim that grows out of the contractual relationship. That occurs if the claim essentially restates a breach of contract, involves the same facts as the breach of contract claim, ultimately depends on the contract for its resolution, or arises from the contractual relationship's rights or duties. *Direct Mail*, 2000 WL 1277597 at *6.

It is true that the Subscription Agreement gives Plaintiffs shareholder status, and to that extent, provides the predicate for bringing this lawsuit. However, the subject matter of the Subscription Agreement is limited to the stock purchase itself and to defining the range of information that Morton relied upon in deciding to make that purchase. It did not define any of the Defendants' duties in how Clover Top Holdings, Inc. would be operated or managed, and it did not define what the business venture would be. The Kaweske Defendants themselves concede that

"the Subscription Agreement does not contain any promise by Clover Top that all cannabis-related activities of its subsidiaries and affiliates would be run under the Clover Top umbrella and inure to the benefit of the Clover Top Shareholders," and instead consisted only of the exchange of money for the purchase of company shares. ECF 146 at 42.

In other words, Plaintiffs' statutory claims do not relate directly to the Subscription Agreement but instead are outside sources of rights and duties. That distinguishes this case from cases where the statutory claim had a close relationship to the contract's subject matter. *Lester v. Gene Express, Inc.*, 2010 WL 3941417 (D. Colo. Sept. 27, 2010) (finding the choice of Colorado law to bar claims brought under other states' labor laws in a dispute over an employment agreement); *Allred v. Innova Emergency Med. Assocs., PC*, 18-cv-03097-DDD-NRN, 2020 WL 3259249, at *6 (D. Colo. June 16, 2020) (noting plaintiff's concession that the employment agreement's choice of Colorado law precludes his California labor code claim and finding that it also precludes his accounting claim brought under California law); *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 224, n.28 (3d Cir. 2006) (finding that a loan agreement entered pursuant to the federal Securities Act and which was to be governed by and interpreted under New York law barred claims brought pursuant to Pennsylvania's Securities Act and common law).

The Kaweske Defendants rely on cases that construe a choice-of-law provision more broadly, so that it covers all disputes arising from the litigants' transaction or relationship. *Pyott-Boone Elecs., Inc. v. IRR Tr.*, 918 F. Supp. 2d 532 (W.D. Va. 2013); *Masters Grp. Int'l, Inc. v. Comerica Bank*, 380 Mont. 1 (Mont. 2015). Those cases are distinguishable because they extend the choice-of-law provision to cover common law tort claims such as fraud. Here, by contrast, the Kaweske Defendants limit their argument to statutory claims. Moreover, those cases still require the tort claims to bear some relationship to the underlying contract. At issue in both *Pyott-Boone*

and *Masters Grp.* were complex financial agreements. In comparison, the Subscription Agreement at issue in this case is far more limited in scope.

Thus, the choice-of-law provision does not warrant dismissing the statutory claims.

C.      Jury Waiver

The Kaweske Defendants also seek to enforce § 12 of the Subscription Agreement where the parties "irrevocably waive[] any and all right to trial by jury with respect to any legal proceedings arising out of the transactions contemplated by this Subscription Agreement." ECF 109-1 at 8. The Kaweske Defendants repeat their argument that their relationship with Clover Top Holdings, Inc. is close enough to permit them to invoke the jury waiver against Plaintiffs, but for the same reasons explained above, the argument is unsuccessful. The Kaweske Defendants did not act as Clover Top Holdings, Inc.'s agents (or at least consistent with an agent's fiduciary duties), and they did not act in concert with Clover Top Holdings, Inc. *Cf. in re DaimlerChrysler AG Securities Litigation*, No. Civ. A. 00-993-JJF, 2003 WL 22769051, at *3 (D. Del. 2003) (finding the jury waiver to apply to both the corporation signatories and the corporations' agents who acted in concert with them in the transaction subject of the litigation). The Kaweske Defendants lack a sufficiently close relationship with Clover Top Holdings, Inc. to invoke any term of the Subscription Agreement against Plaintiffs.

**III.     Sensoria's Standing to Bring Claims on Behalf of the Corporation**

Sensoria proceeds to act on Clover Top Holding, Inc.'s behalf. Plaintiffs plead that all of the "investments in Clover Top [Holdings, Inc.] were ultimately made and accounted for through Sensoria." ECF 95 at ¶ 63. In other words, Sensoria is the Plaintiff that owns shares in that corporation. As a shareholder, Sensoria brings several claims seeking redress for harm done to Clover Top Holdings, Inc., which include: breach of fiduciary duty (Fifth Cause of Action),

corporate waste (Ninth Cause of Action), fraudulent transfer (Thirteenth Cause of Action), civil conspiracy (Fourteenth Cause of Action), intentional interference with contract (Fifteenth Cause of Action), and aiding and abetting a breach of fiduciary duty (Sixteenth Cause of Action).

A.      Derivative Claims Against the Kaweske Defendants

The Kaweske Defendants dispute Sensoria's derivative standing because Clover Top Holdings, Inc. is a void corporation. Because Clover Top Holdings, Inc. was incorporated in Delaware, Delaware law governs this dispute. Fed. R. Civ. P. 17(b)(2) (providing that a corporation's capacity to sue or be sued is to be determined by the law under which it was organized).

The claims that Sensoria brings on Clover Top Holdings, Inc.'s behalf are derivative in nature. A derivative claim is the corporation's property right. *Feldman v. Cutaia*, 951 A.2d 727, 731 (Del. 2008). As such, if a corporation loses its independent identity through merger, *id.*, or bankruptcy, *Agostino v. Hicks*, 845 A.2d 1110, 1126–27 (Del. Ch. 2004), no derivative claim may be brought on its behalf. The mere fact that a corporation is dissolved, *Matthew v. Laudamiel*, No. 5957, 2012 WL 605589, at *21 (Del. Ch. Feb. 21, 2012), or is no longer operating as a going concern, *Marshal T. Simpson Tr. v. Invicta Networks, Inc.*, 249 F. Supp. 3d 790, 795 (D. Del. 2017), does not automatically convert a derivative claim into a direct claim for a shareholder to raise.

Plaintiffs plead that Clover Top Holdings, Inc. owes the Delaware Division of Corporations $108,566.68 in franchise taxes and last filed an annual report in 2016. *Id.* at ¶ 93. They also plead that the Delaware Division of Corporations declared it void as of March 1, 2019 for having a year overdue tax bill. *Id.* at ¶ 93. Consequently, Clover Top Holdings, Inc. is subject to the restrictions of 8 Del. Code § 510:

> If any corporation . . . neglects or refuses for 1 year to pay the State any franchise tax . . . or shall neglect or refuse to file a complete annual franchise tax report, the charter of the corporation shall be void, and all powers conferred by law upon the corporation are declared inoperative . . . .

A void corporation lacks standing to bring its own lawsuit. *Transpolymer Indus. Inc. v. Chapel Main Corp.*, 582 A.2d 936 (Del. 1990) (dismissing a void corporation's appeal because it is inoperative, has ceased to exist, and has lost any standing to appeal and be heard, even if represented by counsel). The Kaweske Defendants argue that if Clover Top Holdings, Inc. itself is unable to bring this lawsuit to seek redress for harm done to it, then Sensoria is unable to do so on its behalf.

Sensoria seeks the benefit of another statute to preserve Clover Top Holdings, Inc.'s ability to pursue legal action. Sensoria relies on 8 Del. Code § 278 which gives "[a]ll corporations, whether they expire by their own limitation or are otherwise dissolved" three years "from such expiration or dissolution" during which they may take certain actions such as "for the purpose of prosecuting and defending suits" or to wind down their affairs and close their business, "but not for the purpose of continuing the business for which the corporation was organized."

Some cases apply Section 278 broadly to extend its three-year window of time to corporations that are void under Section 510. In the case of in re *HealthTrio, Inc.*, No. 09-34404, 2012 WL 1556526, at *4 (D. Colo. May 2, 2012), the bankruptcy court gave a void corporation the benefit of Section 278. In *James v. United Med. LLC*, No. 16C-06-209, 2017 WL 1224513, *4 (Del. Super. Mar. 31, 2017), the court observed that the Section 278 period that allowed the Section 510 void corporation to bring suit had expired, thereby implying its availability. The case of *Boyd v. Wilmington Trust Co.*, 630 F. Supp. 2d 379, 386 (D. Del. 2009) includes Section 510 void corporations in its observation of how "all Delaware corporations" benefit from Section 278 and how "a Delaware corporation is not dead for all purposes following forfeiture of its charter." The

case of *Metro. Interconnect, Inc. v. Alexander & Hamilton, Inc.*, No. 04-2896, 2005 WL 1431670, at *3 (E.D. La. May 26, 2005), observed that "[i]t appears that Delaware courts apply [Section 278 to corporations whose charters] have been repealed for failure to pay corporate franchise taxes."

The Kaweske Defendants argue that those cases are not persuasive for various shortcomings in their respective analyses. The Kaweske Defendants rely instead on the case of *in re Apple iPod iTunes Antitrust Litig.*, No. 05-cv-0037, 2014 WL 6783763, at *4 (N.D. Cal. Nov. 25, 2014), in which the court followed the approach "that void corporations lose their standing to pursue legal actions until the corporate status is restored." They also cite the unreported decision of *Juma Tech. Corp. v. Servidio*, No. 151483/2016 (N.Y. Sup. Ct. May 24, 2017) ("*Juma I*"), which they attach to their Motion at ECF 109-2. *Juma I* involved allegations similar to the instant case, with the additional allegation that the defendants transferred all of corporation's assets, both tangible and intangible, to its creditor through a strict foreclosure, *Juma Tech. Corp. v. Servidio*, No. 160372/2017, 2018 WL 6732891, at *1 (N.Y. Sup. Ct. Dec. 17, 2018) ("*Juma II*"). The *Juma I* court held that the underlying corporation, which was void under Section 510, lacked standing to sue its directors for mismanagement and did not have the benefit of Section 278.

There is no dispute that Clover Top Holdings, Inc. is a void corporation under Section 510, and there is no indication of any effort to restore its status. Nevertheless, the weight of the above-cited case law that expressly considered the interplay of both statutes favors giving Clover Top Holdings, Inc. the benefit of Section 278's three-year window. This outcome is consistent with Section 278's broad wording that it applies to "[a]ll corporations" including those that "expire by their own limitation." Even if the focus of Section 278 is on *dissolved* corporations, it does not expressly exclude corporations that are void under Section 510. If Clover Top Holdings, Inc. still may prosecute a lawsuit, it follows that it has derivative claims that Sensoria may prosecute on its

behalf. This outcome also avoids the inequitable result if Defendants allowed Clover Top Holdings, Inc.'s status to lapse as a means to avoid mismanagement liability.

Sensoria may proceed on its derivative claims. To this extent, the Kaweske Defendants' Motion to Dismiss (ECF 109) is denied.

B.    Derivative Claims Against the Tannenbaum Defendants

The pleadings show that the Tannenbaum Defendants were Clover Top Holdings, Inc.'s attorneys beginning in 2015 and through the time when its corporation status became void. The pleadings also provide a basis by which to infer their general knowledge about both Clover Top Holdings, Inc.'s operations and the others' dealings that allegedly caused Clover Top Holdings, Inc. harm. Indeed, the Tannenbaum Defendants themselves assert that the "'Clover Top' that the Plaintiffs describe existed only in their imagination and . . . never was and never actually came to be" (ECF 144 at 2), and that Clover Top Holdings, Inc. "never legally owned any assets, never conducted any business, and never generated any profits" (*id*. at 9).

Sensoria, acting on Clover Top Holdings, Inc.'s behalf, brings two claims alleging that the Tannenbaum Defendants breached duties of care that they owed Clover Top Holdings, Inc. as its attorneys. The first such claim (Tenth Cause of Action) alleges both a breach of fiduciary duty and legal malpractice. The parties provide no legal argument to explain either theory of relief. Plaintiffs' citation to *Aller v. Law Office of Carole C. Schriefer, PC*, 140 P.3d 23 (Colo. App. 2005) shows that a client may bring a breach of fiduciary duty claim against an attorney. Moreover, Plaintiffs plead the general contours of a breach of fiduciary duty to the extent that the Tannenbaum Defendants represented other Defendants with interests contrary to Clover Top Holdings, Inc.'s and assisted them in taking actions that harmed it. The allegations raise questions about conflict of interest and the duty of loyalty not to compete.

Consequently, with respect to the Tenth Cause of Action, the Court denies the Tannenbaum Defendants' request to dismiss the breach of fiduciary duty claim. For the same reason, the Court does not dismiss the Sixteenth Cause of Action which alleges that the Tannenbaum Defendants aided and abetted the breach of fiduciary duty that the other Defendants owed to Clover Top Holdings, Inc. To the extent the claim concerns a duty that the Tannenbaum Defendants also owed Clover Top Holdings, Inc., it is the substantive equivalent of the direct breach of fiduciary duty claim. Nor does the Court dismiss the legal malpractice claim. The pleadings suggest that the Tannenbaum Defendants may have acted negligently or provided substandard legal services to Clover Top Holdings, Inc., such as by allowing its status to lapse.

On Clover Top Holdings, Inc.'s behalf, Sensoria includes the Tannenbaum Defendants in its civil conspiracy claim (Fourteenth Cause of Action). The elements of civil conspiracy require (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) an unlawful overt act, and (5) damages as the proximate result. *Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469, 1480 (D. Colo. 1996). Sensoria does not plead a plausible conspiracy claim because it does not expressly allege that the Tannenbaum Defendants had "a meeting of the minds" with the other Defendants to harm Clover Top Holdings, Inc. Indeed, Sensoria does not plead how the Tannenbaum Defendants acted of their own accord to harm Clover Top Holdings, Inc. All that Sensoria pleads is concerted action. However, the cause of action requires that the Tannenbaum Defendants agreed to take action in furtherance of the conspiracy, knowing of its improper purpose. *Powell*, 948 F. Supp. at 1480. They must have acted independently in furtherance of that unlawful goal. *Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1122 (D. Colo. 2010) (explaining the nature of conspiracy liability). Sensoria pleads that the Tannenbaum Defendants acted only in their role as attorneys for the other

Defendants and thus at their behest rather than independently for their own reasons. Thus, the Tannenbaum Defendants are dismissed as parties to the Fourteenth Cause of Action.

Neither party provides a substantive legal analysis of the claims that Sensoria raises against the Tannenbaum Defendants. Based on the limited arguments that the parties do provide, the Court finds no basis to dismiss the fiduciary duty-based claims. However, dismissal of the civil conspiracy claim is warranted.

## IV. Sensoria's Standing to Bring Claims Directly Against the Corporation's Officers

The next issue is whether Sensoria may sue directly for harm that it as a shareholder allegedly suffered. If the harm that the shareholder suffered is the same that the corporation suffered, then the claim is derivative in nature. In that situation, in which the injury is the corporation's, the claim is derivative and only may be brought on the corporation's behalf. *Feldman*, 951 A.2d at 733. The shareholder may not raise the same claim directly. A shareholder may seek redress only for harm specific to itself and independent of the injury to the corporation or the other shareholders generally. *Id*. at 732–33.

### A. Direct Claims Against the Kaweske Defendants

The Kaweske Defendants argue that the substance of Sensoria's claims is derivative in nature, and consequently, Sensoria may not sue them directly. The first claim at issue is Sensoria's Fifth Cause of Action in which it alleges that "Kaweske and Peterson breached their fiduciary duties of loyalty, good faith, and care" and that their "acts and omissions constituted negligence, mismanagement, corporate waste, and/or actionable inattention." ECF 95 at ¶ 157. Sensoria bases its breach of fiduciary duty claim against Kaweske for issuing shares to others in a way that wrongfully diluted its investment, refusing to provide requested information, inducing investment through misrepresentations, and mismanaging the corporation. ECF 126 at 29–30. Because those

actions harmed the corporation (or, stated differently, all of the shareholders equally), the Kaweske Defendants argue that Sensoria may not bring it directly. Citing *Alessi v. Beracha*, 849 A.2d 939, 950 (Del. Ch. 2004) and *Scott Sys., Inc. v. Scott*, 996 P.2d 775, 779 (Colo. App. 2000), Sensoria argues that as an officer and director, Kaweske owed fiduciary duties to both Clover Top Holdings, Inc. and its shareholders, but Sensoria does not explain how Kaweske breached a duty owed uniquely to it and distinct from the shareholders generally.

Sensoria's Ninth Cause of Action is for corporate waste. Sensoria alleges that "Kaweske and Peterson engaged in irrational transactions that were so one-sided that no business person of ordinary, sound judgment could conclude that Clover Top [Holdings, Inc.] received adequate consideration." ECF 95 at ¶ 176. Because the nature of that injury affects the corporation and not Sensoria in some separate and distinct way, Sensoria only may bring it as a derivative claim. *Feldman*, 951 A.2d at 734 (explaining that a claim "for mismanagement of corporate assets" is a derivative claim).

Sensoria brings direct claims of civil conspiracy (Fourteenth Cause of Action) and intentional interference with its contract (Fifteenth Cause of Action). Sensoria argues that it may bring them directly because it suffered a harm (loss of stock value and loss of the promised consideration for its investment) separate from the corporation (loss of physical assets). However, Sensoria offers no further explanation beyond that limited assertion to demonstrate how its injury is separate from both the corporation and from the shareholders generally.

Lastly, Sensoria relies on Section 7.019(d) of the American Law Institute's *Principles of Corporate Governance* which proposes an option by which a shareholder may pursue a claim both directly and derivatively. *See Brown v. Brown*, 731 A.2d 1212, 1215–16 (N.J. Super. App. 1999) (discussing the provision). However, Sensoria cites no legal authority that shows its approach to

be consistent with Delaware law. Moreover, allowing Sensoria to seek redress from the corporation for harm it incurred without the participation of the other shareholders would risk judicial inefficiency and inconsistent recovery.

Sensoria may bring none of the above causes of action directly. To this extent, the Motion to Dismiss (ECF 109) is granted. The Thirteenth Cause of Action, in which Sensoria alleges a violation of the Colorado Uniform Fraudulent Transfer Act, C.R.S. § 38-8-101 ("CUFTA"), is the exception. The Kaweske Defendants concede that Sensoria may bring a direct (non-derivative) fraudulent transfer claim against them as transferees. ECF 146 at 29, n.10.

      B.    <u>Direct Claims Against the Tannenbaum Defendants</u>

Sensoria does not establish how the Tannenbaum Defendants owed it a duty of care directly. Consequently, Sensoria may not bring its own breach of fiduciary duty, legal malpractice, and civil conspiracy claims against them. To this extent, the Court grants the Tannenbaum Defendants' Motion to Dismiss.

To the extent the Seventeenth Cause of Action can be construed as alleging that the Tannenbaum Defendants aided and abetted the other Defendants who did owe a duty of care to Sensoria, it is plausible. Indeed, the Tannenbaum Defendants themselves argue that their client, Clover Top Holdings, Inc., could not lawfully engage in the cannabis business, (ECF 107 at 6), and "could not own or invest in cannabis entities or dispensary and cultivation licenses" (ECF 144 at 9). Those statements appear contrary to the representations that other Defendants made to Clover Top Holdings, Inc.'s investors. The parties' limited argument provides no basis to dismiss Sensoria's direct claim against the Tannenbaum Defendants for aiding and abetting others' breach of their fiduciary duties.

## V.      Intentional Interference with Contract

The elements of this claim (the Fifteenth Cause of Action) require Sensoria to show (1) the Kaweske Defendants were aware of the existence of a contract between it and Clover Top Holdings, Inc., and (2) intentionally induced Clover Top Holdings, Inc. to breach it or made it impossible for it to perform (3) through improper conduct. *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1118 (10th Cir. 2009). In other words, it requires the showing of an actual contract and its breach. However, Sensoria identifies no actual contract. It does not expressly mention the Subscription Agreement specifically, the only contract of record. Instead, it alleges the existence of multiple contracts, "including at least the agreements accompanying Sensoria's initial and subsequent investment." ECF 95 at ¶ 206. It also mentions unspecified contracts with third parties. ECF 128 at 13. Sensoria explains that it had a contract with Clover Top Holdings, Inc. in which the company "agreed that all cannabis-related activities of its subsidiaries and affiliates would be run under [its] umbrella and inure to the benefit of the Clover Top shareholders." ECF 42 at 41. However, the Amended Complaint attributes those statements to promises that Kaweske and Peterson made, not to a contract with Clover Top Holdings, Inc. ECF 95 at ¶¶ 41–43. Because Sensoria does not plead the existence of a valid, specific contract, this claim is dismissed. This finding also renders moot the Tannenbaum Defendants' request to dismiss this claim as raised against them.

## VI.     Unjust Enrichment

The Tannenbaum Defendants move to dismiss the unjust enrichment claim (Seventeenth Cause of Action) that Sensoria raises against them. To state this cause of action, Sensoria must establish that the Tannenbaum Defendants received a benefit, at the expense of either Sensoria or Clover Top Holdings, Inc., under circumstances that would make it unjust for them to retain that benefit without restitution. *Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 444 (Colo. 2000).

The test for "whether injustice results often will turn on whether a party engaged in some type of wrongdoing." *Id*. Wrongdoing consists of improper, deceitful, or misleading conduct by the benefitting party. *DCB Constr. Co. v. Cent. City Dev. Co.*, 965 P.2d 115, 122 (Colo. 1998). "The principle underlying a claim of unjust enrichment is to deprive a wrongdoer of benefits that in equity and good conscience he ought not to keep." *Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1260–61 (D. Colo. 2014). The pleadings establish the element of wrongdoing. However, Sensoria does not establish how the Tannenbaum Defendants benefitted from it, if they were acting as attorneys for others. Thus, the Court grants the Tannenbaum Defendants' Motion to Dismiss and dismisses them from this claim.

## VII.    Lanham Act

Sensoria's Nineteenth Cause of Action concerns the "TweedLeaf" trademark. Sensoria summarizes and clarifies its trademark infringement allegations in its Response. ECF 126 at 45–46. Either Clover Top Holdings, Inc. (the overall holding company) or TweedLeaf, LLC (its subsidiary) registered, owned, and used that trademark in commerce. Sensoria gives several examples of how Clover Top Holdings, Inc. used the "TweedLeaf" trademark for the business operation: as the name of the first store in its dispensary chain, the name of the dispensaries and cultivation centers that the Durango Management, LLC subsidiary owned, the website, and merchandise branding. Defendants included the trademark in their investment solicitations. However, Clover Top Holdings, Inc. no longer owns the trademark. Sensoria alleges that the Kaweske Defendants improperly caused Clover Top Holdings, Inc. to abandon the trademark and then had it registered under the name of the JW Colorado entity for the competing businesses to use. Sensoria brings is trademark-based cause of action against the Kaweske Defendants derivatively on behalf of Clover Top Holdings, Inc.

Sensoria also uses its Response to clarify exactly what Lanham Act violations it is claiming. Its first claim is for trademark infringement in violation of 15 U.S.C. § 1114. The Kaweske Defendants argue that it should be dismissed because Sensoria lacks standing to assert it. Section 1114 protects only a registered trademark, and as such, the cause of action is limited to the trademark's "registrant" or the registrant's legal representatives, predecessors, successors, and assigns. *Fed. Treasury Enter. v. SPI Spirits, Ltd.*, 726 F.3d 62, 72 (2nd Cir. 2013) (citing 15 U.S.C. §§ 1114(1) and 1127). Sensoria responds that at ¶ 43 of its Amended Complaint (ECF 95), Plaintiffs plead that the investment solicitations included the representation that Clover Top Holdings, Inc. is the trademark's registrant. Even if Clover Top Holdings, Inc. either directly itself or indirectly through a subsidiary once owned the trademark, Plaintiffs also plead that Clover Top Holdings, Inc. subsequently lost that registration. If Clover Top Holdings, Inc. no longer possesses the trademark, then neither it nor Sensoria on its behalf has standing to seek redress for the infringement.

Sensoria's second Lanham Act claim is for false advertising and false association in violation of 15 U.S.C. § 1125. Trademark ownership is not required to bring that claim. *Original Rex, LLC v. Beautiful Brands Int'l, LLC*, 792 F. Supp. 2d 1242, 1261 (N.D. Okla. 2011). Sensoria argues that standing is not limited to direct competitors either. Even if Sensoria is correct on that point, the fact remains that Clover Top Holdings, Inc. is not engaged in commerce. Assuming no other legal bar to Sensoria's ability to bring the claim on Clover Top Holding, Inc.'s behalf, there still must be some sort of injury to Clover Top Holding, Inc.'s commercial interests or marketplace position. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 137 (2014). Sensoria argues that it does plead such injury because Clover Top Holdings, Inc. should be the business that is benefitting from the TweedLeaf mark, but it simply restates its argument that the

Kaweske Defendants wrongly took the trademark and mismanaged Clover Top Holdings, Inc. Sensoria does not plead how Clover Top Holdings, Inc. has suffered injury to its present commercial interests. Sensoria also does not show how the Kaweske Defendants' use of the trademark is "false." Plaintiffs plead that they currently are the owners of the trademark (even if wrongly obtained, allegedly). Consequently, they are making no false associations with Clover Top Holdings, Inc. when they sell cannabis under the TweedLeaf trademark.

Thus, Sensoria does not plead a plausible Lanham Act violation, and the Nineteenth Cause of Action is dismissed.

## VIII.   Declaratory and Injunctive Relief

For their First Cause of Action, Plaintiffs seek a declaratory judgment under 28 U.S.C. §§ 2201-02 as well as injunctive and other equitable forms of relief including an accounting. The Kaweske Defendants argue that the First Cause of Action should be dismissed because it is redundant to Plaintiffs' other claims for relief. It largely restates Plaintiffs' other theories of wrongdoing and seeks adjudication of the same rights and relief. A court may dismiss a declaratory judgment claim that is duplicative or redundant to other claims. *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 636 (N.D. Tex. 2010) (denying on a summary judgment motion both the breach of contract claim and the declaratory judgment claim redundant to it). However, the mere fact that it may be redundant does not require dismissal. "The existence of another adequate remedy does not preclude a declaratory judgment." Fed. R. Civ. P. 57. Even if Plaintiffs' First Cause of Action proves unnecessary, it is too early at this stage to dismiss it. Defendants remain free to oppose declaratory or injunctive relief later, after further development of the allegations and record. *Morinville v. U.S. Patent & Trademark Office*, 442 F. Supp. 3d 286, 296 (D.D.C. 2020) (denying a motion to dismiss for that reason). Therefore, the Court denies the Kaweske

Defendants' Motion to Dismiss on this issue.

## IX.    Leave to Amend

Dismissal of a case is a harsh remedy, and as a general rule, a litigant should have the opportunity to amend the complaint and cure pleading defects. *Hall*, 935 F.2d at 1109–10; *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). The Court does not find that filing a Second Amended Complaint would be futile. This is the first ruling on the merits of Defendants' dismissal arguments, and there is the potential that Plaintiffs can correct for the pleading deficiencies discussed above.

## **CONCLUSION**

The primary obstacle to Plaintiffs' claims for relief is the illegality affirmative defense, but there is the potential that they may be able to seek relief that does not implicate federal marijuana laws. The Court also considers Defendants' additional reasons for dismissal. The Court finds no other legal bar that precludes Sensoria's ability to bring claims derivatively on Clover Top Holdings, Inc.'s behalf, but with the exception of the Thirteenth Cause of Action (alleging a CUFTA violation) and Sixteenth Cause of Action (for aiding and abetting breach of fiduciary duty), it may not raise claims directly on its own behalf. The Court finds that Plaintiffs do not plead certain other causes of action plausibly according to their legal definitions.

Accordingly, for the above reasons, the Kaweske Defendants' Motion to Dismiss [filed September 21, 2020; ECF 109], the Evangelista Defendants' Motion to Dismiss [filed September 21, 2020; ECF 110], and the Tannenbaum Defendants' Motion to Dismiss [filed September 21, 2020; ECF 107] are all **granted in part**. The Court dismisses all claims (except the Tenth Cause of Action) on the basis of the illegality affirmative defense. The Court dismisses the Fifth Cause of Action (breach of fiduciary duty) as raised against the Kaweske Defendants as well as the Ninth

32

(corporate waste), Tenth (breach of fiduciary duty and legal malpractice), Fourteenth (civil conspiracy), and Fifteenth (intentional interference with contract) Causes of Action to the extent Sensoria brings them as direct claims on its own behalf. The Court dismisses the Fourteenth and Seventeenth Causes of Action as raised against the Tannenbaum Defendants for the failure to plead plausible civil conspiracy and unjust enrichment claims against them. Lastly, the Court dismisses the Fifteenth and Nineteenth Cause of Action for the failure to plead plausible claims of intentional interference with contract and Lanham Act violations. However, the dismissals are without prejudice, and Plaintiffs have leave to file a Second Amended Complaint.

Sensoria voluntarily dismisses its Eighteenth Cause of Action (for violation of the Delaware Securities Act). ECF 126 at 41.

The Motions to Dismiss are otherwise **denied**.

SO ORDERED.

Dated at Denver, Colorado, this 12th day of January, 2021.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge