UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00942-MEH

SENSORIA, LLC, directly on its own behalf and derivatively on behalf of CLOVER TOP HOLDINGS, INC., a Delaware corporation; and GORDON MORTON,

        Plaintiffs,

v.

JOHN D. KAWESKE;
CHRISTOPHER S. PETERSON;
CLOVER TOP HOLDINGS, INC., a Delaware corporation;
CLOVER TOP HOLDINGS, a Colorado corporation;
AJC INDUSTRIES, LLC;
DURANGO MANAGEMENT, LLC;
SUNLIFE AG, LLC;
MMJ 95, LLC;
TWEEDLEAF LLC, a Colorado limited liability company;
TWEEDLEAF, LLC, a Delaware limited liability company;
LIFESTREAM HOLDINGS LLC;
ORDWAY FARMS LLC;
NORTH STAR HOLDINGS aka NORTH STAR HOLDINGS, INC.;
MANUEL WELBY EVANGELISTA aka WELBY EVANGELISTA;
DJDW, LLC;
JW COLORADO, LLC;
JW ORDWAY, LLC;
JW TRINIDAD, LLC;
BRIAN TANNENBAUM;
TANNENBAUM & TROST, LLC fka TANNENBAUM, TROST & BURK, LLC; and
DOES 1-100,

        Defendants.

**JOHN KAWESKE AND THE ENTITY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

## INTRODUCTION

Plaintiffs' First Amended Complaint was verified by Gordon Morton, an individual Plaintiff and the Manager of Plaintiff Sensoria, who attested that the allegations in the Complaint "are true and correct to the best of my knowledge, information, and belief." Accepting those allegations as true, the Court concluded as follows:

> **Plaintiffs' Amended Complaint makes plain that the purpose of the investment vehicle was to grow and sell marijuana. Plaintiffs knew that to be the nature of the business and expected lucrative returns from their ownership share.** Moreover, Plaintiffs believed that the business venture was taking substantial steps—by acquiring large growing and retailing facilities—to expand its operations. The business may have sold other products that are entirely lawful under federal law, but that does not change the fact that the business was selling marijuana.

(ECF No. 150 at 12 (emphasis added).) The Court granted Defendants' motion to dismiss Plaintiffs' claims, except for the Tenth Cause of Action, because Plaintiffs did "not explain how relief could be fashioned here that would not endorse or require illegal activity, or would be paid from an asset source independent of marijuana." (*Id.* at 13.) The Court granted Plaintiffs leave to amend to cure that barrier to their claims.

Plaintiffs' Second Amended Complaint is also verified by Morton, who again attests to the accuracy of its allegations. The new Complaint does two things. First, it attempts to obfuscate the illegal nature of Clover Top's business, Plaintiffs' knowledge of that illegality, and the relief Plaintiffs seek based on their claims. Despite Plaintiffs' efforts, they still have failed "to plead theories of relief that do not implicate the CSA." (*Id.*) Therefore, as before, illegality bars all of Plaintiffs' claims except their Tenth Cause of Action.

Second, without leave of Court, Plaintiffs add a civil RICO claim, which has distinct echoes of Plaintiffs' now-dismissed Lanham Act claim—it is pled in formulaic fashion, without

2

any factual content explaining or even suggesting Plaintiffs' theory of liability, and it is a transparent and unfounded attempt to recover treble damages. This claim is barred by the *in pari delicto* doctrine, and Plaintiffs have not pled injury to a cognizable business or property interest or a plausible theory of causation. The Court should dismiss it.

## ARGUMENT

### A. Illegality Still Bars Plaintiffs' Claims

Plaintiffs' Second Amended Complaint unsuccessfully attempts to whitewash the illegal nature of Clover Top's marijuana business. That is made plain from the errata Plaintiffs filed. Here are several representative changes:

> Using Clover Top Holdings, Inc., as his original vehicle, Kaweske solicited hundreds of thousands of dollars in investment funds ~~for the Colorado cannabis business~~ from plaintiff Sensoria, LLC, and other investors . . . .
>
> Meanwhile, Kaweske successfully operates for himself through his other, undisclosed entities the very ~~cannabis-related~~ business in which Sensoria invested.
>
> In or about January 2016, Clover Top executed a contract to purchase two real estate holdings in Colorado Springs, one a ~~marijuana dispensary facility~~<u>retail building</u> and the other a ~~"grow"~~ warehouse. These were existing licensed facilities operating under the name of Wellstone. According to Kaweske, Clover Top intended to execute another contract shortly thereafter to acquire ~~a licensed~~ <u>an</u> entity from an unrelated group.

(ECF No. 156, ¶¶ 2, 35.) This is sham pleading, and a rather unsubtle attempt to avoid the defects in Plaintiffs' First Amended Complaint simply by ignoring them. But based on the allegations that remain, illegality is still plain from the face of Plaintiffs' Second Amended Complaint: Clover Top's purpose was to grow and sell marijuana, and Plaintiffs bought shares in Clover Top in the hopes of profiting off that illegal activity. (ECF No. 155, ¶¶ 27, 42-43.) As the

Court already concluded, "[t]he basic nature of [Clover Top's] operations and Plaintiffs' relationship to it implicate the CSA." (ECF No. 150 at 12.)

The question, then, is whether, despite the illegality that permeates Plaintiffs' Second Amended Complaint, the Court can grant Plaintiffs relief in a way that does not implicate federal marijuana laws. (*Id.* at 13.) Incredibly, Plaintiffs' Second Amended Complaint does not change <u>any aspect</u> of the relief they previously sought in their prior complaint. Plaintiffs still seek an order granting them an ownership interest in, and title to the assets of, the Entity Defendants, which are illegal marijuana enterprises (ECF No. 155, ¶ 126); the return of Sensoria's illegal investment (*id.* ¶¶ 142-43, 150, 153, 159, 165, 221); damages for Defendants' alleged corporate waste, conversion, and civil theft of Clover Top's assets, which were allegedly put to use in competing illegal marijuana businesses (*id.* ¶¶ 175-76, 183-184, 186-87); avoidance of purportedly fraudulent transfers of those assets to competing illegal marijuana businesses, together with an attachment or other provisional remedy against the property of illegal marijuana businesses (*id.* ¶¶ 196); and restitution from, and a constructive trust on, competing illegal marijuana businesses (*id.* ¶¶ 217-18). As with their prior Complaint, Plaintiffs are seeking forms of relief that implicate the CSA.

Plaintiffs apparently believe they can avoid this conclusion with a wink and a nod. According to them, their Second Amended Complaint should not be construed as seeking relief that involves Defendants' marijuana activities; instead, they are only seeking recovery from business activities, property, and other interests "independent of illegal activities associated with marijuana." (*Id.*, ¶ 117.) This does not solve Plaintiffs' illegality problem.

Paragraph 117 is not a factual allegation; it is a legal characterization of Plaintiffs' claims that the Court need not accept as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). And it shifts the burden to the Court of divining ways to grant Plaintiffs relief that is not related in any way to Defendants' marijuana business. That is unworkable, in that it purports to put the Court in the position of a receiver for Defendants' illegal business. It is also impossible, because the facts alleged in the Complaint make plain that <u>all</u> of Defendants' assets and interests are bound up in an illegal enterprise. Federal law is clear that otherwise legal assets and interests, such as real property, that marijuana enterprises own are subject to forfeiture if they constitute the proceeds of marijuana sales and/or are used to facilitate marijuana-related activity. *See* 21 U.S.C. § 881. So Plaintiffs cannot avoid the illegality defense by distinguishing between Defendants' "legal" assets and interests that are used in connection with their illegal enterprise and the clearly illegal income streams, assets, and interests of the enterprise—federal law forecloses that distinction. In reality, as opposed to Plaintiffs' paragraph 117, Plaintiffs continue to seek relief that would be paid from asset sources that are wholly dependent on marijuana. That is impermissible and warrants dismissal of their claims. (*See* ECF No. 150 at 13 (dismissing plaintiffs' claims because Court could not understand how relief could be fashioned that would be paid from an asset source independent of marijuana).)[1]

---

[1] *Accord Polk v. Gontmakher,* No. 2:18-CV-01434-RAJ, 2020 WL 2572536, at *2 (W.D. Wash. May 21, 2020) ("[Plaintiff's] claim that his requested relief would not require a violation of the CSA defies logic. . . . He is demanding the future profits of a business that produces and processes marijuana in violation of federal law. How does [plaintiff] anticipate [the marijuana business] will generate these future profits?").

Plaintiffs' claims fail on illegality grounds for an additional reason: granting them the relief they seek would "endorse" their illegal activity. (*Id.*) Plaintiffs' investment in Clover Top was illegal under federal law. *See* 21 U.S.C. §§ 853, 881; *In re Malul*, 614 B.R. 699, 711 (Bankr. D. Colo. 2020) (finding it was illegal for marijuana investor to execute Subscription Agreement, own interest in marijuana business, and receive distributions from marijuana business on account of that interest). The Court is charged with upholding federal law. Allowing Plaintiffs' claims to proceed and granting them the protections of a federal forum would be inconsistent with that charge. *See In re Johnson,* 532 B.R. 53, 56 (Bankr. W.D. Mich. 2015) (noting contradiction between court's oath to uphold federal law and countenancing debtor's marijuana activity). And it "would undermine enforcement of federal law by giving prospective investors increased confidence in funding marijuana businesses," *Bart St. III v. ACC Enterprises, LLC*, No. 217CV00083GMNVCF, 2020 WL 1638329, at *9 (D. Nev. Apr. 1, 2020) (dismissing marijuana investor's unjust enrichment claim under unclean hands doctrine).[2] Although the Court correctly noted that the illegality defense is not applied in a "hard-and-fast manner" (ECF No. 150 at 13), Plaintiffs seek relief that asks the Court to validate the illegal investment that is the basis for their claims. Given the ongoing federal legislative interest in the CSA and prohibiting the cultivation,

---

[2] *Accord Hemphill v. Liberty Mut. Ins. Co.*, No. CV 10-861 LH/RHS, 2013 WL 12123984, at *2-3 (D. N.M. Mar. 28, 2013) (granting summary judgment to defendant on ground that federal court could not require insurance company to pay plaintiff's future medical expenses for medical marijuana use because to do so would violate federal law and policy); *Tracy v. USAA Cas. Ins. Co.*, No. CIV. 11-00487 LEK, 2012 WL 928186, at *13 (D. Haw. Mar. 16, 2012) (declining to order home insurer to pay for insured's claim for theft of marijuana plants because "Plaintiff's possession and cultivation of marijuana, even for State-authorized medical use, clearly violates federal law").

distribution, sale, possession, and consumption of marijuana, the Court should deny Plaintiffs' request and dismiss their claims.

### B. Plaintiffs' Civil RICO Claim Fails as a Matter of Law

Taking another run at treble damages after the Court dismissed their Lanham Act claim, Plaintiffs have asserted a civil RICO claim for the first time in their Second Amended Complaint. This claim suffers from a number of deficiencies and should be dismissed.

#### 1. The *In Pari Delicto* Doctrine Bars Plaintiffs' RICO Claim

First, Plaintiffs' RICO claim fails because Plaintiffs were participants in the alleged racketeering activity that their claim is based on—growing and selling marijuana. The *in pari delicto* doctrine bars a RICO claim if: (1) the plaintiffs actively participated in the alleged RICO violation; and (2) applying the defense would not interfere with RICO's policy goals. *Inge v. McClelland*, 725 F. App'x 634, 639 (10th Cir. 2018) (citing *Rogers v. McDorman*, 521 F.3d 381, 389 (5th Cir. 2008)). In *Inge*, the plaintiffs asserted a RICO claim against a pharmacist, alleging that he dispensed opioids and other narcotics to them, in violation of federal law. *Id.* at 636. Applying the test above, the district court granted the pharmacist's motion to dismiss the claim, reasoning that (1) plaintiffs were active participants in a scheme to obtain narcotics through illicit means; and (2) the policy goals of RICO supported applying the *in pari delicto* defense, because if it were disallowed, the plaintiffs "would in essence be rewarded for their illegal behavior in a way never intended by Congress in RICO." *Id.* at 639. The Tenth Circuit "agree[d] with the district court's sound analysis with respect to both elements" and affirmed. *Id.*; *accord Rogers*, 521 F.3d at 389 (affirming dismissal of RICO claims brought by directors of bank who participated in illegal check kiting scheme perpetrated by bank's customer).

7

The same reasoning applies here. Plaintiff Morton used Plaintiff Sensoria to become the first outside investor in Clover Top, believing that Clover Top "would be the holding company or the 'mothership' for all cannabis-related entities, technologies, and brands in Colorado and expanding beyond Colorado as its success grew." (ECF No. 155 ¶ 42.) In exchange for that investment, Sensoria became a Clover Top shareholder and expected to "receive the benefit of" Kaweske and Peterson's "cannabis-related activities." (*Id.*, ¶ 45; *see also id.*, ¶ 46.) Thereafter, Morton and Sensoria received investor updates detailing monthly sales from Clover Top's marijuana dispensary, and Morton personally visited Colorado Springs to meet with Kaweske and Peterson to discuss the business. (*Id.*, ¶¶ 55, 57, 60, 66, 68.) And then, with full knowledge of Clover Top's illegal activities, Morton caused Sensoria to invest an additional $125,000 in the Company in exchange for 125,000 more shares. (*Id.*, ¶¶ 63-64.) These allegations make clear that Plaintiffs were willing and active participants in Defendants' alleged RICO violation.

Nor would *in pari delicto* interfere with RICO's policy goals. "Congress intended RICO's civil remedies to help eradicate 'organized crime from the social fabric' by divesting 'the association of the fruits of ill-gotten gains.'" *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1155 (11th Cir. 2006) "[I]t would be anomalous, to say the least, for the RICO statute to make racketeering unlawful in one provision, yet award the violator with treble damages in another provision of the same statute." *Rogers*, 521 F.3d at 389 (quotations omitted). "To allow co-conspirators to recover from each other would not . . . deprive violators of their ill-gotten gains, but would transfer the ill-gotten gains between them," *id.*, an "absurd result which must be avoided," *Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1319 (M.D. Fla. 2005) (quoting *Lopez v. Dean Witter Reynolds, Inc.*, 591 F. Supp. 581, 588 n. 4 (N.D. Cal.

1984)). Plaintiffs here are not innocent bystanders who suffered losses because of Defendants' illegal marijuana activities; Sensoria and Morton funded, enabled, and participated in those activities, and Clover Top, whose rights Sensoria asserts derivatively, actually conducted those activities. Allowing Plaintiffs' RICO claim to proceed would entitle them to sue for the functional equivalent of continued participation and profit-sharing in an illegal enterprise. That is clearly not what Congress intended when it provided civil remedies for RICO. Plaintiffs' RICO claim should be dismissed on this basis.

### 2. Plaintiffs Have Failed to State a RICO Claim

Even if Plaintiffs could somehow overcome *in pari delicto*, their RICO claim still fails because they have not stated essential elements of the claim under Rule 12(b)(6). To maintain their claim, Plaintiffs must plausibly plead: (1) that Defendants violated 18 U.S.C. § 1962; (2) that Plaintiffs' business or property was injured; and (3) that Defendants' violation is the cause of that injury. *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 881 (10th Cir. 2017). Plaintiffs' claim should be dismissed because they do not have a property interest that is protected by RICO, and they have not and cannot plausibly allege that Defendants' alleged cultivation and distribution of marijuana caused them injury.

#### a. Plaintiffs have not alleged a cognizable property interest under RICO

The RICO statute's requirement of injury to "business or property" necessarily refers to legitimate business or property interests, and courts have dismissed RICO claims based on illegitimate interests that, if recognized, would be contrary to RICO's purposes. In *Doe v. Roe*, for example, the plaintiff, a former client of the defendant attorney, claimed that the value of her sexual services to the attorney in exchange for his legal services constituted a property injury

9

under RICO. 958 F.2d 763, 768 (7th Cir. 1992). The Seventh Circuit disagreed, noting that under Illinois law, "contracts for sexual services are unenforceable as a matter of public policy" and that to hold otherwise "would open a proverbial Pandora's box of issues . . . ." *Id.*[3] The court also found it "impossible to believe that Congress," in enacting RICO, intended to thwart "criminal activity by recognizing a civil action to acquire monetary recovery for the value of one's sexual activity." *Id.*

Likewise here, it defies logic that Congress enacted RICO, which defines CSA violations as "racketeering activity," to protect business or property interests in that activity. Yet that interpretation is precisely what Plaintiffs' RICO claim depends on. Plaintiffs are claiming injury to Sensoria's illegal investment in a marijuana enterprise, the reduced value of Sensoria's shares in a marijuana enterprise, and Clover Top's rights to assets and interests in a marijuana enterprise. Protecting these interests would not thwart criminal activity; it would incentivize criminal activity. The Court should decline to do so and hold that Plaintiffs have not alleged an injury to a business or property interest intended to be protected by RICO.

3. <u>Plaintiffs have not plausibly pled facts showing that Defendants' alleged RICO violation caused their injury</u>

Plaintiffs' RICO claim also fails for lack of plausible causation. RICO's causation element requires Plaintiffs to plausibly allege that a RICO predicate offense not only was a "but for" cause of their injury, but was the proximate cause as well. *Anza v. Ideal Steel Supply Corp.*,

---

[3] The Seventh Circuit noted that although state law determines whether a particular interest amounts to property in most cases, federal courts "are not required to adopt a state interpretation of 'business or property' if it would contravene Congress' intent in enacting RICO." *Id.* Here, even if Plaintiffs' interests in Clover Top are valid under Colorado law, recognizing them as "business or property" would contravene RICO.

547 U.S. 451, 457 (2006). Although Plaintiffs claim that Defendants' RICO violations caused injury to Plaintiffs' business or property (ECF No. 155, ¶ 220), the Court need not accept that allegation as true. *See Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 14 (2010). And Plaintiffs' Second Amended Complaint makes clear that they have not and cannot plausibly plead either form of causation.

To establish "but for" causation, Plaintiffs must plausibly show that their injuries would not have occurred but for Defendants' alleged RICO violations. *RWB Servs., LLC v. Hartford Computer Grp., Inc.*, 539 F.3d 681, 686-687 (7th Cir. 2008). In *Safe Streets Alliance*, for example, plaintiff landowners asserted a civil RICO claim against defendants, who ran a marijuana grow operation on adjoining property, alleging that the stench from and presence of the illegal operation harmed their enjoyment of the property and its resale value. 859 F.3d at 886-87. The Tenth Circuit held that plaintiffs plausibly alleged "but for" causation—if the defendants were not growing marijuana next door (a RICO violation), plaintiffs' claimed injuries would not have occurred. *Id.* at 886-88.

Here, by contrast, there is no causal link whatsoever between Defendants' alleged RICO violations—cultivating and distributing marijuana (ECF NO. 155, ¶ 213)—and Plaintiffs' alleged injuries. The only injuries Plaintiffs have plausibly alleged are that Sensoria lost its $225,000 investment in Clover Top, and Clover Top itself has been deprived of assets and interests to which it is rightfully entitled. (*E.g., id.*, ¶¶ 2, 63, 73, 79, 86, 107, 119, 183, 186, 199.) The cause of those injuries was Defendants' allegedly <u>tortious</u> conduct—soliciting Sensoria's investment under false pretenses, and, thereafter, diverting Clover Top's assets and interests to independent entities. This alleged conduct is not "racketeering activity" under the civil RICO

statute. *See Annulli v. Panikkar*, 200 F.3d 189, 192 (3d Cir. 1999) (holding that theft by deception, breach of contract, and intentional interference with contract were not predicate RICO acts), *abrogation on other grounds recognized by Forbes v. Eagleson*, 228 F.3d 471 (3d Cir. 2000).[4] Otherwise, Plaintiffs' Second Amended Complaint is devoid of any factual content supporting a plausible inference that their business or property has been harmed because Defendants are growing and selling marijuana. Therefore, Plaintiffs' injuries would have occurred regardless of Defendants' alleged RICO violations. This forecloses Plaintiffs' RICO claim.

Plaintiffs cannot establish proximate causation for the same reason. "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led <u>directly</u> to the plaintiff's injuries"; indirect injuries do not suffice. *Anza*, 547 U.S. at 461 (emphasis added). In *Anza*, the defendants allegedly defrauded New York's tax authority by committing mail and wire fraud, in violation of RICO. *Id.* at 457–59. However, the plaintiff sought to recover for its lost sales, the result of the defendants' distinct scheme of artificially lowering prices by not charging customers required sales taxes. *Id.* at 458. The Supreme Court held that plaintiff's RICO claims failed to meet the proximate cause element because "[t]he cause of [the] asserted harms" was "a set of actions (offering lower prices)

---

[4] *Accord Missaghi v. Apple Inc.*, No CV 13-02003 GAF, 2013 WL 12200086, at *7 (C.D. Cal. Nov. 1, 2013) ("[c]ommon law fraud, like other garden variety state claims, is not a predicate act" under civil RICO statute) *Stangel v. A-1 Freeman N. Am., Inc.*, No. 01-CV-2198, 2001 WL 1669387, at *1 (N.D. Tex. Dec. 27, 2001) ("Plaintiffs have listed no actions in their Complaint that constitute racketeering activity under [18 U.S.C. § 1961(1)]. The wrongful acts Plaintiffs allege Defendants to have committed—breach of a settlement agreement, interference with a contract, conversion of property, and intentional infliction of emotional distress—do not constitute racketeering activity."); *see also* 18 U.S.C. § 1964(c) (barring civil RICO claims based on predicate acts of securities fraud).

entirely distinct from the alleged RICO violation (defrauding the State)." *Id.* Here, the alleged cause of Plaintiffs' asserted harms was a set of actions (engaging in alleged business torts) entirely distinct from Defendants' alleged RICO violations (growing and selling marijuana in violation of the CSA). There is no link, much less a direct one, between Defendants' alleged racketeering activity and Plaintiffs' alleged injuries. Therefore, as in *Anza*, Plaintiffs' RICO claim fails for lack of plausible proximate cause. *See also Sladek v. Bank of Am., NA,* No. 13-cv-03094-PAB-MEH, 2014 WL 8105181, at *8 (D. Colo. July 30, 2014) (Hegarty, J.) (dismissing plaintiff's RICO claim because alleged RICO violations did not "directly involve the foreclosure" of her home, which was her sole alleged injury).

### C. Plaintiffs' Complaint Should be Dismissed With Prejudice

Despite having three opportunities to state valid claims, Plaintiffs cannot change the fundamental facts and law of this case. They invested in an illegal marijuana enterprise and are seeking relief that cannot be squared with the CSA. Their most recent amendment, which makes mostly superficial changes, underscores that point. Plaintiffs should not be permitted to further burden the Court or Defendants by being given a fourth opportunity. The Court's dismissal of Plaintiffs' claims should be with prejudice. *See Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1189 (10th Cir. 2012) ("Dismissal with prejudice is appropriate where the complaint fails to state a claim and granting leave to amend would be futile.").

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion and dismiss Plaintiffs' Second Amended Complaint with prejudice.

Dated:  March 2, 2021.                             Respectfully submitted,


                                                *s/Tamera D. Westerberg*
                                                Tamera D. Westerberg
Thomas A. Olsen
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone:   303.244.1800
Facsimile:    303.244.1879
Email:   westerberg@wtotrial.com
             olsen@wtotrial.com

Attorneys for Defendants John Kaweske, JW Colorado, LLC, JW Trinidad, LLC, JW Ordway, LLC, MMJ 95, LLC, AJC Industries, LLC, Lifestream Holdings, LLC, Sunlife AG, LLC, Durango Management, LLC, Ordway Farms, LLC, and TweedLeaf, LLC (a Colorado LLC)

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on March 2, 2021, I electronically filed the foregoing **JOHN KAWESKE AND THE ENTITY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Stephen K. Christiansen**
  steve@skclawfirm.com, jen@skclawfirm.com

- **Jeffrey B. Klaus**
  jbk@deisch-marion.com

- **Timothy F. Marion**
  tim_marion@deisch-marion.com, barb_dye@deisch-marion.com

- **Matthew A. Steward**
  mas@clydesnow.com

- **Shaunda L. McNeill**
  slm@clydesnow.com

Notification of this filing is also being sent to Defendant Christopher S. Peterson via email at chris@blinghouse.com.

*s/ Tamera D. Westerberg*