UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00942-MEH

SENSORIA, LLC, directly on its own behalf and derivatively on behalf
of CLOVER TOP HOLDINGS, INC., a Delaware corporation; and
GORDON MORTON,

          Plaintiffs,

v.

JOHN D. KAWESKE;
CHRISTOPHER S. PETERSON;
CLOVER TOP HOLDINGS, INC., a Delaware corporation;
CLOVER TOP HOLDINGS, a Colorado corporation;
AJC INDUSTRIES, LLC;
DURANGO MANAGEMENT, LLC;
SUNLIFE AG, LLC;
MMJ 95, LLC;
TWEEDLEAF LLC, a Colorado limited liability company;
TWEEDLEAF, LLC, a Delaware limited liability company;
LIFESTREAM HOLDINGS LLC;
ORDWAY FARMS LLC;
NORTH STAR HOLDINGS aka NORTH STAR HOLDINGS, INC.;
MANUEL WELBY EVANGELISTA aka WELBY EVANGELISTA;
DJDW, LLC;
JW COLORADO, LLC;
JW ORDWAY, LLC;
JW TRINIDAD, LLC;
BRIAN TANNENBAUM;
TANNENBAUM & TROST, LLC fka TANNENBAUM, TROST &
BURK, LLC; and
DOES 1-100,

          Defendants.

---

## JOHN KAWESKE AND THE ENTITY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 1

I.     PLAINTIFFS' CLAIMS AGAINST KAWESKE AND THE ENTITY
      DEFENDANTS SHOULD BE DISMISSED UNDER RULE 12...................................... 1

        A.     Plaintiffs' Claims Against Kaweske and the Entity Defendants are Barred
               Because Marijuana is Illegal Under Federal Law ...................................................... 1

             1.     The Illegality is Plain From the Face of the Complaint ............................. 1

             2.     Plaintiffs' Balancing Test is Irrelevant ...................................................... 5

             3.     Allowing Plaintiffs' Claims to Proceed Would Require a CSA
                   Violation and Condone Plaintiffs' Violations of Federal Law .................. 6

        B.     Plaintiffs' Civil RICO Claim Fails as a Matter of Law ........................................ 10

             1.     Plaintiffs' RICO Claim Based on Alleged Securities Fraud is
                   Barred by 18 U.S.C. § 1964(c) ................................................................ 10

             2.     Plaintiffs' RICO Claim Based on Alleged Siphoning of Clover
                   Top's Assets Fails to State Racketeering Activity and "Continuity" ....... 11

             3.     Plaintiffs' RICO Claim Based on Defendants' Marijuana Activities
                   Fails to State a Claim and is Barred by *In Pari Delicto* ........................... 15

             4.     Plaintiffs Have Not Alleged a Cognizable Property Interest Under
                   RICO ....................................................................................................... 18

        C.     Plaintiffs' Complaint Should be Dismissed With Prejudice ................................ 18

CONCLUSION ......................................................................................................... 19

**<u>TABLE OF AUTHORITIES</u>**

**CASES**

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006) .............................................................................................. 15

*Bart St. III v. ACC Enterps., LLC*,
   2020 WL 1638329
   (D. Nev. Apr. 1, 2020) ..................................................................................... 3, 10

*Bixler v. Foster*,
   596 F.3d 751 (10th Cir. 2010) ........................................................ 11, 13, 14, 15

*Boone v. Carlsbad Bancorporation, Inc.*,
   972 F.2d 1545 (10th Cir. 1992) ............................................................................ 14

*Calcasieu Marine Nat'l Bank v. Grant*,
   943 F.2d 1453 (5th Cir. 1991) ............................................................................. 11

*Dan River Inc. v. Icahn*,
   701 F.2d 278 (4th Cir. 1983) .............................................................................. 17

*Doe v. Roe*,
   958 F.2d 763 (7th Cir. 1992) .............................................................................. 18

*Earth Science Tech, Inc. v. Impact UA, Inc.*,
   809 F. App'x 600 (11th Cir. 2020) ....................................................................... 4

*Feinberg v. Comm'r*,
   808 F.3d 813 (10th Cir. 2015) .............................................................................. 7

*Gagne v. Gagne*,
   459 P.3d 686 (Colo. App. 2019) ....................................................................... 4, 5

*Ganey v. Raffone*,
   91 F.3d 143 (6th Cir. 1996) ................................................................................ 17

*Green Earth Wellness Ctr., LLC v. Atain Specialty Ins. Co.*,
   163 F. Supp. 3d 821 (D. Colo. 2016) ............................................................. 6, 7, 8

*H.J. Inc. v. Nw Bell Tel. Co.*,
   492 U.S. 229 (1989) ............................................................................................ 13

*In re Fredeman Litig.*,
   843 F.2d 821 (5th Cir. 1988) .............................................................................. 17

*In re Johnson*,
   532 B.R. 53 (Bankr. W.D. Mich. 2015) ..................................................................................... 8

*In re Malul*,
   614 B.R. 699 (Bankr. D. Colo. 2020) ............................................................................... 3, 5, 6

*In re Walt Disney Co. Deriv. Litig.*,
   906 A.2d 27 (Del. 2006) ...................................................................................................... 4, 5

*Inge v. McClelland*,
   725 F. App'x 634 (10th Cir. 2018) ......................................................................................... 16

*J. Lilly, LLC v. Clearspan Fabric Structures Int'l, Inc.*,
   No. 3:18-CV-01104-HZ, 2020 WL 1855190
   (D. Or. Apr. 13, 2020) ........................................................................................................ 8, 9

*Kriston v. Peroulis*,
   2010 WL 1268089
   (D. Colo. Feb. 19, 2010) ....................................................................................................... 14

*Lippoldt v. Cole*,
   468 F.3d 1204 (10th Cir. 2006) ............................................................................................... 8

*Mann v. Gullickson*,
   No. 15-cv-03630-MEJ, 2016 WL 6473215
   (N.D. Cal. Nov. 2, 2016) .......................................................................................................... 7

*Mason v. Orthodontic Ctrs. of Colo., Inc.*,
   516 F. Supp. 2d 1205 (D. Colo. 2007) ................................................................................ 5, 6

*Midwest Grinding Co. v. Spitz*,
   976 F.2d 1016 (7th Cir. 1992) ............................................................................................... 11

*Mischalski v. Ford Motor Co.*,
   935 F. Supp. 203 (E.D.N.Y. 1996) .......................................................................................... 9

*Nelson v. Colorado*,
   137 S. Ct. 1249 (2017) ............................................................................................................. 5

*Norman's Heritage Real Est. Co. v. Aetna Cas. and Sur. Co.*,
   727 F.2d 911 (10th Cir. 1984) ................................................................................................. 9

*Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*,
   437 F.3d 1145 (11th Cir. 2006) ............................................................................................. 16

*Religious Tech. Ctr. v. Wollersheim*,
    796 F.2d 1076 (9th Cir. 1986) ............................................................ 17

*Rogers v. McDorman*,
    521 F.3d 381 (5th Cir. 2008) ........................................................ 16, 17

*Rosenfield v. HSBC Bank, USA*,
    681 F.3d 1172 (10th Cir. 2012) ........................................................ 19

*Ross v. Bolton*,
    No. 83 CIV. 8244 (WK), 1991 WL 285619
    (S.D.N.Y. Dec. 30, 1991) .................................................................. 18

*Schacht v. Brown*,
    711 F.2d 1343 (7th Cir. 1983) .......................................................... 12

*Switzer v. Coan*,
    261 F.3d 985 (10th Cir. 2001) .......................................................... 17

*Tal v. Hogan*,
    453 F.3d 1244 (10th Cir. 2006) ........................................................ 12

*Torwest DBC, Inc. v. Dick*,
    810 F.2d 925 (10th Cir. 1987) .......................................................... 13

*Trane Co. v. O'Connor Sec.*,
    718 F.2d 26 (2d Cir. 1983) ............................................................... 17

*United States v. Benton*,
    988 F.3d 1231 (10th Cir. 2021) .......................................................... 2

*VanLindingham v. Grand Junction Reg'l Airport Auth.*,
    46 F. Supp. 3d 1119 (D. Colo. 2014)
    *aff'd* 603 F. App'x 657, 659 (10th Cir. 2015) ................................. 1, 2

**STATUTES**

18 U.S.C. § 1961 ............................................................................... 12

18 U.S.C. § 1962 ............................................................................... 12

18 U.S.C. § 1964 .......................................................................... 10, 11

21 U.S.C. § 801 .................................................................................. 1

21 U.S.C. § 841 .................................................................................. 7

21 U.S.C. § 881 .................................................................................................................... 8

**RULES**

Fed. R. Civ. P. 12 .......................................................................................................... passim

## INTRODUCTION

In their Motion to Dismiss, John Kaweske and the Entity Defendants (together, "Defendants") established that Plaintiffs' Second Amended Complaint ("Complaint") did nothing to solve the problems that led the Court to dismiss their prior complaint. Plaintiffs' Opposition attempts to inject complexity where none actually exists, rehashes arguments the Court already rejected, misapplies the law, and relies on a strained and implausible construction of their Complaint. The Court should reject Plaintiffs' arguments and grant Defendants' Motion.

## ARGUMENT

I.  **PLAINTIFFS' CLAIMS AGAINST KAWESKE AND THE ENTITY DEFENDANTS SHOULD BE DISMISSED UNDER RULE 12**

A.  **Plaintiffs' Claims Against Kaweske and the Entity Defendants are Barred Because Marijuana is Illegal Under Federal Law**

Plaintiffs argue their claims can proceed even though they arise out of Plaintiffs' illegal investment in Clover Top, a marijuana business that is itself illegal under the federal Controlled Substances Act ("CSA"), 21 U.S.C. § 801 *et seq.* Plaintiffs first argue that, as a pleading matter, the Complaint does not establish illegality. Then, following a detour to an inapplicable balancing test, Plaintiffs argue that even if illegality is established, their claims can still proceed because granting their requested relief would not require or condone illegal activity. Both arguments fail.

1.  The Illegality is Plain From the Face of the Complaint

"Dismissal of a claim under Rule 12(b)(6) on the basis of an affirmative defense . . . is proper where that defense is clear from the face of the Complaint." *VanLindingham v. Grand Junction Reg'l Airport Auth.*, 46 F. Supp. 3d 1119, 1124 (D. Colo. 2014) (dismissing complaint on basis of release), *aff'd* 603 F. App'x 657, 659 (10th Cir. 2015). Here, the Complaint establishes that (1) Plaintiffs invested in Clover Top knowing that it was involved in growing

and selling marijuana (*e.g.*, ECF No. 155, at ¶¶ 42-43, 45); (2) Plaintiffs received multiple investor updates from Clover Top detailing hundreds of thousands of dollars in sales from marijuana dispensaries (*id.*, ¶¶ 55, 57); and (3) Clover Top and other entities obtained numerous state licenses to grow and sell marijuana (*id.* ¶¶ 35, 38, 52, 55, 58-59, 75). As the Court already held, these allegations

> make[] plain that the purpose of the investment vehicle was to grow and sell marijuana. Plaintiffs knew that to be the nature of the business and expected lucrative returns from their ownership share. . . . [and] believed that the business venture was taking substantial steps—by acquiring large growing and retailing facilities—to expand its operations.

(ECF 150 at 12.) The illegality of Plaintiffs' investment and Clover Top's business is plain from the face of the Complaint, warranting dismissal of Plaintiffs' claims under Rule 12. *See VanLindingham*, 46 F. Supp. 3d at 1124-25 (finding plaintiff entered into release knowingly and voluntarily because allegations of complaint and documents subject to judicial notice "weighed against" her allegations of duress).

Plaintiffs' various attempts to avoid this conclusion fail. First, Plaintiffs repeatedly and self-servingly insist that they invested in Clover Top's marijuana business naively believing it was legal under federal law, and, on that basis, suggest that the Court should look the other way and hold that illegality is not plain from the face of the Complaint. Plaintiffs' claimed babe-in-the-woods belief is preposterous.[1] But even accepting it as true under Rule 12, it still "runs headlong into the venerable maxim that ignorance of the law is no excuse." *United States v. Benton*, 988 F.3d 1231, 1239 (10th Cir. 2021) (defendant's lack of knowledge that prior

---

[1] This assertion is particularly preposterous as it pertains to Sensoria's derivative claims on behalf of Clover Top, which was itself a federally illegal marijuana business. No reasonable similarly situated person or entity engaged in marijuana activities could possibly not know those activities are illegal under federal law.

conviction disqualified him from possessing firearm not a defense to firearm charge). The bottom line is that Plaintiffs knowingly invested and owned interests in a marijuana business and expected lucrative returns from those interests. And they presently know marijuana is illegal under federal law, yet they are here now, asking this federal Court to enforce their ownership interests in that illegal business. Plaintiffs cannot avoid the illegality defense by feigning ignorance in their Complaint.[2]

Second, Plaintiffs argue "there are numerous ways in which an individual could operate a profitable and legal cannabis business"—for example, it could sell cannabis that does not fall within the statutory definition of "marihuana," or sell "marihuana" in connection with an FDA-preapproved research study, or sell FDA-approved cannabis products. (ECF No. 177 at 9-10.) Thus, Plaintiffs say, the Court cannot assume that the Complaint's repeated references to cannabis involved federally illegal activities, because to do so would draw inferences against Plaintiffs, which is improper under Rule 12.

This is a non sequitur. Whether a cannabis business could conceivably be legal under federal law does not bear at all on the question of whether Clover Top conducted its business

---

[2] Plaintiffs attempt to distinguish *In re Malul* and *Bart St. III* on the basis that they "intended" to invest in a legal cannabis business. (ECF No. 177 13-14.) But the *In re Malul* court did not look to whether the debtor knew her marijuana investment was illegal; the debtor's "mere possession" of illegal rights and interests in the marijuana company from her investment constituted an "ongoing criminal violation[] of the CSA," and therefore she could not seek the protection of federal law. *In re Malul*, 614 B.R. 699, 713 (Bankr. D. Colo. 2020). Likewise, the *Bart Street III* court recognized that "[i]f the parties' primarily intended the loan to provide Plaintiff a path to obtain an ownership interest in Defendants' marijuana business, then the entire Contract is unenforceable." *Bart St. III v. ACC Enterps., LLC*, 2020 WL 1638329, at *6 (D. Nev. Apr. 1, 2020). (In their Opposition, Plaintiffs inserted "[illegal]" between "Defendants'" and "marijuana business".) The allegations of the Complaint make clear that Plaintiffs knowingly invested in a marijuana business in exchange for an ownership share in that business; under *In re Malul* and *Bart St. III*, it makes no difference whether they knew marijuana was legal or illegal.

legally under federal law. And the Complaint makes clear that it did not. To take just two examples, the pitch materials Morton received identified a long list of illegal activity in which Clover Top would be engaged, including owning and operating medical marijuana dispensaries and cultivation facilities. (ECF No. 155, ¶ 43.) And, in 2016, Clover Top obtained its first licensed medical marijuana business, set up a marijuana cultivation facility and dispensary in Colorado Springs, and sold marijuana from that facility. (*Id.*, ¶ 55.)[3] Although Plaintiffs are correct that the Court must draw all reasonable inferences in their favor, the Complaint does not even attempt to make the distinctions Plaintiffs are now trying to draw between legal and illegal cannabis sales. The only reasonable inference to be drawn from the Complaint's allegations is that Clover Top grew and sold marijuana, in violation of federal law.[4]

Third, Plaintiffs make several "presumption of legality" arguments that lack merit. The Court already rejected Plaintiffs' reliance on Clover Top's certificate of incorporation, which limits Clover Top to engaging in activities that comply with Delaware law. As the Court astutely noted, "[e]ven if Clover Top Holdings, Inc.'s activities were lawful under state law, the issue here is whether they were lawful under federal law." (ECF No. 150 at 12.) In addition, the cases Plaintiffs rely on for this purported presumption are inapposite. The *Walt Disney* and *Gagne*

---

[3] In light of these allegations, and specifically the timing of these allegations (2016), Plaintiffs' emphasis on the 2018 Farm Bill is a red herring. Whatever distinctions they are trying to make between what was illegal before and after the 2018 Farm Bill, the relevant events occurred beforehand.

[4] The *Earth Science Tech* case does not help Plaintiffs. There, the Eleventh Circuit held that defendant could not establish its illegality defense on a motion to dismiss because it was "unclear" if defendant's CBD oil was illegal under federal law when defendant and plaintiff executed their contract. *Earth Science Tech, Inc. v. Impact UA, Inc.*, 809 F. App'x 600, 608 (11th Cir. 2020). By contrast, marijuana was unquestionably illegal under the CSA at the time of the Subscription Agreement, and it remains illegal now.

cases involved the business judgment rule, which protects corporate directors from being second-guessed by shareholders on corporate decisions. *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 52 (Del. 2006); *Gagne v. Gagne*, 459 P.3d 686, 694 (Colo. App. 2019). Neither case involved an illegality defense. *Nelson v. Colorado*, which Plaintiffs cite for the view that a criminal conviction is required to overcome the presumption of legality, did not involve an illegality defense, either; rather, it addressed the constitutionality of statutes governing the refund of costs, fees, and restitution paid by convicted criminals when their conviction is overturned. 137 S. Ct. 1249, 1252 (2017). Thus, *Nelson* does not remotely suggest that the illegality defense necessarily depends on a criminal conviction, as Plaintiffs claim.[5] Plaintiffs' "presumption of legality" arguments are wholly unsupported.

In short, even drawing all <u>reasonable</u> inferences in Plaintiffs' favor, illegality is plain from the face of Plaintiffs' Complaint.

2.  <u>Plaintiffs' Balancing Test is Irrelevant</u>

Next, Plaintiffs argue that enforcing the illegality defense would be inconsistent with public policy. The various cases they cite and discuss miss the mark completely. In those cases, the question was whether a contract provision should be voided as being inconsistent with public policy. *E.g., Mason v. Orthodontic Ctrs. of Colo., Inc.*, 516 F. Supp. 2d 1205, 1212-1217 (D. Colo. 2007). Here, there is no question that the Subscription Agreement gave Plaintiffs an illegal ownership interest in a business that is illegal under federal law. *See In re Malul*, 614 B.R. at 711

---

[5] Indeed, there were no prior criminal convictions noted in the decisions cited in Defendants' Motion, and yet the courts denied relief because marijuana is illegal under federal law. *See, e.g., In re Malul*, 614 B.R. at 714 (denying bankruptcy relief to marijuana investor, despite no prior criminal conviction, because of the "*ab initio* illegality" of her investment).

(noting "it was illegal for [marijuana investor] to execute the Subscription Agreement and to own an interest in [marijuana business], and it would have been illegal for [investor] to accept distributions from [business] on account of those interests"). So the balancing test described in Plaintiffs' Opposition is inappropriate—indeed, the premise of the balancing test is that the parties have "legitimate interests" to protect, *Mason*, 516 F. Supp. 2d at 1213, and under federal law, Plaintiffs' interests flowing from their Clover Top investment are not only illegitimate, but illegal. Tellingly, none of the cases in this District that Plaintiffs cite applied their preferred balancing test to a marijuana-related contract.[6] Instead, the test here is what the Court already established: whether the Court can grant Plaintiffs relief in a way that does not implicate federal marijuana laws. And the answer to that question is "no."

3.   Allowing Plaintiffs' Claims to Proceed Would Require a CSA Violation and Condone Plaintiffs' Violations of Federal Law

Plaintiffs next argue that, even if illegality is plain from the face of the Complaint, the Court can still grant Plaintiffs the relief they seek without implicating the CSA or condoning their violations of the CSA. Not so.

Again, Plaintiffs rely principally on *Green Earth*. There, the defendant insurance company argued that it should not be required to provide coverage for the plaintiff policyholder's lost marijuana plants based on public policy, i.e., the federal prohibition on marijuana. Judge Krieger rejected that argument, because the Obama Administration's "ambivalen[t]" enforcement of the CSA in states where marijuana was legal, as reflected in several DOJ enforcement memos, "evidenc[ed] a continued erosion of any clear and consistent federal public

---

[6] The *In re Malul* court did not apply it. The *Green Earth Wellness Center* court did not apply it (as previously mentioned, the Court did not author the opinion; Judge Krieger did (ECF No. 177 at 26)). And the Court did not apply it in its prior Order. (ECF No. 150 at 12-13.)

policy in this area." *Green Earth Wellness Ctr., LLC v. Atain Specialty Ins. Co.*, 163 F. Supp. 3d 821, 832-33 & n.7, 835 (D. Colo. 2016). But as Judge (now Justice) Gorsuch recognized, it is Congress, not the DOJ, that makes federal marijuana policy:

> [I]t's true ...that two consecutive Deputy Attorneys General have issued memoranda encouraging federal prosecutors to decline prosecutions of state-regulated marijuana dispensaries in most circumstances. But in our constitutional order it's Congress that passes the laws, Congress that saw fit to enact 21 U.S.C. § 841, and Congress that in § 841 made the distribution of marijuana a federal crime.

*Feinberg v. Comm'r*, 808 F.3d 813, 816 (10th Cir. 2015). Federal public policy, as expressed by Congress, is clear—marijuana is a dangerous drug and should not be grown or distributed. The *Green Earth* court erred by putting the CSA, a longstanding federal statute, on the same level as a handful of DOJ memos in reaching its conclusion. The *Green Earth* court's public policy analysis—a core tenet of its ruling—was incorrect, and the Court should not follow it here.

The *Green Earth* court also held that requiring the insurer to compensate the plaintiff for the cost of its marijuana plants would not require illegal conduct. *Green Earth Wellness Ctr., LLC*, 163 F. Supp. 3d at 835. But this case is different. Plaintiffs are not insureds seeking recovery under an insurance policy. They are marijuana investors asking the Court to claw back their illegal investment, and award them various forms of relief that, regardless of Plaintiffs' attempts to whitewash and slice them, are inextricably bound up in the profits and assets of an illegal marijuana business.[7] While acknowledging that they seek to recover "these defendants'

---

[7] This undisputed fact also distinguishes this case from *Mann v. Gullickson*, where the court emphasized that the contract at issue, whereby plaintiff sold his companies to plaintiff, was not "*necessarily* illegal," because there was "no evidence in the record that the Companies actually possess, use, cultivate, or distribute marijuana." No. 15-cv-03630-MEJ, 2016 WL 6473215, at *4 (N.D. Cal. Nov. 2, 2016). Instead, the companies simply provided consulting and information and document preparation services. *Id.*

profits," and "assets" like marijuana grow operations and dispensaries, Plaintiffs argue that the Court can award them damages derived from legal revenue streams and assets. Yet the Complaint makes no such distinction between illegal and legal income streams or assets, and nor could it make that distinction, because federal law holds that assets and interests used in the cultivation and sale of marijuana are illegitimate property interests just like marijuana itself. 21 U.S.C. § 881. The undifferentiated relief Plaintiffs seek would, unlike the relief granted in *Green Earth*, require a CSA violation, because Plaintiffs, fundamentally, seek to recover the returns they claim they were entitled to as shareholders from illegal marijuana activities but for Defendants' alleged misconduct, and the assets and interests they seek to execute on are themselves illegal. *See, e.g., J. Lilly, LLC v. Clearspan Fabric Structures Int'l, Inc.*, No. 3:18-CV-01104-HZ, 2020 WL 1855190, at *12 (D. Or. Apr. 13, 2020) (plaintiff's lost profits claim barred because remedy required defendant to pay plaintiff for marijuana plants that could have been grown in absence of defendant's alleged misconduct).

Plaintiffs argue this bar doesn't apply because they are also seeking equitable relief, including an injunction that prevents Defendants from operating their marijuana businesses. But Plaintiffs lack standing to enjoin Defendants from operating their business because, as is evident from their Complaint, they have not alleged a particularized injury from Defendants' operations, nor will Plaintiffs suffer any such injury in the future. *See Lippoldt v. Cole*, 468 F.3d 1204, 1217-18 (10th Cir. 2006) (plaintiffs lacked standing to seek injunction because they could not "demonstrate injury in fact" and only alleged "speculative future harm").[8] The remaining

---

[8] *In re Johnson* is far different from this case. There, the bankruptcy court refused to provide a debtor relief it sought if the debtor continued operating its marijuana business. *In re Johnson*, 532 B.R. 53, 58 (Bankr. W.D. Mich. 2015). Defendants are not seeking relief here. Plaintiffs are.

equitable relief they seek is another way of seeking to claw back their illegal investment and the illegal profits they claim to be entitled to. (ECF No. 155 ¶ 126.) Therefore, Plaintiffs' requested equitable relief cannot get them over the illegality hurdle.[9]

Plaintiffs also argue that the Court can award them punitive damages, which would not require a CSA violation. But "[p]unitive damages cannot stand without at least a nominal compensatory award under a tort cause of action." *Norman's Heritage Real Est. Co. v. Aetna Cas. and Sur. Co.*, 727 F.2d 911, 916 (10th Cir. 1984). For the reasons already discussed, Plaintiffs' tort causes of action fail in light of the illegality that permeates them. Plaintiffs cannot maintain their claims by invoking their request for punitive damages, which, by its very nature as a remedy, depends on viable claims.

Moreover, even if all of Plaintiffs' requested relief does not <u>require</u> a CSA violation, their claims should still be dismissed. As discussed above, Plaintiffs knowingly invested in a marijuana business with the understanding that the business' profits would inure to its benefit as a shareholder. Allowing Plaintiffs to maintain their claims in this circumstance would grant them the protections of a federal forum that they have forfeited through their illegal conduct, and, more generally, "would undermine enforcement of federal law by giving prospective investors

---

[9] Plaintiffs also contend that the illegality defense does not apply to their non-contract claims because the defense is limited to contract claims. Plaintiffs do not cite a single case expressly restricting the illegality defense to contract claims, and other courts do not limit it in that way. *E.g., J. Lilly, LLC*, 2020 WL 1855190, at *12 (marijuana illegality barred negligence claim); *Mischalski v. Ford Motor Co.*, 935 F. Supp. 203, 205 (E.D.N.Y. 1996) (widely recognized principle "that a person should not be permitted to take advantage of his or her own wrongdoing by predicating a legal or equitable claim on the person's own fraudulent, immoral or illegal conduct," although most frequently asserted as defense against enforcement of illegal contracts, "is also applicable to actions arising in tort").

increased confidence in funding marijuana businesses." *Bart Street III*, 2020 WL 1638329, at *9. This provides the Court an independent basis to dismiss Plaintiffs' claims.

For these reasons, the Court should dismiss all of Plaintiffs' claims other than the Tenth Cause of Action.

**B.     Plaintiffs' Civil RICO Claim Fails as a Matter of Law**

The only factual content in Plaintiffs' RICO claim is that Defendants engaged in racketeering by "growing selling, and distributing [] marijuana, and/or" aiding and abetting those activities. (ECF No. 155 ¶¶ 213.) The rest of the claim is pled in formulaic fashion. (*Id.*, ¶¶ 214-22.) That is why, in their Motion, Defendants framed their arguments in terms of the RICO predicate act of growing and selling marijuana. But according to Plaintiffs, their RICO claim is not "purely" based on Defendants' marijuana activities; it is also based on "Defendants' fraudulent actions that induced the payment of Plaintiffs' cash and siphoned away Clover Top's assets only to invest the same in illegal cannabis businesses." (ECF No. 177 at 36.) This is yet another echo of Plaintiffs' failed Lanham Act claim: Plaintiffs explained the actual basis for their inscrutable RICO claim for the first time in their Opposition to Defendants' Motion. But regardless of which of the three predicate acts Plaintiffs rely on, their RICO claim fails.

1.     <u>Plaintiffs' RICO Claim Based on Alleged Securities Fraud is Barred by 18 U.S.C. § 1964(c)</u>

Plaintiffs' contention that Defendants engaged in "fraudulent actions that induced the payment of Plaintiffs' cash" is just another way of saying Defendants committed securities fraud. The RICO Act expressly precludes civil claims based upon "conduct that would have been actionable as fraud in the purchase or sale of securities." 18 U.S.C. § 1964(c). Here, Kaweske's, Peterson's, and Clover Top's alleged fraudulent actions in soliciting Plaintiffs' investment are

clearly "actionable" as securities fraud, because Plaintiffs have asserted not one, but three, claims of securities fraud based on that alleged conduct. (ECF No. 155 ¶¶ 135-154.)[10] Therefore, this alleged conduct is not actionable under RICO. *See Bixler v. Foster*, 596 F.3d 751, 759-60 (10th Cir. 2010) (18 U.S.C. § 1964(c) barred plaintiffs' RICO claim premised on alleged acts of securities fraud).

        2.    <u>Plaintiffs' RICO Claim Based on Alleged Siphoning of Clover Top's Assets Fails to State Racketeering Activity and "Continuity"</u>

Plaintiffs also cannot rely on Defendants' alleged misappropriation of Clover Top's assets and interests as a RICO predicate act for two independent reasons.

First, even accepting Plaintiffs' allegations as true, this alleged conduct was, at most, tortious, not racketeering activity. Courts consistently have found that it is an abuse of the RICO statute to attempt to shoehorn an ordinary business dispute into a civil RICO cause of action. *See, e.g., Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1463 (5th Cir. 1991) ("[A]lthough Congress wrote RICO in broad, sweeping terms, it did not intend to extend RICO to every fraudulent commercial transaction . . . ."); *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992) ("[C]ivil RICO plaintiffs persist in trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions . . . RICO has not federalized every state common-law cause of action available to remedy business deals gone sour."). That is exactly what Plaintiffs are doing. They pled numerous common-law tort claims arising from a business deal they now regret, and have now, for the first time in the third iteration of their

---

[10] Plaintiffs assert these claims against Kaweske, Peterson, and Clover Top only. Plaintiffs do not allege in their Complaint that any of the Entity Defendants committed securities fraud. So even accepting Plaintiffs' allegations as true, the Entity Defendants did not engage in fraudulent actions that induced Plaintiffs' investment, despite Plaintiffs' suggestion otherwise.

Complaint, tacked on a RICO claim based on the same facts and allegations. That is improper and prohibited. (*See* ECF No. 165 at 12 (collecting cases precluding RICO claims based on torts that did not constitute RICO predicate acts).)

The "square peg in a round hole" dynamic that courts have observed is on full display here, with Plaintiffs trying to recast their tort allegations in terms of violations of 18 U.S.C. § 1962. Their common refrain is that Defendants took Plaintiffs' investment and the investments of others and used them to establish independent enterprises. On that basis, Plaintiffs argue Defendants violated 18 U.S.C. § 1962(a), (c), and (d) (the last of which is conspiracy to violate 18 U.S.C. § 1962). But there is no allegation in the Complaint that the money invested by Plaintiffs and Clover Top's other shareholders derived from a pattern of racketeering activity, as required to establish a violation of Section 1962(a). Nor is there any allegation that any Defendant established the Entity Defendants through a pattern of racketeering activity—for example, through mail or wire fraud, or through any of the other activities listed in 18 U.S.C. § 1961—as required to establish a violation of Section 1962(c).[11] Under Plaintiffs' allegations, Defendants took Plaintiffs' investment and used it for their own purposes. (ECF No. 155 ¶ 2.) That is not a violation of Section 1962.[12]

---

[11] Because Plaintiffs have failed to allege a sufficient RICO claim under Section 1962(a) or (c), their subsection (d) conspiracy claim necessarily fails, as well. *See Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006) (collecting cases and dismissing RICO conspiracy claim).

[12] This case contrasts sharply with *Schacht*, which Plaintiffs rely on, where the defendants allegedly committed mail fraud by mailing fraudulent financial statements about the company, which allowed them to generate income for themselves, which they then used in the operation of their business. *Schacht v. Brown,* 711 F.2d 1343, 1350-51 (7th Cir. 1983). Those allegations adequately pled violations of Section 1962(a) and (c) under Rule 12 (pre-*Twombly* and *Iqbal*).

Second, even if Plaintiffs could plausibly establish a Section 1962 violation, they have failed to show Defendants' violation is continuing. A RICO claim consists of four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Bixler*, 596 F.3d at 760-61. To satisfy RICO's pattern requirement, a plaintiff must allege "not only that the defendants had committed two or more predicate acts, but also that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *Id.* at 761. "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. *Id.* (quoting *H.J. Inc. v. Nw Bell Tel. Co.*, 492 U.S. 229, 241 (1989)). When Congress said predicate acts "must demonstrate 'continuity' before they may form a RICO pattern, it expressed an intent that RICO reach activities that amount to or threaten long-term criminal activity." *H.J. Inc.*, 492 U.S. at 243 n.4.

To vindicate RICO's "continuity" requirement, the Tenth Circuit has established a rule: "A scheme to achieve a single discrete objective does not in and of itself create a threat of ongoing activity, even when that goal is pursued by multiple illegal acts, because the scheme ends when the purpose is accomplished." *Torwest DBC, Inc. v. Dick*, 810 F.2d 925, 928–29 (10th Cir. 1987). *Bixler* is particularly instructive. There, the plaintiffs were shareholders of METCO, a uranium mining company. 596 F.3d at 755. They alleged that defendants, METCO's directors and majority shareholders, (1) transferred METCO's uranium mining rights to UKL, a company defendants were also directors of; (2) caused UKL to renege on its agreement to pay METCO $6.5 million and UKL stock as consideration for METCO's mining rights; and (3) caused UKL to merge with another company, Monaro, for the purpose of shielding the mining rights from

recovery by METCO. *Id.* As a result, plaintiffs argued, defendants enriched themselves and "rendered [plaintiffs'] METCO investment virtually worthless." *Id.* The Tenth Circuit found that these allegations failed RICO's "continuity" requirement because they amounted to "a single scheme to accomplish the discrete goal of transferring METCO's uranium mining interests to another corporation (UKL, which then allegedly transferred them to Monaro)." *Id.* at 761. Therefore, the Court affirmed the dismissal of Plaintiffs' RICO claim. *Id.*

The result should be the same here because, as Plaintiffs admit, the purpose of Defendants' alleged scheme has already been accomplished:

> Sensoria has alleged that the Defendants harmed Sensoria by using Sensoria's investment to fund illegal operations, and that they then used the illicit gains from those operations to create new entities in which Sensoria had no ownership interest. In this way, the Defendants left Sensoria standing with what they described as a worthless investment.

(ECF No. 177 at 44.) And there are no allegations in the Complaint even suggesting that this alleged misconduct is continuing. In the absence of a continuing pattern or threat, Plaintiffs cannot maintain a RICO claim against Defendants based on Defendants' alleged the misappropriation of Clover Top's assets. *See Bixler*, 596 F.3d at 761.[13] RICO was not intended

---

[13] *See also Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1556 (10th Cir. 1992) (dismissing plaintiffs' RICO claim for failing "continuity" requirement, because plaintiffs alleged "what is actually a closed-ended series of predicate acts constituting a single scheme (the transfer of debt) to accomplish a discrete goal (the merger) directed at a finite group of individuals (CNB shareholders) with no potential to extend to other persons or entities") (internal quotations omitted); *Kriston v. Peroulis*, 2010 WL 1268089, at *11-*12 (D. Colo. Feb. 19, 2010) (Hegarty, J.) ("Plaintiff complains about a series of discrete acts intended against one individual for one purpose, that is, the repayment of the monies loaned to Plaintiff by Defendant Tony Peroulis. As stated above, such claims could refer to a common scheme, but fail to describe a threat of continuing criminal activity as required by RICO.").

to address isolated and discrete business torts like the ones alleged in the Complaint. *Id.*[14]

3.      Plaintiffs' RICO Claim Based on Defendants' Marijuana Activities Fails to State a Claim and is Barred by *In Pari Delicto*

The only continuing pattern of racketeering activity alleged in the Complaint is that Defendants grow and sell marijuana. In their Opposition, Plaintiffs do not even attempt to make the required causal link between those activities and Plaintiffs' alleged injuries. Instead, Plaintiffs' Opposition makes clear that they claim injury based on Defendants' alleged business torts:  "by using Sensoria's investment to fund an illegal business, the Defendants have deprived Sensoria of its investment and of the benefit of an equity stake in the legal business Sensoria sought to invest in." (ECF No. 177 at 45.) As fully explained in Defendants' Motion, the cause of Plaintiffs' asserted harms was a set of actions entirely distinct from Defendants' alleged RICO violation of growing and selling marijuana, which has had no effect on Plaintiffs whatsoever. Therefore, Plaintiffs' RICO claim fails for lack of causation to the extent it is premised on marijuana activities as the RICO predicate. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006) (affirming dismissal of RICO claim because "[t]he cause of [the] asserted harms" was "a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)").

In addition, this theory of RICO liability is barred by the *in pari delicto* doctrine.[15] Plaintiffs frame their entire argument in terms of the test articulated in *Bateman*, but *Bateman*

---

[14] This conclusion applies equally to Plaintiffs' RICO claim to the extent it is premised on securities fraud.

[15] As it pertains to Plaintiffs' other deficient theories of RICO liability (securities fraud and business torts), Defendants agree that Plaintiffs were not active participants in the alleged misconduct, and therefore *in pari delicto* is not a barrier to those theories.

was a securities fraud case and did not involve a civil RICO claim. *Inge*, from the Tenth Circuit

in 2018, did involve a civil RICO claim, and framed the test not in terms of whether the

plaintiffs' fault equaled the defendant's, but on whether the plaintiffs were active participants in

the alleged RICO violation. *Inge v. McClelland*, 725 F. App'x 634, 639 (10th Cir. 2018) (citing

*Rogers v. McDorman*, 521 F.3d 381, 389 (5th Cir. 2008)). This variation on the traditional *in

pari delicto* test makes sense in the RICO context, because RICO was not intended to facilitate

"a wealth transfer among similarly situated conspirators." *Official Comm. of Unsecured

Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1155 (11th Cir. 2006).

Under the *Inge* test, Plaintiffs' own allegations make clear that they were active

participants in Defendants' marijuana enterprise. Indeed, Plaintiffs were the "genesis" of Clover

Top (ECF No. 177 at 44); that is, the first outside investors and shareholders. (ECF No. 155 ¶

42.) Plaintiffs also allege that they received regular updates on Clover Top's marijuana sales, and

that Morton personally met with Kaweske and Peterson to discuss the business. (*Id.*, ¶¶ 55, 57,

60, 66, 68.) Plaintiffs attempt to distinguish themselves from the *Inge* plaintiffs, who suffered

harm "through their own admitted willful participation in the scheme." (ECF No. 177 at 39.) But

Plaintiffs <u>owned</u> part of the alleged "scheme" here, they admittedly expected to profit from their

involvement in the scheme, and their harm consists of not profiting from the scheme as they

expected. This admitted willful participation satisfies the first prong of the *Inge* test.

The second prong of the *Inge* test is also satisfied here—RICO's policy goals would not

be offended or frustrated if the Court dismisses Plaintiffs' RICO claim to the extent it is

premised on marijuana activities. (*See* ECF No. 165 at 8-9 (collecting authorities).) Indeed,

Plaintiffs do not even marshal a defense of this RICO theory. They focus exclusively on

Defendants' business torts and say that such conduct has macro- and micro-economic harms that RICO was intended to prevent. (ECF No. 177 at 40.) Those alleged independent wrongs are not the basis for applying *in pari delicto*; Plaintiffs' knowing participation in a marijuana enterprise is. It makes no sense that Congress enacted RICO to punish (and thereby deter) racketeering activity and simultaneously granted a cause of action to participants in racketeering activity to recover "the benefit" or profits flowing from that activity. (ECF No. 155 ¶ 42.) Countenancing such a wealth transfer "would, perversely, reward conspirators with treble damages—and that hardly seems to further RICO's deterrence goals." *Rogers*, 521 F.3d at 391.

Plaintiffs maintain that their RICO claim is not just about a co-conspirator wealth transfer, but is also targeted at enjoining Defendants from operating their marijuana business in violation of the CSA. "This remedy," they say, "is entirely consistent with Congress's purpose in enacting the RICO statute." (ECF No. 177 at 41.) The problem with Plaintiffs' argument is that "injunctive relief is not available to a private party in a civil RICO action." *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1084 (9th Cir. 1986). Although the Tenth Circuit has not definitively ruled on this issue, it has stated "there is considerable doubt that equitable relief is available to private RICO litigants under any circumstances." *Switzer v. Coan*, 261 F.3d 985, 992 n.14 (10th Cir. 2001).[16] And as discussed above, Plaintiffs lack standing to seek this form of

---

[16] This Circuit's serious doubts align with the doubts expressed by most other Circuits. *See, e.g., Ganey v. Raffone*, 91 F.3d 143, n.6 (6th Cir. 1996) (Table) (noting "it is questionable" whether private litigants are entitled to injunctive relief and that "we find the *Wollersheim* analysis persuasive"); *In re Fredeman Litig.*, 843 F.2d 821, 830 (5th Cir. 1988) (finding "the *Wollersheim* opinion persuasive" but declining to rule on the issue); *Trane Co. v. O'Connor Sec.*, 718 F.2d 26, 28 (2d Cir. 1983) (expressing "serious doubt" as to the "propriety of private party injunctive relief" under RICO); *Dan River Inc. v. Icahn*, 701 F.2d 278, 290 (4th Cir. 1983) (noting "substantial doubt" as to the availability of equitable relief for private parties).

injunctive relief. Plaintiffs' attempt to cast themselves in the role of private CSA enforcers is foreclosed by both RICO and Article III. That leaves them with co-conspirator wealth transfer relief, which is contrary to RICO.

For these reasons, *in pari delicto* bars Plaintiffs' RICO claim to the extent it is premised on Defendants' marijuana activities.

4.   Plaintiffs Have Not Alleged a Cognizable Property Interest Under RICO

Regardless of the predicate act involved, Plaintiffs' RICO claim also fails for lack of a cognizable property interest under RICO. As discussed, whether they knew marijuana is illegal under federal law or not, Plaintiffs knowingly invested and owned interests in a marijuana business. (ECF No. 177 at 45.) So when they allege Defendants' RICO violation(s) injured their "business or property" for RICO purposes, they are necessarily referring to property interests in an enterprise that is illegal under federal law and is, by definition, "racketeering activity" under RICO. "It was not the Congress' purpose in enacting RICO to provide civil remedies for one conspirator against another." *Ross v. Bolton*, No. 83 CIV. 8244 (WK), 1991 WL 285619, at *3 (S.D.N.Y. Dec. 30, 1991). In the absence of a legitimate property interest, Plaintiffs cannot maintain their RICO claim. *See id.* ("With respect to the RICO claims, any injury which Ross can claim to have suffered from the RICO conspiracy alleged against Bolton arose out of the criminal conduct in which Ross himself engaged. . . . We therefore dismiss these claims."); *Doe v. Roe*, 958 F.2d 763, 768 (7th Cir. 1992) (discussed in Defendants' Motion).

**C.    Plaintiffs' Complaint Should be Dismissed With Prejudice**

Plaintiffs have now had three opportunities to state valid claims. Each time, whether in response to Defendants' original motion to dismiss or to the Court's order, Plaintiffs have made

purely cosmetic changes—their current Complaint is a "cleaned-up pleading" (ECF No. 177 at

3)—while exploring undeveloped (and deficient) federal statutory claims under the Lanham Act

and RICO. (ECF No. 177 at 3.) It is clear at this point, more than a year after Plaintiffs filed their

original complaint, that Plaintiffs cannot get past Rule 12. Therefore, the Court's dismissal of

Plaintiffs' claims should be with prejudice. *See Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172,

1189 (10th Cir. 2012) ("Dismissal with prejudice is appropriate where the complaint fails to state

a claim and granting leave to amend would be futile.").

<u>**CONCLUSION**</u>

For the reasons set forth herein and in their Motion, Kaweske and the Entity Defendants

respectfully request that the Court dismiss with prejudice Plaintiffs' Second Amended Complaint

as to the claims asserted against Kaweske and the Entity Defendants.

Dated:  April 30, 2021.                    Respectfully submitted,


                                           *s/ Thomas A. Olsen*
                                           Tamera D. Westerberg
                                           Thomas A. Olsen
                                           Wheeler Trigg O'Donnell LLP
                                           370 Seventeenth Street, Suite 4500
                                           Denver, CO 80202
                                           Telephone:   303.244.1800
                                           Facsimile:    303.244.1879
                                           Email:   westerberg@wtotrial.com
                                                    olsen@wtotrial.com

                                           Attorneys for Defendants John Kaweske, JW
                                           Colorado, LLC, JW Trinidad, LLC, JW
                                           Ordway, LLC, MMJ 95, LLC, AJC Industries,
                                           LLC, Lifestream Holdings, LLC, Sunlife AG,
                                           LLC, Durango Management, LLC, Ordway
                                           Farms, LLC, and TweedLeaf, LLC (a Colorado
                                           LLC)

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on April 30, 2021, I electronically filed the foregoing **JOHN KAWESKE AND THE ENTITY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Stephen K. Christiansen**
  steve@skclawfirm.com, jen@skclawfirm.com

- **Jeffrey B. Klaus**
  jbk@deisch-marion.com

- **Timothy F. Marion**
  tim_marion@deisch-marion.com, barb_dye@deisch-marion.com

- **Matthew A. Steward**
  mas@clydesnow.com

- **Shaunda L. McNeill**
  slm@clydesnow.com

Notification of this filing is also being sent to Defendant Christopher S. Peterson via email at chris@blinghouse.com.

*s/ Kelly H. Schulte*