UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00942-MEH

SENSORIA, LLC, directly on its own behalf and derivatively on behalf
of CLOVER TOP HOLDINGS, INC., a Delaware corporation;
GORDON MORTON; ROGER SMITH; ROBIN SMITH; DENNIS
GRIMMER; LAURA GRIMMER; GREENHOUSE 5, LLC; AARON
GARRITY; GARRETT SCHIFFMAN; LANCE SCHIFFMAN;
KENNETH D. HOUSE; MARC LESSER,

        Plaintiffs,

v.

JOHN D. KAWESKE; CHRISTOPHER S. PETERSON;
CLOVER TOP HOLDINGS, INC., a Delaware corporation;
CLOVER TOP HOLDINGS, a Colorado corporation;
AJC INDUSTRIES, LLC;
DURANGO MANAGEMENT, LLC;
SUNLIFE AG, LLC;
MMJ 95, LLC;
TWEEDLEAF LLC, a Colorado limited liability company;
TWEEDLEAF, LLC, a Delaware limited liability company;
LIFESTREAM HOLDINGS LLC;
ORDWAY FARMS LLC;
NORTH STAR HOLDINGS aka NORTH STAR HOLDINGS, INC.;
MANUEL WELBY EVANGELISTA aka WELBY EVANGELISTA;
DJDW, LLC;
JW COLORADO, LLC;
JW ORDWAY, LLC;
JW TRINIDAD, LLC;
BRIAN TANNENBAUM;
TANNENBAUM & TROST, LLC fka TANNENBAUM, TROST &
BURK, LLC; and
DOES 1-100,

        Defendants.

---

## JOHN KAWESKE AND THE ENTITY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT

## INTRODUCTION

In dismissing most of Plaintiffs' Second Amended Complaint, the Court emphasized that "[k]ey aspects of this lawsuit concern activities that represent either actual ongoing CSA violations (by Defendants) or the attempt to recover the investment in an enterprise (Clover Top Holdings, Inc.) whose activities implicate the CSA. **Marijuana is not an indirect or tangential aspect of the dispute. It lies at the heart of the business and thus the lawsuit**." (ECF No. 200 at 17-18 (emphasis added).) Despite the Court's clear mandate to Plaintiffs to reframe their claims in a manner that does not implicate the CSA, Plaintiffs' Third Amended Complaint is déjà vu all over again. They are still seeking profits from, and ownership interests in, marijuana businesses that are illegal under federal law—relief that this Court has said, not once but twice, it cannot give. And as with their prior attempts to amend, Plaintiffs try to obfuscate the illegal nature of their investment and the illegal nature of Clover Top's business—this time through digressive and irrelevant explanations of "marihuana" under the CSA and the potential for obtaining permission from the FDA and DEA to manufacture and distribute controlled substances for research purposes. Despite those efforts, the Third Amended Complaint makes plain that marijuana continues to lie at the heart of the lawsuit, that Plaintiffs are seeking relief that squarely implicates the CSA, and that there is accordingly "no form of redress that [the Court] may provide." (*Id.* at 18.)

Plaintiffs also try to escalate again by adding 10 new plaintiffs—all of them marijuana investors like Sensoria and Gordon Morton—and various new RICO claims against Kaweske. These claims should be dismissed for various independent reasons. First, Plaintiffs' RICO claims all fail because Plaintiffs have not pled injury to a cognizable business or property interest; the

only injury they plausibly plead is to their interest in racketeering activity, which, if recognized, would turn RICO on its head. Second, the two RICO claims Plaintiffs bring individually are premised on harm to Clover Top, meaning they are actually derivative claims Plaintiffs lack standing to bring directly on their own behalf. Third, Plaintiffs have not pled a plausible theory of causation supporting their RICO claim premised on Kaweske's marijuana activities. Finally, their RICO claims based on Defendants' alleged conversion of their investment and Clover Top's assets and interests fail because they are each actionable as securities fraud (and therefore cannot be the premise of a RICO claim under 18 U.S.C. § 1964(c)), and because they involve a single, completed scheme (and therefore lack the continuing threat of criminal activity that RICO requires). For these reasons, Plaintiffs' RICO claims should be dismissed entirely.

## ARGUMENT

### I. ILLEGALITY PREVENTS PLAINTIFFS FROM OBTAINING THE RELIEF THEY SEEK

At this point, it is beyond question that the illegality defense is plain from the face of Plaintiffs' Third Amended Complaint. Plaintiffs' implausible attempts to cast themselves as unknowing, passive investors notwithstanding, they invested in Clover Top knowing that its purpose was to grow and sell marijuana, they knew Clover Top actually engaged in those illegal activities, and they hoped to profit from those illegal activities. (ECF No. 206, ¶¶ 37-43, 45-47, 52, 73, 75, 78, 84, 86.) The central issue, given this backdrop, is whether the Court can grant Plaintiffs their requested relief in a way that does not implicate the CSA.

The Court has already made clear that it "may not vindicate equity in or award profits from a business that grows, processes, and sells marijuana." (ECF No. 200 at 17 (citing cases).) Yet that is precisely the relief Plaintiffs continue to seek. Plaintiffs still seek an order granting

them an ownership interest in, and title to the assets of, the Entity Defendants, which are illegal marijuana enterprises (ECF No. 206, ¶ 146); "consequential damages comprising their share of profits to be earned by all Kaweske-related entities" (*id.*, ¶ 188, 194); damages for Defendants' alleged corporate waste, conversion, and civil theft of Clover Top's assets, which were allegedly put to use in competing illegal marijuana businesses (*id.* ¶¶ 204-05, 212-13, 215-17); avoidance of purportedly fraudulent transfers of those assets to competing illegal marijuana businesses, together with an attachment or other provisional remedy against the property of illegal marijuana businesses (*id.* ¶¶ 225); and restitution from, and a constructive trust on, competing illegal marijuana businesses (*id.* ¶¶ 238-40). As with their prior complaints, Plaintiffs are seeking forms of relief that implicate the CSA, which the Court cannot grant.

Plaintiffs try unsuccessfully to avoid this result in several ways. First, they contend that the Third Amended Complaint should not be construed as seeking relief that involves Defendants' marijuana activities; instead, they are only seeking recovery from business activities, property, and other interests "independent of illegal activities associated with marijuana." (*Id.*, ¶ 137.) But as the Court already found, even Defendants' legal interests in buildings and land are unlawful and subject to criminal forfeiture because "they are being used for marijuana." (ECF No. 200 at 17.) So Plaintiffs cannot avoid the illegality defense by distinguishing between Defendants' "legal" assets and interests and the clearly illegal income streams, assets, and interests of the enterprise—federal law forecloses that distinction. In reality, despite Plaintiffs' paragraph 137, Plaintiffs continue to seek relief that would be paid from asset sources that are wholly dependent on marijuana. That is impermissible relief and warrants dismissal of their claims for a third time. (*See* ECF No. 150 at 13 (dismissing plaintiffs' claims

because Court could not understand how relief could be fashioned that would be paid from an asset source independent of marijuana); ECF No. 200 at 18 (same).)[1]

Plaintiffs also try to avoid the illegality bar by claiming that "the line between legal and illegal cannabis is not clear cut." (ECF No. 206, ¶ 44.) This is a bright red herring. It's true that the CSA authorizes the use of marijuana in strictly controlled research studies that have been approved by the FDA, 21 U.S.C. § 823(f), but Plaintiffs do not allege that Defendants are manufacturing marijuana for an FDA study.[2] It's also true that the FDA has approved a handful of pharmaceutical drugs derived from cannabis (ECF No. 206, ¶ 44), but Plaintiffs do not allege that Defendants are manufacturing those drugs. In other words, it makes no difference that "a controlled substance like marijuana could <u>conceivably</u> be used in a commercial enterprise" consistent with federal law (ECF No. 206, ¶ 44 (emphasis added)); the relevant question is whether Defendants here are <u>actually</u> conducting their marijuana business in compliance with federal law, such that there is a legal income stream from which Plaintiffs can recover. The Third Amended Complaint, which is replete with references to retail marijuana dispensaries, and even accuses Defendants of engaging in racketeering activity through their manufacture and distribution of marijuana, makes clear that they are not. (ECF No. 206, ¶¶ 73, 75, 84, 97, 109, 110, 133, 242, 247, 250.) They are instead manufacturing and distributing marijuana in violation

---

[1] *Accord Polk v. Gontmakher*, No. 2:18-CV-01434-RAJ, 2020 WL 2572536, at *2 (W.D. Wash. May 21, 2020) ("[Plaintiff's] claim that his requested relief would not require a violation of the CSA defies logic. . . . He is demanding the future profits of a business that produces and processes marijuana in violation of federal law. How does [plaintiff] anticipate [the marijuana business] will generate these future profits?").

[2] Plaintiffs can only muster an allegation that North Star submitted research license <u>applications</u> to the DEA. (ECF No. 206, ¶ 44.) That is a far cry from North Star actually manufacturing marijuana with the DEA's approval.

of the CSA. *See* 21 U.S.C. §§ 841(a)(1), 844(a); 18 U.S.C. § 2(a).[3] What little ambiguity or nuance may exist under federal marijuana law is of no aid to Plaintiffs here. They are seeking to vindicate their ownership interests in, and their claimed right to the profits of, an illegal marijuana enterprise. That is squarely foreclosed by the Court's prior rulings.

In its prior ruling, the Court said that although illegality barred much of Plaintiffs' requested relief, two forms of relief remain available to them:  an accounting, and rescission of their purchase of Clover Top shares, together with a return of their principal investment. (ECF No. 200 at 18-19.) But given the illegality issues permeating the Third Amended Complaint, these forms of relief are foreclosed, as well.

An equitable accounting is an "extraordinary remedy" that may be ordered when the plaintiff is unable to determine how much, if any, is owed to him from another. *Andrikopoulos v. Broadmoor Mgmt. Co., Inc.*, 670 P.2d 435, 440 (Colo. App. 1983). Here, Plaintiffs claim they are entitled to an accounting because they are "unable to determine how much, if any, money is due to [them] from defendants in excess of the $700,000 plus interest [they] invested in Clover Top." (ECF No. 206, ¶ 154.) This runs headlong into the illegality issue: they want to know the amount of illegal marijuana profits they are entitled to, which the Court has already ruled they cannot recover as a matter of law. (ECF No. 200 at 18.) It is true that "the act of *accounting* for

---

[3] Plaintiffs are also incorrect in insinuating that Congress, in enacting the CSA, recognized that marijuana has "a useful and legitimate medical purpose and [is] necessary to maintain the health and general welfare of the American people." (ECF No. 206, ¶ 44.) In fact, that congressional finding only applies to those controlled substances listed in Schedules II through V of the CSA. *Gonzales v. Raich*, 545 U.S. 1, 24 (2005) (the CSA's "regulatory scheme is designed to foster the beneficial use of those medications, to prevent their misuse, and to prohibit entirely the possession or use of substances listed in Schedule I, except as a part of a strictly controlled research project"). For fifty years, Congress has classified marijuana as a Schedule I drug. *Id.*

[Plaintiffs'] financial benefit does not directly implicate the CSA in the same way" as actually "awarding any financial benefit from marijuana" (*id.*), but given that Plaintiffs are legally entitled to $0 in illegal marijuana profits, they are easily able to (and the Third Amended Complaint does) calculate the amount they claim to be owed: $700,000, representing their cumulative principal investment. Because that amount is a sum certain, the extraordinary remedy of accounting is not available to them. *See Andrikopoulos*, 670 P.2d at 440; *Macey v. Archdiocese of Detroit Priests' Pension Plan, Inc.*, 2015 WL 1214589, at *2 (Mich. Ct. App. Mar. 17, 2015) ("While plaintiffs describe this action as one seeking an equitable accounting, in actuality it is not. There is no dispute regarding what amount is owed to plaintiffs . . . ."); *White v. Mid-Continent Invs., Inc.*, 789 S.W.2d 34, 40-41 (Mo. Ct. App. 1990) (dismissing plaintiff's accounting claim because "no doubt exists as to the amount of [her] debt").

The remedy of rescission is also unavailable because of illegality. Plaintiffs' investment in Clover Top was illegal under federal law. *See* 21 U.S.C. §§ 853, 881; *In re Malul*, 614 B.R. 699, 711 (Bankr. D. Colo. 2020) (finding it was illegal for marijuana investor to execute Subscription Agreement, own interest in marijuana business, and receive distributions from marijuana business on account of that interest). Allowing rescission in this circumstance would not just endorse their illegal activity; it would affirmatively provide redress for it. That, in turn, "would undermine enforcement of federal law by giving prospective investors increased confidence in funding marijuana businesses." *Bart St. III v. ACC Enterprises, LLC*, No. 217CV00083GMNVCF, 2020 WL 1638329, at *9 (D. Nev. Apr. 1, 2020) (dismissing marijuana

investor's unjust enrichment claim under unclean hands doctrine).[4] It is true, as the Court recognized, that courts balance the pros and cons of enforcing an illegal agreement, and that unjust enrichment to the defendant factors into the analysis, but in *Kush, Inc.*, the plaintiff's requested relief—ordering the defendant to "perform ministerial tasks"—did not "involve illegal conduct under the law." 2020 WL 8371452, at *4 (D. Nev. June 19, 2020). As a consequence, the balance between illegality and unjust enrichment did not tip in the defendant's favor. Here, in stark contrast, Plaintiffs' rescission claim necessarily involves illegal conduct, as their investment would be returned from illegal income streams generated by Defendants' marijuana business. In this circumstance, the balance tips decidedly in favor of dismissing Plaintiffs' rescission claim on illegality grounds.

For these reasons, illegality bars all of the relief Plaintiffs seek through their Third Amended Complaint.

## II.    PLAINTIFFS' RICO CLAIMS FAIL AS A MATTER OF LAW

Plaintiffs' RICO claims fare no better. To maintain a RICO claim, Plaintiffs must plausibly plead: (1) that Defendants violated 18 U.S.C. § 1962; (2) that Plaintiffs' business or property was injured; and (3) that Defendants' violation is the cause of that injury. *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 881 (10th Cir. 2017). Plaintiffs' Second Amended Complaint asserted one RICO claim, which the Court dismissed because it "[fell] short of the very specific

---

[4] *Accord Hemphill v. Liberty Mut. Ins. Co.*, No. CV 10-861 LH/RHS, 2013 WL 12123984, at *2-3 (D.N.M. Mar. 28, 2013) (granting summary judgment to defendant on ground that federal court could not require insurance company to pay plaintiff's future medical expenses for medical marijuana use because to do so would violate federal law and policy); *Tracy v. USAA Cas. Ins. Co.*, No. CIV. 11-00487 LEK, 2012 WL 928186, at *13 (D. Haw. Mar. 16, 2012) (declining to order home insurer to pay for insured's claim for theft of marijuana plants because "Plaintiff's possession and cultivation of marijuana, even for State-authorized medical use, clearly violates federal law").

elements that define a RICO claim." (ECF No. 200 at 24.) Instead of curing the defects the Court

identified, Plaintiffs now assert four separate claims under RICO. Each claim is premised on

different alleged conduct—growing marijuana (18th Cause of Action), defrauding Clover Top's

investors (19th), defrauding Clover Top of the investments it received (20th), and defrauding

Clover Top of its nonmonetary assets and interests (21st). Regardless of the conduct alleged,

Plaintiffs fail to state essential elements of a RICO claim.

### A.      Plaintiffs Have Failed to Allege a Cognizable Business or Property Interest Under RICO

All four of Plaintiffs' RICO claims fail because "RICO does not provide redress for

injury to a marijuana business" (ECF No. 199 at 6), or, more generally, "for injury to a property

interest that is contrary to public policy or the law." (ECF No. 200 at 23 (citing *Doe v. Roe*, 958

F.2d 763, 768 (7th Cir. 1992).) Consistent with that rule, Plaintiffs cannot use RICO to seek

damages for injuries to their interests in Clover Top, which is an illegal marijuana business:

> The business or property interests Sensoria seeks to vindicate are in a business
> that would grow, process, and sell marijuana. Even if Sensoria did not intend to
> invest in an illegal business, that was the nature of its operations. Sensoria seeks
> redress for those aspects of Clover Top Holdings, Inc.'s activities that themselves
> are unlawful.

(*Id.*) By the same logic, Plaintiffs cannot seek derivative relief on Clover Top's behalf for

injuries Clover Top allegedly suffered. In the absence of a business or property interest that

Congress intended to protect by enacting RICO, Plaintiffs cannot maintain any of their RICO

claims.[5]

---

[5] To the extent Plaintiffs are suggesting that RICO affords protection to their interests in Clover
Top and Clover Top's own interests because marijuana is legal under Colorado law, they are
mistaken. Although state law determines whether a particular interest amounts to property in
most cases, federal courts "are not required to adopt a state interpretation of 'business or

Plaintiffs' Third Amended Complaint tries to avoid the implication of the Court's prior order by recasting their property interests in an illegal marijuana business as "valuable choses in action" and "rights to legal relief for the violations of their rights." (ECF No. 206, ¶ 251.) These purported interests are too conclusory and vague to support a plausible RICO claim. Under a generous reading of these new allegations, Plaintiffs appear to be claiming as cognizable property interests the very claims asserted in this action, thus impliedly arguing that the Court's dismissal of Plaintiffs' claims on the basis of illegality satisfies the property interest element of their RICO claims. This logic is circular. It is also unavailing, as the illegality of Plaintiffs' requested relief requires dismissal of both Plaintiffs' common law claims and their RICO claims.

Even more importantly, the Complaint makes clear that these purported rights flow from Plaintiffs' "legal rights (in their personal capacity and in their capacity as shareholders) in Clover Top" (*id.*)—in other words, from their interests in a business that grows, processes, and sells marijuana. Plaintiffs' semantics aside, they are fundamentally asking the Court to employ a federal statute intended to thwart criminal activity to vindicate their interest in criminal activity. That is patently absurd and not what Congress intended when it enacted RICO. All of Plaintiffs' RICO claims fail for this reason.

---

property' if it would contravene Congress' intent in enacting RICO." *Doe*, 958 F.2d at 768; *accord Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1234 (D. Colo. 2010) ("[E]ven though courts may look to state law to determine, for RICO purposes, whether a property interest exists, it does not follow that any injury for which a plaintiff might assert a state law claim is necessarily sufficient to establish a claim under RICO."). Here, even if Colorado law recognizes Plaintiffs' and Clover Top's interests, recognizing them as "business or property" for RICO purposes would contravene Congress' manifest intent in enacting RICO, which itself defines the cultivation and distribution of marijuana as "racketeering activity." *Safe Streets Alliance*, 859 F.3d at 882 (citing 18 U.S.C. § 1961(1)).

**B.      Plaintiffs' Eighteenth and Nineteenth Causes of Action Fail Because They are Derivative in Nature**

Plaintiffs' eighteenth and nineteenth causes of action are RICO claims against Kaweske that Plaintiffs assert directly on their own behalf. Plaintiffs lack standing to bring these claims because they are derivative in nature. It is well-established that "corporate shareholders do not have standing to sue under the civil RICO statute for alleged injuries to the corporation." *Bixler v. Foster*, 596 F.3d 751, 758-59 (10th Cir. 2010) (collecting cases). Here, Plaintiffs' eighteenth cause of action specifically alleges that Kaweske "deprived Plaintiffs of their legal rights (in their personal capacity and in their capacity as shareholders) in Clover Top" (ECF No. 206, ¶ 251), and their nineteenth cause of action is premised on injuries to their investment in Clover Top (*id.*, ¶¶ 259-71). Based on the well-pled allegations in the Complaint (as opposed to Plaintiffs' conclusory, vague, and circular reliance on their "valuable choses in action" or other undefined business or property interests), the gravamen of these claims is that Kaweske's conduct has rendered their Clover Top stock valueless. "Such an injury is not direct and personal for RICO purposes but is, rather, an injury to the corporation." *Bixler*, 596 F.3d at 757. Therefore, Plaintiffs do not have standing to maintain their eighteenth and nineteenth causes of action.

**C.      Plaintiffs' Eighteenth Cause of Action Fails for Lack of Plausible Causation**

Plaintiffs' eighteenth cause of action also lacks a plausible theory of causation. RICO's causation element requires Plaintiffs to plausibly allege that a RICO predicate act not only was a "but for" cause of their injury, but was the proximate cause as well. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006). Although Plaintiffs claim that Kaweske's marijuana activities caused injury to Plaintiffs' business or property (ECF No. 206, ¶ 251), the Court need not accept that allegation as true. *See Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 14 (2010). And

Plaintiffs' Third Amended Complaint makes clear that they have not and cannot plausibly plead either form of causation.

To establish "but for" causation, Plaintiffs must plausibly show that their injuries would not have occurred but for Kaweske's marijuana activities. *RWB Servs., LLC v. Hartford Computer Grp., Inc.*, 539 F.3d 681, 686-687 (7th Cir. 2008). In *Safe Streets Alliance*, for example, plaintiff landowners asserted a civil RICO claim against defendants, who ran a marijuana grow operation on adjoining property, alleging that the stench from and presence of the illegal operation harmed their enjoyment of the property and its resale value. 859 F.3d at 886-87. The Tenth Circuit held that plaintiffs plausibly alleged "but for" causation—if the defendants were not growing marijuana next door (a RICO violation), plaintiffs' claimed injuries would not have occurred. *Id.* at 886-88. Here, by contrast, there is no causal link whatsoever between Kaweske's alleged RICO violations—cultivating and distributing marijuana (ECF No. 206, ¶ 242)—and Plaintiffs' alleged injuries to their Clover Top stock, or to their "valuable choses in action" and "rights to legal relief for the violations of their rights" as Clover Top shareholders. To the extent Plaintiffs are claiming that they cannot get legal relief in these circumstances, that is a consequence of federal law, not of Kaweske's marijuana activities.

Plaintiffs also cannot establish proximate causation under this theory. "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led <u>directly</u> to the plaintiff's injuries"; indirect injuries do not suffice. *Anza*, 547 U.S. at 461 (emphasis added). In *Anza*, the defendants allegedly defrauded New York's tax authority by committing mail and wire fraud, in violation of RICO. *Id.* at 457–59. However, the plaintiff sought to recover for its lost sales, the result of the defendants' distinct scheme of

artificially lowering prices by not charging customers required sales taxes. *Id.* at 458. The

Supreme Court held that plaintiff's RICO claims failed to meet the proximate cause element

because "[t]he cause of [the] asserted harms" was "a set of actions (offering lower prices)

entirely distinct from the alleged RICO violation (defrauding the State)." *Id.* Here, the alleged

cause of Plaintiffs' asserted harms is a set of actions (Kaweske's alleged conversion of Clover

Top's assets, which rendered Plaintiffs' Clover Top stock valueless; and Defendants asserting

the illegality defense, which the Court has enforced, thereby depriving Plaintiffs of purported

"choses in action") entirely distinct from Kaweske's alleged RICO violations (growing and

selling marijuana in violation of the CSA). There is no link, much less a direct one, between

Kaweske's alleged racketeering activity and Plaintiffs' alleged injuries. Therefore, as in *Anza*,

Plaintiffs' eighteenth cause of action fails for lack of plausible proximate cause. *See also Sladek*

*v. Bank of Am., NA,* No. 13-cv-03094-PAB-MEH, 2014 WL 8105181, at *8 (D. Colo. July 30,

2014) (Hegarty, J.) (dismissing plaintiff's RICO claim because alleged RICO violations did not

"directly involve the foreclosure" of her home, which was her sole alleged injury).

> **D.      Plaintiffs' Nineteenth, Twentieth, and Twenty-First Causes of Action are Barred by the PSLRA Bar and Fail for Lack of Continuity**

Plaintiffs' nineteenth, twentieth, and twenty-first causes of action all involve Kaweske's

alleged conversion of their investments and Clover Top's assets and interests. These causes of

action are (1) barred by 18 U.S.C. § 1964(c), which prohibits RICO claims based upon "conduct

that would have been actionable as fraud in the purchase or sale of securities" (the "PSLRA

Bar"); and (2) do not satisfy RICO's requirement of a continuous pattern of racketeering activity.

The PSLRA Bar "was intended not simply 'to eliminate securities fraud as a predicate

offense in a civil RICO action,' but also to prevent a plaintiff from 'plead[ing] other specified

offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud.'" *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 327 (3d Cir. 1999) (quoting H.R. Conf. Rep. No. 104-369, at 47 (1995)). Accordingly, "[c]ourts have consistently concluded that where a plaintiff alleges a 'single scheme' and any predicate act is barred under the PSLRA, the entire RICO claim is precluded." *Perkumpulan Inv. Crisis Center Dressel-WBG v. Wong*, 2014 WL 1047946, at *7 (W.D. Wash. Mar. 14, 2014) (citing cases); *see also Bixler*, 596 F.3d at 760 (PSLRA Bar applied to various forms of non-securities fraud alleged in complaint because conduct was "undertaken in connection with the purchase of a security").[6] A predicate act is subject to the PSLRA Bar if it is in furtherance of a scheme by which the RICO defendant "use[d] or employ[ed], in connection with the purchase or sale of any security," "any device, scheme, or artifice to defraud." *See* 15 U.S.C. § 78j(b). The Supreme Court has endorsed a "broad reading" of the phrase "in connection with," holding that "it is enough that the scheme to defraud and the sale of securities coincide." *S.E.C. v. Zandford*, 535 U.S. 813, 819-823 (2002). Under this standard, the Third Amended Complaint makes clear that Plaintiffs' nineteenth, twentieth, and twenty-first causes of action are based on at least one predicate act that would have been actionable as securities fraud.

---

[6] *See also, e.g., Bald Eagle Area School Dist.*, 189 F.3d at 330 (RICO claim barred where some, but not all, of the predicate acts are actionable as securities fraud, because "[a]llowing such surgical presentation of the cause of action . . . would undermine the congressional intent behind the RICO Amendment"); *Sell v. Zions First Nation Bank*, 2006 WL 322469, at *9-*11 (D. Ariz. Feb. 9, 2006) (dismissing RICO claim predicated upon mail fraud, wire fraud, and bank fraud, explaining that alleged instances of bank fraud were "but tentacles of the same octopus, sufficiently connected to securities fraud to bar their use as predicate acts").

According to the Complaint, Kaweske and Peterson "engaged in a scheme to steal, convert, or take by fraud" Plaintiffs' money through various misrepresentations and omissions about the nature of the Clover Top opportunity—primarily, that it would be the "mother ship" for all cannabis-related entities, technologies, and brands under Defendants' control, with all profits inuring to the benefit of Clover Top's shareholders. (ECF No. 206, ¶¶ 39-40, 45-47, 52, 54.) But Plaintiffs claim that was a lie, that Kaweske and Peterson actually intended to use Clover Top investor money to expand their cannabis operations and then transfer the money, assets, and interests to themselves or independent entities they owned. This purported lie is the basis for Plaintiffs' three claims of securities fraud. (*Id.*, ¶¶ 155-76.) And the conduct that Defendants allegedly engaged in furtherance of their alleged scheme—taking Plaintiffs' money under false pretenses, and stripping Clover Top of its money, assets, and other interests, in violation of 28 U.S.C. § 2314—is the basis for Plaintiffs' non-marijuana RICO claims. (*Id.*, ¶¶ 259-72, 284-98, 310-20.)  Based on these allegations, Plaintiffs are seeking to recover RICO's "bonanza of treble damages," *Bald Eagle Area School Dist.*, 189 F.3d at 327, for conduct that Congress expressly sought to remove from the statute's reach—that is, conduct "in connection with" securities fraud. *See, e.g., In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 622 (S.D. Tex. 2003) (PSLRA Bar barred RICO claim based on violation of 28 U.S.C. § 2314 because violation was "part[] of an overarching scheme and conspiracy to defraud current and prospective shareholders . . . , with all alleged acts and omissions intended to achieve the same goal, personal enrichment of Defendants at the expense of the corporation . . . ."). Plaintiffs' nineteenth, twentieth, and twenty-first causes of action are subject to the PSLRA Bar and should be dismissed on this basis.

These causes of action also fail for lack of continuity. To satisfy RICO's pattern requirement, a plaintiff must allege "not only that the defendants had committed two or more predicate acts, but also that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *Bixler*, 596 F.3d at 761. "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. *Id.* When Congress said predicate acts "must demonstrate 'continuity' before they may form a RICO pattern, it expressed an intent that RICO reach activities that amount to or threaten long-term criminal activity." *H.J. Inc. v. Nw Bell Tel. Co.*, 492 U.S. 229, 243 n.4 (1989).

To vindicate RICO's "continuity" requirement, the Tenth Circuit has established a rule: "[a] scheme to achieve a single discrete objective does not in and of itself create a threat of ongoing activity, even when that goal is pursued by multiple illegal acts, because the scheme ends when the purpose is accomplished." *Torwest DBC, Inc. v. Dick*, 810 F.2d 925, 928–29 (10th Cir. 1987). *Bixler* is particularly instructive. There, plaintiffs were shareholders of METCO, a uranium mining company. 596 F.3d at 755. They alleged that defendants, METCO's directors and majority shareholders, (1) transferred METCO's uranium mining rights to UKL, a company defendants were also directors of; (2) caused UKL to renege on its agreement to pay METCO $6.5 million and UKL stock as consideration for METCO's mining rights; and (3) caused UKL to merge with another company, Monaro, for the purpose of shielding the mining rights from recovery by METCO. *Id.* As a result, plaintiffs argued, defendants enriched themselves and "rendered [plaintiffs'] METCO investment virtually worthless." *Id.* The Tenth Circuit found that these allegations failed RICO's "continuity" requirement because they amounted to "a single

scheme to accomplish the discrete goal of transferring METCO's uranium mining interests to another corporation (UKL, which then allegedly transferred them to Monaro)." *Id.* at 761. Therefore, the Court affirmed the dismissal of Plaintiffs' RICO claim. *Id.*

The result should be the same here because, as the Court previously recognized, Plaintiffs plead "only a single scheme of asset conversion that has been completed, not an ongoing criminal enterprise." (ECF No. 200 at 22.) The Third Amended Complaint alleges the following predicate acts:  Defendants took investor money into Clover Top (ECF No. 206, ¶¶ 259-71, 284-96), took that money out of Clover Top (*id.*, ¶¶ 272, 297-98), and wrongfully transferred Clover Top's other interests and assets to themselves or independent entities (*id.*, ¶¶ 310-20). Now, according to Plaintiffs, Defendants are operating a profitable marijuana business that Plaintiffs have no stake in. (*Id.*, ¶ 110.) This is not the type of long-term, continuing criminal activity envisioned by Congress when it enacted RICO; at most, what Plaintiffs allege are business torts committed in the furtherance of a single, completed scheme, which is insufficient as a matter of law. *See Bixler*, 596 F.3d at 761.[7] In the absence of those necessary allegations, Plaintiffs' nineteenth, twentieth, and twenty-first causes of action must be dismissed.

---

[7] *See also Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1556 (10th Cir. 1992) (dismissing plaintiffs' RICO claim for failing "continuity" requirement, because plaintiffs alleged "what is actually a closed-ended series of predicate acts constituting a single scheme (the transfer of debt) to accomplish a discrete goal (the merger) directed at a finite group of individuals (CNB shareholders) with no potential to extend to other persons or entities") (internal quotations omitted); *Kriston v. Peroulis*, 2010 WL 1268089, at *12 (D. Colo. Feb. 19, 2010) (Hegarty, J.) ("Plaintiff complains about a series of discrete acts intended against one individual for one purpose, that is, the repayment of the monies loaned to Plaintiff by Defendant Tony Peroulis. As stated above, such claims could refer to a common scheme, but fail to describe a threat of continuing criminal activity as required by RICO.").

### E.      Plaintiffs Cannot Obtain Injunctive Relief Under RICO

All four of Plaintiffs' RICO claims include a request that the Court enter "appropriate orders" enjoining Defendants in various ways. (ECF No. 206, ¶¶ 252, 277, 303, 325.)  But the Court's prior order could not have been more clear:  "Sensoria does not overcome the Tenth Circuit's 'considerable doubt [whether] equitable relief is available to private litigants under any circumstances.'" (ECF No. 200 at 23 (quoting *Switzer v. Coan*, 261 F.3d 985, 992 n.14 (10th Cir. 2001).).)[8] As before, even if Plaintiffs have stated a valid RICO claim (they have not), the Court should hold that Plaintiffs are barred from seeking equitable relief thereunder.

## III.    PLAINTIFFS HAVE FAILED TO PLEAD CONTRACT CLAIMS AGAINST KAWESKE

For the first time in their Third Amended Complaint, Plaintiffs asserted two contract claims against Kaweske individually:  (1) breach of contract; and (2) breach of the covenant of good faith and fair dealing. A necessary element of both claims is that Plaintiffs and Kaweske were parties to an existing contract. *See Long v. Cordain*, 2014 COA 177, ¶ 19, 343 P.3d 1061 (stating elements of breach of contract claim); *Peace v. Parascript Mgmt., Inc.*, 59 F. Supp. 3d 1020, 1029 (D. Colo. 2014) ("[A] necessary predicate for a claim for breach of the covenant of

---

[8] This Circuit's serious doubts align with the doubts expressed by most other Circuits. *See, e.g., Ganey v. Raffone*, 91 F.3d 143, n.6 (6th Cir. 1996) (Table) (noting "it is questionable" whether private litigants are entitled to injunctive relief and that "we find the *Wollersheim* analysis persuasive"); *In re Fredeman Litig.*, 843 F.2d 821, 830 (5th Cir. 1988) (finding "the *Wollersheim* opinion persuasive" but declining to rule on the issue); *Trane Co. v. O'Connor Sec.*, 718 F.2d 26, 28 (2d Cir. 1983) (expressing "serious doubt" as to the "propriety of private party injunctive relief" under RICO); *Dan River Inc. v. Icahn*, 701 F.2d 278, 290 (4th Cir. 1983) (noting "substantial doubt" as to the availability of equitable relief for private parties). The Ninth Circuit has gone further, expressly holding that "injunctive relief is not available to a private party in a civil RICO action." *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1084 (9th Cir. 1986).

good faith and fair dealing is the existence of a contract."). This element is conspicuously absent here.

The only written agreements contained in the Third Amended Complaint are the subscription agreements, which Plaintiffs entered into with <u>Clover Top</u>, and pursuant to which Plaintiffs agreed to pay Clover Top money and Clover Top agreed to issue Plaintiffs shares in the company. (ECF No. 206, ¶ 184.) These agreements cannot be enforced against Kaweske, who was not a party to them. *See* Colo. Jury Inst.-Civil 30:10 (plaintiff must prove "defendant entered into a contract with the plaintiff" to sustain breach of contract claim).[9]

Plaintiffs' contract claims against Kaweske appear to be premised on an oral promise he made to Plaintiffs that "Clover Top would engage in the legal cannabis business and that all cannabis operations in which Kaweske was or would become involved would be owned by, part of, and fall under the umbrella of the Clover Top business, and that all such profits would inure to the benefit of Plaintiffs as owners." (*Id.*) This purported promise is not enforceable because it lacks consideration. *See Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008) (valid contract requires consideration); Colo. Jury Inst.-Civil 30:1 (same). That is true for two reasons. First, according to Plaintiffs' allegations, Kaweske made this promise <u>before</u> Plaintiffs invested in Clover Top and signed the subscription agreements. (*E.g.,* ECF No. 206, ¶¶ 37-40.) The Complaint does not allege or even suggest that, as Kaweske pitched Clover Top, Plaintiffs were agreeing to be bound to invest in the company. Second, and more fundamentally, the only

---

[9] As to Clover Top, Plaintiffs have done nothing to cure the pleading defects that prompted the Court to dismiss their breach of contract claim (ECF No. 188 at 15-16); that is, their Third Amended Complaint fails to explain how Clover Top breached the subscription agreements, which only required Clover Top to issue company shares.

consideration Plaintiffs provided was their investment—and they made that investment in Clover Top, not in Kaweske individually. (ECF No. 206, ¶¶ 37, 41-43, 46, 47, 186.)

In the absence of a contract between Plaintiffs and Kaweske, Plaintiffs cannot maintain their breach of contract and good faith and fair dealing claims against him.

## IV.    PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

Despite having four opportunities to state valid claims, Plaintiffs cannot change the fundamental facts and law of this case. They invested in an illegal marijuana enterprise and are seeking relief that cannot be squared with the CSA. Their most recent amendment, which again makes mostly superficial changes, underscores that point. Plaintiffs should not be permitted to further burden the Court or Defendants by being given a fifth opportunity. Consistent with the Court's prior ruling that this amendment is the "last time" (ECF No. 200 at 30), the Court's dismissal of Plaintiffs' claims should be with prejudice. *See Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1189 (10th Cir. 2012) ("Dismissal with prejudice is appropriate where the complaint fails to state a claim and granting leave to amend would be futile.").

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion and dismiss Plaintiffs' Third Amended Complaint with prejudice.

Dated:  September 17, 2021.                    Respectfully submitted,


                                              *s/ Thomas A. Olsen*
                                              Tamera D. Westerberg
                                              Thomas A. Olsen
                                              Wheeler Trigg O'Donnell LLP
                                              370 Seventeenth Street, Suite 4500
                                              Denver, CO 80202
                                              Telephone:   303.244.1800
                                              Facsimile:    303.244.1879
                                              Email:   westerberg@wtotrial.com
                                                        olsen@wtotrial.com

                                              Attorneys for Defendants John Kaweske, JW
                                              Colorado, LLC, JW Trinidad, LLC, JW
                                              Ordway, LLC, MMJ 95, LLC, AJC Industries,
                                              LLC, Lifestream Holdings, LLC, Sunlife AG,
                                              LLC, Durango Management, LLC, Ordway
                                              Farms, LLC, and TweedLeaf, LLC (a Colorado
                                              LLC)

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I HEREBY CERTIFY that on September 17, 2021, I electronically filed the foregoing **JOHN KAWESKE AND THE ENTITY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Stephen K. Christiansen**
  steve@skclawfirm.com, jen@skclawfirm.com

- **Jeffrey B. Klaus**
  jbk@deisch-marion.com

- **Timothy F. Marion**
  tim_marion@deisch-marion.com, barb_dye@deisch-marion.com

- **Matthew A. Steward**
  mas@clydesnow.com

- **Shaunda L. McNeill**
  slm@clydesnow.com

Notification of this filing is also being sent to Defendant Christopher S. Peterson via email at chris@blinghouse.com.

*s/ Thomas A. Olsen*