IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00942-MEH

SENSORIA, LLC, directly on its own behalf and derivatively on behalf of
CLOVER TOP HOLDINGS, INC., a Delaware corporation;
GORDON MORTON;
ROGER AND ROBIN SMITH;
DENNIS AND LAURA GRIMMER;
GREENHOUSE 5, LLC;
AARON GARRITY;
GARRETT SCHIFFMAN;
LANCE SCHIFFMAN;
KENNETH D. HOUSE; and
MARC LESSER,

        Plaintiffs,

v.

JOHN D. KAWESKE;

CLOVER TOP HOLDINGS, a Colorado corporation;
AJC INDUSTRIES, LLC;
DURANGO MANAGEMENT, LLC;
SUNLIFE AG, LLC;
MMJ 95, LLC;
TWEEDLEAF, LLC, a Colorado limited liability company;
TWEEDLEAF, LLC, a Delaware limited liability company;
LIFESTREAM HOLDINGS, LLC;
ORDWAY FARMS, LLC;
JW COLORADO, LLC;
JW ORDWAY, LLC;
JW TRINIDAD, LLC;


MANUEL WELBY EVANGELISTA a/k/a WELBY EVANGELISTA;
NORTH STAR HOLDINGS, LLC a/k/a NORTH STAR HOLDINGS, INC.;
DJDW, LLC;

BRIAN TANNENBAUM;
TANNENBAUM & TROST, LLC, f/k/a TANNENBAUM,
TROST & BURK, LLC;


CHRISTOPHER S. PETERSON; and

CLOVER TOP HOLDINGS, INC., a Delaware corporation;

  Defendants.

---

**ORDER**

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is the Moving Defendants' Motion for Summary Judgment on Damages and Remedies. ECF 259. The Motion is fully briefed, and the Court finds that oral argument will not materially assist in its adjudication. For the reasons that follow, the Motion is granted in part and denied in part.

**BACKGROUND**

Plaintiffs brings this lawsuit in federal court seeking damages for alleged wrongdoings in how Defendants solicited their investment money and managed the purported business venture. In short, Plaintiffs allege fraud. The business in which Plaintiffs invested was represented to be a large-scale marijuana commercial enterprise (which is how Defendants are operating it now, although through different entities). From the beginning, the dispositive issue has been (and continues to be) how this federal court may provide redress in the first place if the business was illegal under federal law. This is the parties' fourth dispositive motion to test the boundaries of what avenues of relief this federal court may provide. The Court's orders on those prior motions are docketed at ECF 150, 200, and 229, rulings which the Court incorporates by reference herein.

I.     **Law of the Case**

The Court's most recent ruling on this issue, ECF 299–published as *Sensoria, LLC v.*

*Kaweske*, No. 20-cv-00942-MEH, 581 F. Supp. 3d 1243 (D. Colo. Jan. 24, 2022)–defined the very narrow avenue of relief that it may provide Plaintiffs. At least on the basis of the legal arguments raised up to that point and construing the law very broadly in Plaintiffs' favor, the Court saw no legal bar to their ability to recover the return of their investment principal. This was the sole form of compensatory-type damages available (should they prevail on one of their causes of action). *Id*. at 1261. Moreover, the record already established the amount of their investment principal: $700,000. *Id*. at 1262.

The Court reiterated several key facets about the nature of this lawsuit:

(1)    "Marijuana not only lies at the heart of the investment but at the heart of this lawsuit, as well." This is the primary obstacle that "affects Plaintiffs' ability to obtain judicial relief." *Id*. at 1257.

(2)    The enterprise in which Plaintiffs invested and which Defendants operated had "direct involvement in the growing and selling of marijuana," activities which would violate the comprehensive scheme of marijuana criminalization that the federal Controlled Substances Act, 21 U.S.C. §§ 802, *et seq*., ("CSA") created. *Id*. As it did in that prior ruling, the Court continues to use the term "illegality defense" as shorthand to cover "not just the specific affirmative defense that applies in the breach of contract context, but all the ways in which the CSA is implicated and limits Plaintiffs' ability to litigate the lawsuit." *Id*. at 1260.

(3)    The illegal nature of the enterprise places many limits on what redress this Court can provide. For example, this Court may not (a) order a violation of the law, (b) vindicate an equitable ownership interest in an unlawful enterprise, or (c) award profits that an unlawful enterprise generates. *Id*. at 1259-62.

(4)    For whatever relief the Court may award in Plaintiffs' favor, Defendants' payment of such

compensation must come from non-marijuana assets and income streams. *Id*. at 1260. "The actual availability of independent assets or financial resources will have to be determined at a later litigation stage." *Id*. at 1262.

Given the extensive arguments already heard on this issue, the Court instructed Plaintiffs to "proceed forward on those claims that remain or have been narrowed by this ruling." *Id*. at 1271. The Court denied Plaintiffs leave to amend their claims for relief again.

Through their instant Motion, the Moving Defendants seek to apply the above law of the case to the secondary forms of relief that Plaintiffs list in the Scheduling Order. ECF 256 at 13-18. *Not* at issue are Plaintiffs' requests for compensatory damages or equitable relief. The Court already has addressed that issue in its prior rulings, limiting Plaintiffs to the recovery of their investment principal as the only form of compensatory-type damages consistent with CSA concerns. Also *not* at issue is Plaintiffs' request for the lost value of the investment or lost corporate opportunities, a form of damages they say in their Response they no longer seek. ECF 268 at 2, ¶ 5.

Instead, the Motion concerns such forms of relief as exemplary damages under Colo. Rev. Stat. § 13-21-102 (should Plaintiffs later seek leave to add such a claim); prejudgment interest; and costs and attorney fees. It also concerns Plaintiffs' claim for "[t]hree times the amount of the [principal] investment" that they make at ¶ 4(a) and ¶¶ 18-20 of the Scheduling Order (ECF 268). This form of relief derives from the multipliers of Colo. Rev. Stat. § 18-4-405, Colo. Rev. Stat. § 38-8-108, and Utah Code § 61-1-22. ECF 268 at 11.

## II.    Statement of Undisputed Material Facts

1.    As noted above, the Court already has established that CSA-infringing marijuana commercial activities lie at the heart of both the alleged investment scheme and Plaintiffs' claims

4

for relief. *Sensoria*, 581 F. Supp. 3d at 1257. However, Plaintiffs plead in their TAC that there are aspects of Defendants' conduct that might not violate federal law, and there are assets that could be independent of marijuana-illegal activities.

2.     The investment enterprise (Clover Top Holdings, Inc.) was a business that was formed to manufacture and distribute marijuana. Plaintiffs plead in their TAC that it was formed to manufacture and distribute *legal* products as well and that Defendants possibly may hold real estate and other assets *without* a connection to CSA-infringing conduct.

3.     Defendant John Kaweske denies that the Moving Defendants "manufacture marijuana for use in controlled research studies approved by the FDA pursuant to 21 U.S.C. § 823(f)" (ECF 259-1 at ¶ 2) or "in FDA-approved pharmaceutical drugs derived from cannabis" (*id*. at ¶ 3). Plaintiffs counter with press releases about Defendants' applications for federal permission to engage in marijuana activities. Whether Defendants in fact intended to and did apply for the right to sell marijuana legally is an inquiry that Plaintiffs want to explore further in discovery.

4.     Plaintiffs likewise intend to use discovery to develop the record about Defendants' real estate holdings. In sum, Plaintiffs will use discovery to inquire into "the exact nature and scope of the defendants' anticipated and actual business, products, and services." ECF 268 at 7, ¶ 8.

5.     Six causes of action remain following the Court's most recent dispositive ruling, although limited to Defendant Kaweske alone. They are the federal, Colorado, and Utah securities statutes; fraudulent and negligent misrepresentation; and unjust enrichment. A seventh cause of action–that Plaintiffs bring against all the Moving Defendants–for violating Colorado's Uniform Fraudulent Transfer Act also is at issue.

6.     One of the defendant entities sought to register the "TWEEDLEAF" name and

drawing as trade- and service marks with the United States Patent and Trademark Office in July 2015. However, those registrations later were cancelled or abandoned. ECF 285-3 and ECF 285-4. Plaintiffs will use discovery to establish the degree to which Defendants sold lawful products under the TWEEDLEAF mark and how much they earn therefrom.

7.      Defendants emphasize that they have maintained their TWEEDLEAF marks "for goods and services involving THC." ECF 285-5 and ECF 285-6. "The only entity that ever derived revenue from non-marijuana products is Defendant JW Colorado, LLC," and the revenue it derived therefrom was a nominal 0.5% of total sales. ECF 285-1 at ¶ 5.

8.      When Plaintiff Gordon Morton visited the Tweedleaf operations in 2016, he observed lawful products for sale. Moreover, the Tweedleaf website sells lawful products. ECF 268-1 at ¶ 3.

## LEGAL STANDARD

### I.      Fed. R. Civ. P. 56(c)

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence

to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247–48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324).

"[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

Defendants' arguments in support of summary judgment can be divided into two categories. The first one concerns whether as a matter of law the return of investment principal restriction extends to foreclose Plaintiffs' non-compensatory, ancillary forms of relief as well. The second category tests whether there is sufficient non-marijuana assets from which Defendants may

pay any such award.

## I.      The Range of Permitted Secondary Forms of Relief

Through multiple rulings the Court already has addressed how the "illegality defense" limits the available means of redress for the alleged fraud and mismanagement. There is no need to revist that issue yet again. Instead, the Court restricts its inquiry to whether the Moving Defendants persuade this Court to apply that same ruling with equal force to bar the more ancillary forms of relief that Plaintiffs list in the Scheduling Order.

The Court begins with whether Plaintiffs may recover prejudgment interest (on the amount of their principal investment, should Plaintiffs prevail on a cause of action that permits recission as a form of redress). This Court disagrees with the general assertion that prejudgment interest constitutes "another form of profiting from the illegal marijuana business," as the Moving Defendants maintain. ECF 259 at 6, n.3. In support thereof, the Moving Defendants cite *Life Face on Web, LLC v. Integrity Solutions Group, Inc*., 421 F. Supp. 3d 1051, 1073-74 (D. Colo. Sept. 30, 2019), a decision concerning the availability of prejudgment interest for a successful Copyright Act claim. Prejudgment interest, *Life Face* explains, is a tool for making "complete compensation" by paying the prevailing party "for the loss of use of money due as damages from the time the claim accrues until judgment is entered" *Id*. Even assuming that *Life Face*'s standard applies equally to the causes of action that Plaintiff asserts here, it does not compel barring prejudgment interest on illegality defense grounds as a general matter of law.

Prejudgment interest does not compensate Plaintiffs for harm directly suffered as a result of the Moving Defendants' alleged wrongdoing. Rather, it compensates them for the time they lost while litigating to final judgment their investment principal's return. *David v. Sirius Computer Sols., Inc*., 779 F.3d 1209, 1211 (10th Cir. 2015); *Valdez v. Motyka*, No. 15-cv-0109-WJM-STV,

2021 WL 505166, at *2 (D. Colo. Nov. 1, 2021). This Court already has determined that the return of their investment principal is a permissible form of redress. Recovering prejudgment interest on that amount (should Plaintiffs prevail on the merits of a cause of action that permits both rescission as a form of relief and prejudgment interest thereon) is a fundamentally different form of "compensation" that what the illegality defense restricts.

The Moving Defendants raise the same objection to Plaintiffs' desire for a fee and cost award (should it prevail on a cause of action that permits litigation-expense shifting). They rely on *Tran v. Colvin*, No. 11-cv-00790-PAB, 2013 WL 1786503 (D. Colo. Apr. 25, 2013) which concerns the fee-shifting provision of the Equal Access to Justice Act, 28 U.S.C. § 2412(d) ("EAJA"). The EAJA permits fee-shifting as a way to compensate a plaintiff who prevails on his or her Social Security disability appeal. To begin with, *Tran* provides no substantive discussion of the compensatory nature of the EAJA's attorney fee award provision. Nor does anything about *Tran* directly support the Moving Defendants' attempt to foreclose Plaintiffs' ability to seek a fee and cost award in this case as a general matter of law. As this Court explains above with respect to the prejudgment interest issue, a fee and cost award does not compensate Plaintiffs for the harm caused by the Moving Defendants' alleged wrongdoing. Rather, it compensates them for having to pursue litigation to recover the already permitted form of redress.

The parties dispute whether the illegality defense bars as a matter of law Plaintiffs' ability to recover exemplary damages. The Moving Defendants raise no legal argument specific to the issue. Instead, they simply assume that the Court's prior illegality defense rulings apply with equal force to exemplary damages. In practical effect, the Moving Defendants cause the burden of persuasion to shift to Plaintiffs to demonstrate how the illegality defense does *not* bar this form of relief. Plaintiffs would face that burden at such later time when they chose to file the Colo. Rev.

Stat. § 13-21-102 motion. Nevertheless, because Plaintiffs proceed to raise in their Response arguments for why the recovery of exemplary damages does not implicate the illegality defense, this Court will go ahead and address the matter for the sake of overall judicial economy.

The essential thrust of Plaintiffs' argument is that exemplary damages do not provide direct compensation for the injury sustained, but rather, as *Mortg. Fin. Inc. v. Podleski*, 742 P.2d 900, 903 (Colo. 1987) explains, it constitutes a form of punishment and deterrence. Nevertheless, entitlement to exemplary damages depends on Defendants' conduct in the underlying alleged wrongdoing. *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1151 (10th Cir. 2010) ("The purpose of punitive damages is to punish the defendant's willful and wanton conduct and deter others from engaging in similar conduct"). Colorado law permits the award of exemplary damages against a defendant who "purposefully behaved in a dangerous, heedless and reckless manner without regard to consequences, or of the rights and safety of others." *Vanderheyden v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-03182-CMA-MEH, 2022 WL 2063228, at *2 (D. Colo. June 8, 2022) (internal citations omitted). Here, the actions by Defendants are those that raise illegality defense concerns. Plaintiffs do not resolve the inconsistent result of greatly narrowing the range of compensatory redress on the one hand but permitting exemplary damages on the other. The *degree* of Defendants' culpability in allegedly defrauding Plaintiffs does not change the fact that the investment itself violated the CSA. Moreover, because the focus of the exemplary damages inquiry is on Defendants' alleged wrongdoing, exemplary damages differ in nature from prejudgment interest and litigation expense awards which provide a means to compensate Plaintiffs for *their* conduct in pursuing the litigation.

Citing *Mailloux v. Bradley*, 643 P.2d 797, 799 (Colo. App. 1982), Plaintiffs next argue that exemplary damages should be an alternative form of relief that is available when a plaintiff lacks

10

another remedy at law. They construe the illegality defense as creating an incongruity between state and federal law, an incongruity that makes exemplary damages "especially appropriate in cases related to the marijuana industry." ECF 268 at 13. The implication of this argument is that illegality defense considerations result in an unfair outcome. However, as the Court emphasized in its prior ruling, it was Plaintiffs who voluntarily assumed the risk of investing in a marijuana business. *Sensoria*, 581 F. Supp. 3d at 1259. After they lost their investment, it also was Plaintiffs' choice to sue the Defendants in this federal court rather than in Colorado state court where "the illegality issue possibly may play a lesser role." *Sensoria*, 581 F. Supp. 3d at 1259. "By filing suit in federal court," this Court furthered, "it was Plaintiffs themselves, and not Defendants, who deprived them avenues of relief and 'choses in action.'" *Id*. Plaintiffs do not persuade this Court how it may permit exemplary damages as an off-set to the limiting effects of the illegality defense.

Lastly, the Court considers Plaintiffs' claim to increase the size of their investment principal should they prevail. How the illegality defense bars the Court's ability to actually permit such an award, the Moving Defendants leave wholly unexplained. The Moving Defendants seem to assume that increasing the investment principal constitutes an impermissible award of equity or lost profits (whereas, as the Court already has determined, the award of the principal itself does not). They raise no specific legal argument why a multiplier is barred as a matter of law. In practical effect, they thereby shift the burden of persuasion to Plaintiffs to demonstrate how the illegality defense does *not* bar such relief at the later time when they ask the Court to award it.

Plaintiffs' Fourth Cause of Action alleges a violation of Utah's Uniform Securities Act, Utah Code § 61-1-22(1). The Court permitted Plaintiffs to proceed with this cause of action to the extent they seek the return of their investment principal only. *Sensoria*, 581 F. Supp. 3d at 1266. In their Response (ECF 268 at 11), Plaintiffs cite Utah Code § 61-1-22(2) which permits a court

to "award an amount equal to three times the consideration paid for the security, together with interest, costs, and attorney fees." The trebling effect does not operate as an automatic form of statutory liquidated damages, however. It is available only if the Defendants acted recklessly or intentionally. Utah Code § 61-1-22(2)(a). Alternatively, it is available for (less culpable) negligent conduct, but only if Plaintiffs can demonstrate by clear and convincing evidence that Defendants exercised undue influence over them (despite being sophisticated investors). Utah Code § 61-1-22(2)(b). Although Plaintiffs do not defend their ability to recover treble damages under this statute, the Court's ruling with respect to exemplary damages extends logically to cover this matter as well. For the same reasons Plaintiffs fail to show how they may recover exemplary damages, they fail to show how they may recover treble damages under Utah Code § 61-1-22(2). This Court notes that Plaintiffs do not claim multiplication of damages as part of their federal and Colorado securities statute-based claims. ECF 256 at 13.

Plaintiffs' Fourteenth Cause of Action alleges a violation of Colorado's Uniform Fraudulent Transfer Act, Colo. Rev. Stat. § 38-8-101 ("CUFTA"). The Court permitted Plaintiffs to proceed with this cause of action to the extent they seek the return of their investment principal only. *Sensoria*, 581 F. Supp. 3d at 1264. In their Response (ECF 268 at 11), Plaintiffs cite Colo. Rev. Stat. § 38-8-108(1)(c) which permits "one and one-half the amount necessary to satisfy the creditor's claim" as an automatic form of liquidated damages.[1] Given that this multiplier does not require inquiry into Defendants' conduct to obtain, it does not raise the same illegality defense concerns that the exemplary damages and securities statutes do. Therefore, Plaintiffs may pursue Colo. Rev. Stat. § 38-8-108(1)(c) as a permissible form of relief.

---

[1] Of note, Plaintiffs do *not* include this form of relief for this cause of action in the Scheduling Order (ECF 256 at 16, ¶ 14), although they do plead it in the TAC (ECF 206 at 66, ¶ 225).

Plaintiffs cite in their Response (ECF 268 at 11) Colorado's civil theft statute of Colo. Rev. Stat. § 18-4-405. Similar to CUFTA, this statute automatically trebles the amount of actual damages sustained. However, Plaintiffs do not identify a civil theft cause of action that survived the prior dismissal orders. Therefore, the Court assumes that Colo. Rev. Stat. § 18-4-405 is no longer at issue.

Despite the parties' very limited arguments, this Court can say that the law forecloses neither the return of Plaintiffs' investment principal (the only form of direct damages permitted) nor the recovery of prejudgment interest, costs, and attorney fees (as a secondary form relief if otherwise available). Plaintiffs also may benefit from the damages multiplier of Colo. Rev. Stat. § 38-8-108(1)(c). However, the illegality defense does not allow treble damages under Utah Code § 61-1-22(2) or exemplary damages under Colo. Rev. Stat. § 13-21-102.

As a concluding matter, the Court notes Plaintiffs' challenge to the Moving Defendants' "suggestion that this Court may deprive [them] at this juncture from pursuing claims the law makes available to them in the circumstances." ECF 268 at 9. Plaintiffs find fault with a federal court exercising "free rein to independently create substantive law defining the nature and extent of investors' legal claims" and "to establishing a rule limiting investors' claims to no more than restitution of their principal." Plaintiffs raise this argument to oppose further restrictions on the scope of their available relief, but the Court observes that its prior rulings already had the same effect. After taking a very plaintiff-friendly construction of the law, the Court permitted room for Plaintiffs to recover their investment principal (but no other form of direct compensatory relief). Illegality defense concerns greatly narrowed the range of redress available in *this* case, even if the causes of action permit broader relief generally.

## II.     Availability of Non-Marijuana Assets

Application of the illegality defense restricts more than just the type of relief that Plaintiffs may seek. It also limits the type of assets from which any such award could be paid. The Moving Defendants argue that whatever form of redress the Court ultimately may award Plaintiffs, the absence of non-marijuana assets poses a de facto bar to recovery.

This Court already has said that it would decline payment of redress from any income stream that would be illegal under the CSA, *Sensoria*, 581 F. Supp. 3d at 1260-61, or any asset that would be subject to criminal forfeiture, *Sensoria, LLC v. Kaweske*, 548 F. Supp. 3d 1011, 1026 (D. Colo. 2021). Indeed, this Court generally doubted the availability of CSA-compatible assets. *Sensoria*, 581 F. Supp. 3d at 1261 ("The pleadings do not show a likelihood that the Defendant entities have significant income independent of CSA-violative undertakings and assets."). The Moving Defendants argue that because "Plaintiffs have not, and cannot, identify a route to recovery that would not violate the CSA," (ECF 259 at 8), they are effectively foreclosed from prosecuting their claims for relief.

Plaintiffs strain to show the potential for CSA-compliant assets. They place much emphasis on Defendants' expressions of intent to obtain DEA or FDA licensing. There is no evidence that any Defendant actually has received any such license, but Plaintiffs seem to assume the possibility of a federal agency later granting a pending or future request (despite Defendants' alleged gross fraud and mismanagement). Plaintiffs also emphasize the potential for federally lawful sales, although the amount of that income stream continues to appear small.

The Moving Defendants fail to show how the apparent difficulty in identifying and isolating CSA-compliant assets warrants summary judgment in their favor on the merits of Plaintiffs' causes of action. To begin with, the Court already has allowed Plaintiffs to maintain

several causes of action despite this known shortcoming. In its prior ruling, the Court "assume[d] the potential availability of 'fungible' monetary sources from the individual Defendants." *Sensoria*, 581 F. Supp. 3d at 1261. Moreover, the subject of "whether Defendants could pay compensatory damages from non-marijuana assets" was left for Plaintiffs to explore in discovery. *Id*. Plaintiffs oppose the entry of summary judgment on Fed. R. Civ. P. 56(d) grounds. ECF 268 at 14. There remains the potential that Plaintiffs can uncover CSA-compliant assets from which any potential damages award could be paid (either in full or partial satisfaction).

There is a type of compensatory damage (the return of investment principal) that Plaintiffs could recover. In that sense, Plaintiffs plausibly plead the damages element of their surviving causes of action. Whether they can recover payment on such an award from CSA-compliant assets is a matter distinct from their ability to prevail on the merits. This Court did not construe the apparent difficulty in isolating CSA-compliant assets as a reason to grant the Moving Defendants' prior motions to dismiss, and this Court does not see it as reason to grant them summary judgment now.

Denying summary judgment renders moot the Moving Defendants' request "for the Court to rule as a matter of law that the damages described above may not be sought by Plaintiffs with respect to any claims against *any* Defendants." ECF 259 at 9 (emphasis added). In other words, because the Court denies summary judgment to the Moving Defendants, there is no need for it to consider whether it also should enter summary judgment in any *non-moving* Defendants' favor on the same basis.

## CONCLUSION

Having already limited the scope of Plaintiffs' permitted compensatory damages, the Moving Defendants ask this Court to impose the same restrictions on more ancillary forms of

relief. Both parties offer very limited legal argument, but this Court discerns enough to extend the illegal defense as a bar to Plaintiffs' ability to recover exemplary damages under Colo. Rev. Stat. § 13-21-102 and by logical extension treble damages under Utah Code § 61-1-22(2). The Court also notes Plaintiffs' withdrawal of their "lost opportunity" damage claims and the apparent lack of a surviving civil theft claim to support treble damages pursuant to Colo. Rev. Stat. § 18-4-405. To this extent, the Court grants summary judgment in the Moving Defendants' favor. However, the Court declines to exclude prejudgment interest, fees and costs, or the one-and-a-half multiplier of Colo. Rev. Stat. § 38-8-108(1)(c). In those respects, the Motion is denied. The Court also declines to enter summary judgment in the Moving Defendants' favor for the current lack of significant CSA-compliant assets. It does not necessarily bar Plaintiffs' ability to prevail on the merits, and Plaintiffs' request for more discovery leaves open the possibility that they may uncover an acceptable asset source.

Accordingly, for the above reasons, the Moving Defendants' Motion for Summary Judgment on Damages and Remedies [filed August 22, 2022; ECF 259] is **granted in part and denied in part**, as explained above

SO ORDERED.

Dated at Denver, Colorado, this 2nd day of December, 2022.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge