IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00942-MEH

SENSORIA, LLC, directly on its own behalf and derivatively on behalf of
CLOVER TOP HOLDINGS, INC., a Delaware corporation;
GORDON MORTON;
ROGER AND ROBIN SMITH;
DENNIS AND LAURA GRIMMER;
GREENHOUSE 5, LLC;
AARON GARRITY;
GARRETT SCHIFFMAN;
LANCE SCHIFFMAN;
KENNETH D. HOUSE; and
MARC LESSER,

    Plaintiffs,

v.

JOHN D. KAWESKE;

CLOVER TOP HOLDINGS, a Colorado corporation;
AJC INDUSTRIES, LLC;
DURANGO MANAGEMENT, LLC;
SUNLIFE AG, LLC;
MMJ 95, LLC;
TWEEDLEAF, LLC, a Colorado limited liability company;
TWEEDLEAF, LLC, a Delaware limited liability company;
LIFESTREAM HOLDINGS, LLC;
ORDWAY FARMS, LLC;
JW COLORADO, LLC;
JW ORDWAY, LLC;
JW TRINIDAD, LLC;


MANUEL WELBY EVANGELISTA a/k/a WELBY EVANGELISTA;
NORTH STAR HOLDINGS, LLC a/k/a NORTH STAR HOLDINGS, INC.;
DJDW, LLC;

BRIAN TANNENBAUM;
TANNENBAUM & TROST, LLC, f/k/a TANNENBAUM,
TROST & BURK, LLC;

CHRISTOPHER S. PETERSON; and

CLOVER TOP HOLDINGS, INC., a Delaware corporation;

Defendants.

---

# ORDER

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is the Motion to Dismiss (ECF 259) filed by Brian Tannenbaum and the law firm of Tannenbaum & Trost, LLC (the "Tannenbaum Defendants"). The Motion is fully briefed, and the Court finds that oral argument will not materially assist in its adjudication. For the reasons that follow, the Motion is denied.

## BACKGROUND

Generally speaking, this lawsuit concerns Plaintiffs' investment in a business that was represented to be a large-scale marijuana commercial enterprise (which is how Plaintiffs allege the Defendants continue to operate it today, albeit through different entities). Plaintiffs bring this lawsuit in federal court seeking damages for alleged wrongdoings in how individual Defendants solicited their investment money and managed the purported business venture. In short, Plaintiffs allege fraud.

Clover Top Holdings, Inc. was the entity meant to house the purported business venture in which Plaintiffs invested. This Court summarized Plaintiffs' allegations in the prior ruling at ECF 229–published as *Sensoria, LLC v. Kaweske*, No. 20-cv-00942-MEH, 581 F. Supp. 3d 1243, 1249-55 (D. Colo. Jan. 24, 2022)–about Clover Top Holdings, Inc.'s formation and activities concerning it. It was incorporated in September 2015. *Id*. at 1249. On October 30, 2015, Clover Top Holdings,

2

Inc. retained the Tannenbaum Defendants as its counsel. *Id*. at 1250. At some point thereafter, Clover Top Holdings, Inc. ceased being an active corporation. *Id*. In February 2019, Defendant John Kaweske made a comment to Gordon Morton that implied Clover Top Holdings, Inc.'s lack of any assets or value as a going concern. *Id*. at 1254. Clover Top Holdings, Inc. has not appeared in this lawsuit in its own right and is in default. *Id*. at 1255.

The Plaintiff relevant to this ruling is the Sensoria, LLC corporate entity ("Sensoria"). In a prior ruling, this Court summarized Co-Plaintiff Gordon Morton's description of Sensoria as the entity that holds all of the shares in Clover Top Holdings, Inc. that he had bought (either directly himself or through Sensoria). *Id*. at 1252. Derivatively, on Clover Top Holdings, Inc.'s behalf, Sensoria brings a legal malpractice claim against Clover Top Holdings, Inc.'s counsel, the Tannenbaum Defendants. It is pleaded as the Eleventh Cause of Action in the Third Amended Complaint (ECF 206) and concerns the Tannenbaum Defendants' alleged involvement in the greater scheme through which Plaintiffs say they lost the benefit of their investment. The Eleventh Cause of Action is the product of this Court's prior rulings regarding similar claims for relief that Plaintiffs had brought against the Tannenbaum Defendants. This Court sees no need to revisit those prior rulings here. Instead, it limits the present consideration to new arguments about legal defects that the Tannenbaum Defendants raise for the first time in this Motion.

Consistent with the Court's prior rulings, Sensoria frames its legal malpractice claim to encompass the breach of a wide variety of duties: fiduciary, loyalty, confidentiality, and avoidance of conflicts of interest. Sensoria identifies many actions that it contends were inconsistent with the duties of care that the Tannenbaum Defendants owed to their client, Clover Top Holdings, Inc. Such contrary actions include assisting the other Defendants to set up and operate a commercial enterprise that directly competed with it; transferring its assets to that competing enterprise; and

3

allowing it to lapse as a viable corporate entity. Sensoria also complains that the Tannenbaum Defendants "allowed Clover Top to operate illegally under federal law." ECF 206 at 62, ¶ 208.

Sensoria furthers that the Tannenbaum Defendants proceeded despite their actual knowledge of an existing conflict of interest. It infers such knowledge from their denial to assist Defendant Christopher Peterson because of their preexisting relationship with both Clover Top Holdings, Inc. and Defendant Kaweske.

Sensoria claims that "[t]hese breaches of fiduciary duty caused actual, proximate harm to Clover Top." *Id*. at ¶ 209. However, Sensoria neither specifies what kind of damages Clover Top Holdings, Inc. suffered as a result of the alleged breaches nor quantifies their amount.

## **LEGAL STANDARD**

The Tannenbaum Defendants "submit their Motion to Dismiss and Brief, pursuant to Fed.R.Civ.P. 12(b)(6), 12(c) and 56." ECF 258 at 1. Nevertheless, given the substance of their arguments and the nature of the Motion, this Court limits its consideration to whether Sensoria pleads a plausible claim of legal malpractice under Rule 12(b)(6).

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleads facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. *Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal

4

conclusions, bare assertions, or merely conclusory. *Iqbal*, 556 U.S. at 679–80. Second, a court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the

5

pleader is entitled to relief." *Id*.

## ANALYSIS

"The main point of this Motion," the Tannenbaum Defendants clarify in their Reply, "is that the limitations on available damages and remedies outlined [at ECF 229–published as *Sensoria, LLC v. Kaweske*, No. 20-cv-00942-MEH, 581 F. Supp. 3d 1243, 1249-55 (D. Colo. Jan. 24, 2022)] render the Plaintiffs without an allowable remedy related to their Eleventh Claim for Relief." ECF 283 at 1. In other words, the Tannenbaum Defendants seek to apply the January 24, 2022 ruling to the claim brought against them, and they argue that doing so compels its dismissal.

### I.   The Law of the Case

To add context to the discussion concerning the Tannenbaum Defendants' present argument for dismissal, this Court summarizes the two most recent dispositive rulings. The Court's ruling at ECF 229–published as *Sensoria, LLC v. Kaweske*, No. 20-cv-00942-MEH, 581 F. Supp. 3d 1243 (D. Colo. Jan. 24, 2022)–defined the very narrow avenue of relief that it may provide Plaintiffs on those claims through which they seek redress for investment fraud and corporate mismanagement. Construing the law very broadly in Plaintiffs' favor, the Court saw no legal bar to their ability to recover the return of their investment principal. This was the sole form of compensatory-type damages available (should they prevail on one of their causes of action). *Id*. at 1261. Moreover, the record already established the amount of their investment principal: $700,000. *Id*. at 1262.

The Court reiterated several key facets about the nature of this lawsuit:

(1)  "Marijuana not only lies at the heart of the investment but at the heart of this lawsuit, as well." This is the primary obstacle that "affects Plaintiffs' ability to obtain judicial relief." *Id*. at 1257.

(2) The enterprise in which Plaintiffs invested and which Defendants operated had "direct involvement in the growing and selling of marijuana," activities which would violate the comprehensive scheme of marijuana criminalization that the federal Controlled Substances Act, 21 U.S.C. §§ 802, *et seq*., ("CSA") created. *Id*. As it did in that prior ruling, the Court continues to use the term "illegality defense" here as shorthand to cover "not just the specific affirmative defense that applies in the breach of contract context, but all the ways in which the CSA is implicated and limits Plaintiffs' ability to litigate the lawsuit." *Id*. at 1260.

(3) The illegal nature of the enterprise places many limits on what redress this Court can provide. For example, this Court may not (a) order a violation of the law, (b) vindicate an equitable ownership interest in an unlawful enterprise, or (c) award profits that an unlawful enterprise generates. *Id*. at 1259-62.

(4) For whatever relief the Court may award in Plaintiffs' favor, Defendants' payment of such compensation must come from non-marijuana assets and income streams. *Id*. at 1260. "The actual availability of independent assets or financial resources will have to be determined at a later litigation stage." *Id*. at 1262.

Given the extensive arguments already heard on this issue, the Court instructed Plaintiffs to "proceed forward on those claims that remain or have been narrowed by this ruling." *Id*. at 1271. The Court denied Plaintiffs leave to amend their claims for relief again.

Thereafter, this Court entered another ruling regarding the extent to which the "illegality defense" restricts the more ancillary kinds of damages that Plaintiffs seek. That ruling is docketed at ECF 286 and is published as *Sensoria, LLC v. Kaweske*, No. 20-cv-00942-MEH, 2022 WL 17416669 (D. Colo. Dec. 2, 2022). There, this Court excluded those forms of ancillary damages

that provide compensation for Defendants' acts of wrongdoing. Because "the degree of Defendants' culpability in allegedly defrauding Plaintiffs does not change the fact that the investment itself violated the CSA," the illegality defense barred recovery, this Court reasoned. *Id*. at *5. However, this Court disagreed that the apparent lack of non-marijuana assets means Plaintiffs cannot plausibly plead a cause of action's damages element or could not later establish a permissible source from which to recover payment of a damages award. *Id*. at *7.

## II.  Application of the Illegality Defense to the Legal Malpractice Claim

Sensoria frames its legal malpractice grievance as a breach of both standards of conduct (fiduciary obligations, for example) and care (negligence). *See Parks v. Edward Dale Parrish LLC*, 452 P.3d 141, at 146 (Colo. App. 2019) (discussing how a legal malpractice claim may encompass both kinds of professional standards). The Tannenbaum Defendants are the only parties to state in the current pleadings the prima facie elements that Sensoria must prove to prevail on its Eleventh Cause of Action, but they do so only for the negligence version of legal malpractice. Citing *Stone v. Satriana*, 41 P.3d 705, 712 (Colo. 2002), the Tannenbaum Defendants define it as:

(1)  an attorney owed a duty of care to the client,

(2)  the attorney breached that duty, and

(3)  by breaching that duty, the attorney proximately caused damage to the client.

From this starting point, this Court considers the extent to which the illegality defense limits Sensoria's ability to pursue and ultimately recover on the claim.

Solely for purposes of facilitating the present analysis, this Court makes several assumptions in Clover Top Holdings, Inc.'s favor: The Tannenbaum Defendants owed various professional obligations to Clover Top Holdings, Inc., standards which they did not meet (thereby breaching duties of conduct and care). Those failures in turn harmed Clover Top Holdings, Inc. by

8

causing it to lose assets and the ability to function as viable concern. Sensoria may seek relief for the alleged breaches on Clover Top Holdings, Inc.'s behalf. What remains is the question of whether Clover Top Holdings, Inc. suffered a *kind* of damage unaffected by the illegality defense and which the illegality defense does not pose a bar to Sensoria's ability to obtain redress.

The first aspect of that inquiry is easily resolved in Clover Top Holdings, Inc.'s favor. In contrast to the entity Defendants which are engaged in the commercial production and sale of marijuana, the Tannenbaum Defendants are a law firm. As such, they are not a CSA-infringing enterprise, and the illegality defense poses no limitations on the Court's ability to award relief against them.

The second part of the test asks whether Clover Top Holdings, Inc. is seeking to vindicate a commercial interest in a CSA-infringing enterprise. This is the obstacle that the investor Plaintiffs encountered. The illegality defense bars their ability to recover the full value of their investment (namely, substantial profit income) as owners of the thriving business that Clover Top Holdings, Inc. was promised to be. The only kind of compensatory damages that this Court allows Plaintiffs to recover from the other Defendants is the return of their investment principal. However, Clover Top Holdings, Inc. did not invest in itself, and thus, it has no claim to rescission as a form of redress.

At first blush, the legal malpractice claim seemingly fails the test's second part. From the perspective of Clover Top Holdings, Inc., the money that Plaintiffs invested into it became marijuana assets upon receipt. Clover Top Holdings, Inc.'s operations directly raise CSA concerns. As such, the divestment of its assets and its lost ability to operate profitably could implicate the illegality defense. Upon deeper inquiry, however, the legal malpractice claim does not seek vindication of commercial interests, at least directly.

The focus of the Eleventh Cause of Action concerns professional standards that the Tannenbaum Defendants (as lawyers) owed a client (that for present purposes this Court assumes was a lawful business entity under state law). Sensoria does not deny the ability of Clover Top Holdings, Inc., to retain legal representation for itself. In this context, the role marijuana plays in the Eleventh Cause of Action is sufficiently distant and tangential to distinguish it from the tort and breach-of-contract cases that this Court cites in *Sensoria*, 581 F. Supp. 3d at 1259-60, as examples where the illegality defense *did* apply with preclusive effect. Nor would upholding the professional obligations and duties that a lawyer owes his or her client be inconsistent with upholding the public policy concerns underlying the illegality defense. The Eleventh Cause of Action therefore is more analogous to the situation that this Court addressed in *Sensoria, LLC v. Kaweske*, No. 20-cv-00942-MEH, 2021 WL 103020, at *6 (D. Colo. Jan. 12, 2021) when it observed how:

> [t]he simple fact that marijuana is involved does not mean that Plaintiffs' claims must be dismissed automatically. The cited case law does not apply the affirmative defense in such a hard-and-fast manner. *In re Malul*, 614 B.R. at 709. Case law shows flexibility when relief can be granted in a way that does not implicate the federal marijuana laws. For example, courts have enforced loans and insurance contracts that could be paid from money not derived from marijuana sales. *Green Earth Wellness Ctr., LLC v. Atain Specialty Ins. Co.*, 163 F. Supp. 3d 821 (D. Colo. 2016) (enforcing an insurance contract); *Ginsburg v. ICC Holdings, LLC*, No. 16-cv-2311, 2017 WL 5467688 (N.D. Tex. Nov. 13, 2017) (enforcing promissory notes); *Mann v. Gullickson*, No. 15-cv-03630, 2016 WL 6473215 (N.D. Cal. Nov. 2, 2016) (enforcing payment on a contract for consultative services that indirectly concerned marijuana).

This Court disagrees with the Tannenbaum Defendants that they benefit equally from this Court's prior illegality defense rulings.

### III. Limitation on Damages

Should Sensoria be permitted to proceed with its Eleventh Cause of Action, then the Tannenbaum Defendants argue that the same restriction that this Court has imposed on

10

the kind of damages Plaintiffs may recover on the other causes of action also should apply here. They ask this Court to limit the damages that Sensoria may recover to the amount of Plaintiffs' $700,000 investment principal. As this Court explains above, the legal malpractice claim is sufficiently distinct from the other causes of action to preclude a wholesale extension of this Court's prior rulings to it. There is the potential that the damages that Clover Top Holdings, Inc. incurred as a result of a legal malpractice act may be too different in nature to allow wholesale application of that rescission limitation. This Court cannot conclude at this stage that its prior rulings regarding rescission extend to the Eleventh Cause of Action simply as a function of the law of the case.

As for what the damages under the Eleventh Cause of Action should be, it is premature to determine. First, Clover Top Holdings, Inc. (through Sensoria) must prevail on the merits of the claim (and without the benefit of the assumptions that this Court makes in its favor for purposes of the instant ruling). Second, Clover Top Holdings, Inc. (through Sensoria) must prove the kind of damages relevant to the Eleventh Cause of Action, including damages that bear a causal relationship to any proven breaches of duty. Third, Sensoria must overcome any potential limitations on its ability to recover derivatively on Clover Top Holdings, Inc.'s behalf. This may include consideration of whether Sensoria is estopped from using the Eleventh Cause of Action to recover more than what it can from the other causes of action. In other words, the issue of damages is more complicated than what the Tannenbaum Defendants' present law-of-the-case argument allows this Court to resolve at this juncture.

## CONCLUSION

This Court is unable to conclude that the illegality defense bars Sensoria's ability to proceed with its Eleventh Cause of Action outright as a matter of law. Whether Sensoria actually will prevail on the merits and the amount of damages it may recover thereunder if it does are matters beyond the scope of the present Motion.

Accordingly, the Tannenbaum Defendants' Motion to Dismiss [filed August 22, 2022; ECF 258] is **denied.**

SO ORDERED.

Dated at Denver, Colorado, this 12th day of December, 2022.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge