IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:20-cv-00942-SKC

SENSORIA, LLC, directly on its own behalf and derivatively on behalf of
CLOVER TOP HOLDINGS, INC., a Delaware corporation;
GORDON MORTON;
ROGER AND ROBIN SMITH;
DENNIS AND LAURA GRIMMER;
GREENHOUSE 5, LLC;
AARON GARRITY;
GARRETT SCHIFFMAN;
LANCE SCHIFFMAN;
KENNETH D. HOUSE; and
MARC LESSER,

          Plaintiffs,

v.

JOHN D. KAWESKE;
CHRISTOPHER S. PETERSON;
CLOVER TOP HOLDINGS, INC., a Delaware corporation;
CLOVER TOP HOLDINGS, a Colorado corporation;
AJC INDUSTRIES, LLC;
DURANGO MANAGEMENT, LLC;
SUNLIFE AG, LLC;
MMJ 95, LLC;
TWEEDLEAF LLC, a Colorado limited liability company;
TWEEDLEAF, LLC, a Delaware limited liability company;
LIFESTREAM HOLDINGS, LLC;
ORDWAY FARMS, LLC;
NORTH STAR HOLDINGS a/k/a NORTH STAR HOLDINGS, INC.;
MANUEL WELBY EVANGELISTA a/k/a WELBY EVANGELISTA;
DJDW, LLC;
JW COLORADO, LLC;
JW ORDWAY, LLC;
JW TRINIDAD, LLC;
BRIAN TANNENBAUM;

TANNENBAUM & TROST, LLC, f/k/a TANNENBAUM,
TROST & BURK, LLC; and
DOES 1-100,

   Defendants.

---

# ORDER

---

This matter is before the Court on Plaintiffs Sensoria, LLC, Gordon Morton, Roger and Robin Smith, Laura Grimmer, Greenhouse 5, LLC, Aaron Garrity, Garrett and Lance Schiffman, Kenneth House, and Marc Lesser's Motion for Default Judgment. Dkt. 420. Plaintiffs seek Default Judgment against John D. Kaweske, Clover Top Holdings, Inc., a Delaware corporation ("Clover Top (Del.)"), Clover Top Holdings, a Colorado corporation ("Clover Top (Colo.)"), AJC Industries, LLC ("AJC"), Durango Management, LLC ("Durango"), Sunlife AG, LLC ("Sunlife"), MMJ 95, LLC ("MMJ"), Tweadleaf, LLC, a Delaware limited liability company ("Tweadleaf (Del.)"), Tweadleaf, LLC, a Colorado limited liability company ("Tweadleaf (Colo.)"), Lifestream Holdings, LLC ("Lifestream"), Ordway Farms, LLC ("Ordway Farms"), Northstar Holdings a/k/a North Star Holdings, Inc. ("North Star"), JW Colorado, LLC ("JW Colorado"), JW Ordway, LLC ("JW Ordway") and JW Trinidad, LLC ("JW Trinidad"). *Id*.

Plaintiffs, who were investors in Defendants' large-scale marijuana commercial enterprise, contend Defendants engaged in fraudulent conduct in the solicitation of Plaintiffs' financial investments and the management of the business

ventures. Dkt. 206. The facts as alleged in the operative pleading were recounted in exquisite detail in Retired Magistrate Judge Michael Hegarty's Order on Defendants' Motions to Dismiss. Dkt. 229 at pp.2-12. The Court incorporates that statement by reference and will not repeat those allegations except as they are necessary for the forthcoming analysis.

After Plaintiffs filed their original complaint on April 3, 2020, they began the process of serving a summons and a copy of the pleading on the various Defendants against whom they now seek default judgment. Dkt. 420, p.6. Plaintiffs served each of the now Defaulted Defendants (the Defendants that are the subject of this Order) via personal service on the individual or the entity's registered agent, or via substitute service as ordered by Judge Hegarty. *See* Dkts. 33-36, 38-39, 48, 65, 73. Plaintiffs thereafter amended their pleadings three times, and the Third Amended Complaint ("TAC") became the operative complaint. *See* Dkts. 95, 155, 206.

On December 16, 2022, the Clerk of Court entered default against North Star for failure to answer or respond to the TAC.[1] Dkt. 289. On May 22, 2023, Judge Hegarty also ordered default be entered against AJC, Durango, JW Colorado, JW Ordway, JW Trinidad, MMJ, Lifestream, Ordway Farms, Sunlife, TweedLeaf (Colo.), and TweedLeaf (Del.), for failure to retain counsel and defend this matter. Dkts. 327, 329. The Clerk of Court entered default against Kaweske on August 17, 2023, as a

---

[1] At the time Plaintiffs filed the TAC, North Star was represented by counsel, and therefore, North Star was served with the TAC electronically.

sanction for his failure to participate in the litigation (Dkt. 347), and this Court ordered default be entered against Clover Top (Del.) and Clover Top (Colo.) on April 17, 2025, for failure to defend or retain counsel. Dkt. 429. The Clerk of Court entered default that same day. Dkt. 430.

Plaintiffs now seek an entry of default judgment in their favor. Dkt. 420. The Court has reviewed the Motion and its attachments, the relevant law, and the extensive record in this case. No hearing is necessary. For the following reasons, the Motion for Default Judgment is granted in part as discussed below.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 55(b), default judgment may enter against a party who fails to appear or otherwise defend a case brought against them. However, a party is not entitled to the entry of default judgment as a matter of right. *Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-cv-02445-LTB-MJW, 2008 WL 793606, at * 2 (D. Colo. Mar. 22, 2008) (quoting *Cablevision of S. Conn. Ltd. P'ship v. Smith*, 141 F.Supp.2d 277, 281 (D. Conn. 2001)). Even after the entry of default, "it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment." *McCabe v. Campos*, No. 05-cv-00846-RPM-BNB, 2008 WL 576245, at *2 (D. Colo. Feb. 28, 2008) (citing *Black v. Lane*, 22 F.3d 1395, 1407 (7th Cir. 1994)). "In determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true." *Id.* The decision

whether to enter judgment by default is committed to the sound discretion of the district court. *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003).

## ANALYSIS

### A.    Subject Matter Jurisdiction, Personal Jurisdiction & Venue

In determining whether the entry of default judgment is warranted, the Court must first determine whether it has jurisdiction over the subject matter and the defendants. *Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997); *Williams v, Life Sav. & Loan*, 802 F.2d 1200, 1202-03 (10th Cir. 1986). It is well-settled that "[a] judgment is void when a court enters it lacking subject matter jurisdiction or jurisdiction over the parties." *Id*. at 1202.

Here, the allegations in the TAC—taken as true for purposes of default judgment—establish the Court's jurisdiction over this case and the parties. Plaintiffs' second cause of action arises under the Securities Exchange Act of 1934, and therefore, this Court has original jurisdiction over this claim pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78j(b). In addition, the remaining state law claims are closely related such that they form part of the same case and controversy. 28 U.S.C. § 1367. Consequently, the Court has supplemental jurisdiction over the state law matters. *Id*.

Turning to personal jurisdiction, according to the well-pleaded allegations, Defendant Kaweske is an individual citizen of Colorado, and all the business entity Defendants have, at minimum, their principal places of business in Colorado. Dkt.

206 at ¶¶11, 13-23, 26-28. And as previously noted, Plaintiffs completed valid and effective service on these Defendants via direct or substituted service. Dkts. 33-36, 38-39, 48, 65, 73. Consequently, the Court concludes it has personal jurisdiction over the Defaulted Defendants. Finally, venue is proper in the State and District of Colorado pursuant to 28 U.S.C. § 1391(b), because—based on the allegations in the TAC—the Court concludes a substantial part of the events or omissions giving rise to the claims in the case occurred in Colorado. *See e.g.*, Dkt. 206, ¶¶39, 40, 61, 63, 66-67, 78, 89, 91, 109-110.

## B.    Liability

Plaintiffs seek default judgment on seven of their pending claims. The Court need only address Plaintiffs' claims pursuant to the federal and Colorado securities laws and the Colorado Uniform Fraudulent Transfer Act because Plaintiffs may receive all the relief to which they are entitled under these claims alone. *See Sensoria, LLC v. Kaweske*, No. 20-cv-00942-MEH, 2022 WL 17416669, at *2 (D. Colo. Dec. 2, 2022).

By failing to answer the TAC or retain counsel and participate as directed by the Court, Defendants have relieved Plaintiffs of the burden of proving their factual allegations supporting these claims. *United States v. Craighead*, 176 F. App'x 922, 924 (10th Cir. 2006). Nevertheless, "the Court must determine whether the allegations contained in Plaintiff's Complaint are sufficient to state a claim for relief." *Jones v. Wells Fargo Bank, N.A.*, No 13-cv-02210-MSK-KLM, 2014 WL 3906297, at

*8 (D. Colo. Aug. 7, 2014) (internal quotation marks and citations omitted). "To state a claim for relief, the Complaint must contain sufficient factual matter, accepted as true to show that the claim is plausible on its face." *Id*. (citations omitted). "A claim is facially plausible when the plaintiff pleads facts that allow the court to reasonably infer that the defendant is liable for the alleged conduct." *Id*.

### 1.    Securities Claims

Plaintiffs assert securities claims pursuant to the Securities Exchange Act of 1934 as well as the Colorado Securities Act. Dkt. 206 at ¶¶155-65 (claim two), 166-72 (claim three). Because the language of the Colorado statute tracks that of the federal law, the Court addresses the two claims together.

### a.    Securities Exchange Act of 1934

Turning first to the Securities Exchange Act of 1934, "section 10(b) of [the Act] and Rule 10b–5 promulgated thereunder 'prohibit making any material misstatement or omission in connection with the purchase or sale of any security.'" *Smallen v. The W. Union Co.*, 950 F.3d 1297, 1304 (10th Cir. 2020) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014)). To establish a violation, a plaintiff must demonstrate:

> (1) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant acted with scienter, that is, with intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance.

*In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194, 1200 (10th Cir. 2015) (citations omitted). Accepting the allegations as true, the TAC satisfies each of these elements.

Plaintiffs' allegations first establish that Defendants made misleading statements of material fact. For example, Defendant Kaweske—through Clover Top (Del.)—stated that Clover Top would be the "mother ship" for all cannabis-related entities, technologies, and brands in Colorado and that all profits would inure to the benefit of the Clover Top shareholders. Dkt. 206, ¶39. Kaweske and Clover Top (Del.) also stated that the "TweedleLeaf" brand and entity were wholly owned by Clover Top and that any benefits from the TweedleLeaf brand and companies would also benefit the shareholders. *Id.* at ¶40. These statements, however, were false. Clover Top (Del.) did not own any of the cannabis-related properties, including the TweedleLeaf entities. *Id.* at ¶¶52(b), 54, 65. Indeed, at the time Defendants were soliciting investments from Plaintiffs, Kaweske had already begun the process of moving assets that purportedly were to benefit Clover Top (Del.) and its shareholders into his own name. Dkt. 206, ¶¶63, 65, 66, 74, 79, 80, 83.

The allegations further establish that Kaweske and Clover Top (Del.) included these false statements in materials used to solicit Plaintiffs' investments. *Id.* at ¶¶37-43, 46-47. And it was these statements, and others, that did in fact convince Plaintiffs to purchase shares in Clover Top (Del.). *Id.* at ¶¶37-47. In total, the Plaintiffs collectively invested $700,000 in Clover Top (Del.). *Id.* at ¶53.

Next, considering the allegations holistically, the Court further concludes "all of the facts alleged, taken collectively, give rise to a strong inference of scienter," which in the context of securities claims "consists of a mental state embracing intent to deceive, manipulate, or defraud, or recklessness." *Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1236-37 (10th Cir. 2016), as amended (July 6, 2016) (cleaned up). To be sure, the Court's conclusion in this regard includes the foregoing falsehoods regarding Clover Top (Del.)'s assets and ownership interests in the TweedleLeaf entities.

In addition, the Court also notes that Defendants went to great lengths to prevent Plaintiffs and other potential investors from discovering that Kaweske was previously found to have violated federal securities laws and engaged in other conduct involving breaches of trust and mishandling of investor's funds. Dkt. 206, ¶¶48-49. These efforts included hiring search engine optimization specialists to push Kaweske's sordid history to lower search page results and creating fake social media profiles to divert traffic and minimize the possibility of investors discovering Kaweske's previous transgressions. *Id.* at ¶50. Taken together, the Court concludes Plaintiffs have met their burden of establishing a cogent inference of fraudulent intent that is at least as compelling as any opposing inference one could draw from the alleged facts. *Smallen*, 950 F.3d at 1305.

### b. Colorado Securities Act

Similar to the federal regulations, the Colorado Securities Act provides it is unlawful for any person—in connection with the offer, sale, or purchase of any security—"[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading." Colo. Rev. Stat. § 11-51-501(1)(b). To establish a claim, a plaintiff must demonstrate that "(1) the defendant made an untrue statement or omission of a material fact in connection with the sale of a security; (2) the plaintiff did not know of the untruth or of the omission; and (3) the defendant knew, or in the exercise of reasonable care could have known, of the untruth or omission." *Fed. Deposit Ins. Corp. v. RBS Acceptance Inc.*, 611 F. Supp. 3d 1089, 1097 (D. Colo. 2020).

But for the need to demonstrate reliance or causation, the Colorado Securities Act is "quite parallel" with the federal regulation. *Coffey v. Dean Witter Reynolds Inc.*, 961 F.2d 922, 926 (10th Cir. 1992); *see also Fed. Deposit Ins. Corp. v. RBS Acceptance Inc.*, 611 F. Supp. 3d 1089, 1097 (D. Colo. 2020) (concluding neither reliance nor causation are elements of Colorado's securities law). Consequently, the same allegations that serve to establish a violation of the Securities Exchange Act of 1934 also establish a violation of Colorado's law.

### c.  Control Person Liability

Plaintiffs seek to hold Kaweske jointly and severally liable with Clover Top (Del.) via a theory of control person liability, which both the federal and Colorado statutes specifically contemplate. *See* 15 U.S.C. § 78t; Colo. Rev. Stat. § 11-51-604 (5)(b). To state a prima facie case of control person liability under the Securities Exchange Act of 1934, "the plaintiff must establish (1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged controlling person." *Adams v. Kinder–Morgan, Inc.*, 340 F.3d 1083, 1107 (10th Cir. 2003). *See In re Stat-Tech Sec. Litig.*, 905 F. Supp. 1416, 1429 (D. Colo. 1995) ("The Colorado 'controlling person' statute is modeled after § 20(a) of the 1934 Act.").

To demonstrate that individual defendants were control persons, "the plaintiffs must point to facts which indicate that the defendants had possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise." *Adams*, 340 F.3d at 1107 (cleaned up). Plaintiffs' allegations satisfy this burden. According to the TAC, the solicitation materials stated that Kaweske was part of the management team for Clover Top (Del.). Dkt. 206, ¶40. In addition, he was a signatory to the Clover Top (Del.) investor updates, and he oversaw all Clover Top (Del.) cultivation operations, finances, taxes, license, and legal issues. *Id*. at ¶¶72,73. Thus, the Court finds Kaweske was a controlling person such that he will be held jointly and severally liable for Control Top (Del.)'s violations of the securities laws.

### 2.    Fraudulent Transfer

In their 14th cause of action, Plaintiffs seek to hold the Defaulted Defendants liable pursuant to the Colorado Uniform Fraudulent Transfer Act ("CUFTA"), Colo. Rev. Stat. § 38-8-101, *et seq.* "Fraudulent transfer occurs if the debtor made a transfer with an actual intent to hinder, delay, or defraud any creditor, or, in the alternative, without receiving a reasonably equivalent value in exchange for the transfer or obligation." *Great Neck Plaza, L.P. v. Le Peep Restaurants, LLC*, 37 P.3d 485, 491 (Colo. App. 2001) (citing Colo. Rev. Stat. § 38-8-105(1)(a), (1)(b)). In determining whether there is actual intent, factors to be considered include, among others, whether:

> the transfer or obligation was to an insider; the debtor retained possession or control of the property transferred after the transfer; the transfer or obligation was disclosed or concealed; …the transfer was of substantially all the debtor's assets…

*Id.* (citing § 38-8-105(2)(a)-(k)). "As relevant here, an insider of a corporate debtor is one who is a director, officer, or person in control of the debtor." *Id.* (citing § 38-8-102(8)(b)(I)–(III)).

According to the TAC, Clover Top (Del.) via Kaweske, an insider, caused the TweedleLeaf trademarks and entities to be transferred—without Plaintiffs' knowledge—to himself and the other Defaulted Defendants for whom he is also a director, officer, or person in control. Dkt. 206, ¶¶63-65, 70-71, 73-77, 79-80, 83-84, 103-110, 130-34. In transferring these assets from one company to another, he retained possession and control of the property after the transfer.

12

In addition, the transfer of the TweedleLeaf assets constituted substantially all of Clover Top (Del.)'s assets. *Id*. at ¶¶39, 40, 73, 75, 84. To be sure, following the transfer, Kaweske told Plaintiff Morton that Clover Top (Del.) was no longer relevant because it did not own anything. *Id*. at ¶¶113, 123, 124. Based on these badges of fraud, the Court easily finds that the allegations support a claim of fraudulent transfer.

## C.    Damages

Default judgment cannot enter under Rule 55(b)(2) until the amount of damages is ascertained. *See Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984). A default judgment for money damages must be supported by proof. *Klapprott v. United States*, 335 U.S. 601, 611-12 (1949). This ensures that the plaintiff is not awarded more in damages than can be supported by the evidence. *See id*. Whether to conduct a hearing for the purpose of ascertaining damages is discretionary. *See Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985).

### 1.    Monetary Damages

The Court concludes a hearing is unnecessary because in a previous Order addressing a motion for summary judgment on damages and remedies, Judge Hegarty determined, and the parties did not dispute, that Plaintiffs' principal investment—and the amount they now seek to recover—was $700,000. *Sensoria, LLC*, 2022 WL 17416669, at *1 ("[T]he record already established the amount of [Plaintiffs'] investment principal: $700,000."). And because Plaintiffs established a

claim pursuant to CUFTA, they are also entitled to a one and one-half damages multiplier of $350,000. *See* Colo. Rev. Stat. § 38-8-108(1)(c).

### 2. Attorney Fees and Costs

Plaintiffs may also recover an award of attorney fees and costs because they have established their claim under the Colorado Securities Act. *See* Colo. Rev. Stat. § 11-51-604(4). To determine a reasonable fee award, the Court will generally begin with a lodestar calculation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A lodestar calculation requires multiplying the number of attorney hours expended by a reasonable billing rate. *Id.* at 433. Once the Court has determined the lodestar, it may "adjust the lodestar upward or downward to account for particularities" of the work performed. *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997). The party seeking the award of attorney fees must demonstrate that the award it seeks is reasonable. *See Dewey v. Hewlett Packard Co.*, No. 05-cv-01482-REB-MJW, 2007 WL 707462, at *1 (D. Colo. Mar. 5, 2007). In determining the reasonable number of hours spent on the litigation, the applicant must exercise the same "billing judgment" as would be proper in setting fees for a paying client. *Hensley*, 461 U.S. 436. "'Hours that are not properly billed to one's *client* are also not properly billed to one's *adversary* pursuant to statutory authority.'" *Id.* at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc)) (emphasis in *Copeland*).

Plaintiffs seek attorney fees in the amount of $131,371.50. Dkt. 420. The amount represents the actual fees of attorneys James R. Farmer, Stephen K.

Christiansen, and other legal professionals assisting them with this case. Dkt. 420-1, 420-2. For the pre-litigation investigatory period, the fees were calculated at the standard billing rate of $360 per hour, based on the number of hours worked. Dkt. 420-1, ¶6. For litigation matters, the fees were billed at one-half the standard billing rate: between $112.50 and $180 per hour. *Id*. During the period of August 3, 2023, and October 30, 2023, Plaintiffs were billed only for costs, and since October 30, 2023, Plaintiffs have not been billed for fees or costs. *Id*.

Considering this substantially reduced billing structure, and the included billing compilation, the Court concludes Plaintiffs have sufficiently demonstrated that they have incurred $131,371.50 in reasonable attorney fees. In addition, Plaintiffs' billing materials establish that they have incurred $20,506.83 in compensable litigation costs, which consist of filing fees, service fees, copies, transcripts, and retained professional fees. Dkt. 420-2.

Plaintiffs also seek an award of statutory interest on their investment principal pursuant to Colo. Rev. Stat. § 5-12-102(1)(b), which provides for interest at eight percent per annum compounded annually. However, given the lapse of time between the filing of the Motion and the date of this Order, Plaintiffs' requested amount is no longer accurate. Consequently, Plaintiffs shall file a Notice with the Court with the updated damages total inclusive of the new amount of statutory interest it believes should be awarded. Final judgment will be entered at that time.

*    *    *

15

For the foregoing reasons, the Motion for Default Judgment is GRANTED IN PART as to Plaintiffs' claims pursuant to the Securities Exchange Act of 1934, the Colorado Securities Act, and the Colorado Uniform Fraudulent Transfer Act. The Court DENIES WITHOUT PREJUDICE the Plaintiffs' request for default judgment as to their remaining claims against the Defaulted Defendants because Plaintiffs have recovered the full extent of the damages available to them.

Plaintiffs shall be awarded $1,050,000 in monetary damages, inclusive of the return of their principal investment ($700,000) and a damages multiplier ($350,000). They are further awarded their attorney fees and costs in the amount of $151,878.33, and statutory interest in an updated amount to be determined by Plaintiffs.

IT IS FURTHER ORDERED on or before the close of business on May 19, 2025, Plaintiffs shall file a Notice with an updated damages total inclusive of the new statutory interest amounts. Upon receipt of this Notice, the Clerk of Court shall enter final judgment in favor of Plaintiffs and against Defaulted Defendants.

DATED: April 17, 2025.

BY THE COURT:

S. Kato Crews
United States District Judge